James H. Power
Warren E. Gluck
Tiana M. McLean
Sean P. Barry
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3494
Fax: (212) 385-9010
james.power@hklaw.com
warren.gluck@hklaw.com
tiana.mclean@hklaw.com
sean.barry@hklaw.com

ATTORNEYS FOR APPLICANT
HORNBEAM CORPORATION



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE THE APPLICATION OF HORNBEAM CORPORATION,

REQUEST FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782.

Civil Action No. 14-Misc. _____

---

## *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

COMES NOW, Applicant, Hornbeam Corporation ("**Applicant**"), by and through its undersigned counsel, Holland & Knight LLP, and applies for an *ex parte* Order pursuant to 28 U.S.C. § 1782 to obtain discovery in the form of subpoenas to be served on banks and professional service providers located within the Southern District of New York, and for the production of relevant documents in the possession, custody, and/or control of Bank of America N.A.; Bank of NY Mellon; BNP Paribas SA; Citibank N.A.; Commerzbank AG; Deutsche Bank

AG; HSBC Bank (USA) NA; JPMorgan Chase Bank N.A.; Royal Bank of Scotland PLC; Standard Chartered Bank; UBS AG; Wells Fargo Bank, N.A. (collectively, the "**New York Banks**"), White & Case LLP, KPMG LLC, PricewaterhouseCoopers LLP (collectively, the "**Professional Service Providers**"), for the use in several contemplated foreign proceedings, all for the reasons set forth in this Application; the Declarations of James H. Power, dated December 18, 2014 (the "**Power Declaration**"); Fabrizio N. Campanile, dated December 16, 2014 (the "**Campanile Declaration**"); Vadim N. Shulman, dated December 17, 2014 (the "**Shulman Declaration**"); and Michael J. Fay, dated December 18, 2014 (the "**Fay Declaration**"); as well as the exhibits thereto; and the Memorandum of Law; submitted contemporaneously with this Application.

Under 28 U.S.C. § 1782, an applicant may be granted discovery in the United States in aid of a foreign proceeding within reasonable contemplation if the applicant is an interested party to the contemplated proceeding and if the information sought is located within the district.

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to Title 28 United States Code Section 1782 as this Application is for discovery involving documents located within the Southern District of New York, discovery relevant and important to assist Applicant in its foreign court proceeding(s). At all times material herein, Hornbeam is and was a foreign business entity incorporated in the Republic of Panama with its registered address at MMG Tower, 53rd E Street. Urbanizacion Marbella, Panama, Republic of Panama.

Venue in the Southern District of New York is appropriate pursuant to Title 28 United States Code Section 1782 because the discovery is being sought from corporations within this judicial district, along with the documents being presently in this jurisdiction.

## CONTEMPLATED FOREIGN PROCEEDINGS

Applicant seeks discovery with respect to witnesses and documents located in the United States and in this District for use in the following foreign proceedings:

(i) the reasonably contemplated litigation against Halliwel Assets Inc. ("**Halliwel**"), and its other shareholders Marigold Trust Company Limited ("**Marigold**"), and Mr. Panikos Symeou ("**Symeou**"), as agent/trustee for Mr. Igor Kolomoisky ("**Kolomoisky**") for violation of the BVI Business Companies Act of 2004, including, without limitation, an accounting, valuation, shareholder oppression, and buyout, that will be filed in the Commercial Division of the High Court of Justice, British Virgin Islands;

(ii) the reasonably contemplated litigation by Mr. Vadim Shulman ("**Shulman**") or one of the entities to which he is the ultimate beneficial owner, like Hornbeam, against Symeou, in both his capacity as the Director of Halliwel and Secretary of Warren Steel Holdings, LLC ("**Warren Steel**"), in a jurisdiction currently unknown,[1] for breach of contract, fiduciary duties, and other duties associated with his positions, as well as for other extra-contractual liabilities; and

(iii) the reasonably contemplated litigation by Shulman, or one of his entities to which he is the ultimate beneficial owner, against Kolomoisky and/or Mr. Genady Bogolubov ("**Bogolubov**"), or one or more of their entities to which either or both are the ultimate beneficial owner(s), in a jurisdiction currently unknown for breach of the Joint Venture Agreement (defined below) arising from Kolomoisky's and Bogolubov's failure to

---

[1] While the proper place of jurisdiction for this reasonably contemplated claim is currently unknown, it is likely that this claim will be pursued in either the BVI, Cyprus, Jersey, Ukraine or in some combination of jurisdictions.

compensate Shulman for his initial investments, including, without limitation, Shulman's purchase of the Steel Factory (defined below) for $13.5 million and his further roughly $15 million investment in the Steel factory, as Kolomoisky and Bogolubov had agreed.

## RELEVANT FACTS

The facts giving rise to this Application are set forth in detail in the Power Declaration, the Campanile Declaration, the Shulman Declaration, and the Fay Declaration, as well as the exhibits thereto.

According to the declarations, the dispute can be briefly summarized as follows:

While there are multiple entities and individuals involved in the interrelated actions, this dispute is really between three individuals: Shulman, Kolomoisky, and Bogolubov (the "**Principals**"). In 2001, Shulman knew of an investment opportunity in a steel factory, including its equipment and associated real property, in Warren, Ohio (the "**Steel Factory**"), and he shared this opportunity with Kolomoisky and Bogolubov (the "**Other Ultimate Beneficial Owners**").

The Principals subsequently agreed to enter into a Steel Factory-related joint venture (the "**Joint Venture**"). It was the overall idea that the Principals would act for the benefit of the Joint Venture and contribute and share in the aggregate of all investments, all profits, and all losses to which the three agreed (the "**Joint Venture Agreement**"). Relying on the Joint Venture Agreement, Shulman initially allocated roughly $28.5 million on behalf of the Joint Venture into the Steel Factory.

The Steel Factory was later transferred to Warren Steel, the entity which is the subject of this dispute, which is a wholly owned subsidiary and the sole asset of Halliwel. Hornbeam, which is ultimately beneficially owned by Shulman, is a one-third owner of Halliwel.

Kolomoisky and Bogolubov each ultimately beneficially own the other two-thirds of Halliwel. Accordingly, the Principals ultimately beneficially own Halliwel, one-third each.

Despite their obligation to do so, the Other Ultimate Beneficial Owners never compensated Shulman for his initial $28.5 million investment. Instead of compensating Shulman, the Other Ultimate Beneficial Owners appear to be using entities and individuals under their control to execute an elaborate self-dealing scheme focused on exploiting Warren Steel. It appears that the Other Ultimate Beneficial Owners are forcing Warren Steel to transact with related parties on terms unfavorable to Warren Steel and to accept ill-advised on-demand loans secured by Warren Steel's assets and revenues from parties related to Kolomoisky, Bogolubov, or Korf, but not Shulman. Moreover, the Other Ultimate Beneficial Owners kept Shulman and Hornbeam in the dark as to the extent of these interested transactions and related-party loans totaling roughly $62 million now enjoy security in Warren Steel alleged to be in priority to other unrelated parties, which may have potentially legitimate interests.

In August 2014, after years of investigation and requesting information, Hornbeam received a limited disclosure of financial documentation related to Warren Steel, which was reviewed by FTI Consulting LLP ("**FTI**"), a financial forensic and litigation consultant.

FTI determined that the limited disclosure was incomplete and appeared to contain significant anomalies. FTI notes that there are significant discrepancies in terms of Warren Steel's books and ledgers, ranging from unbalanced debits and credits, to suspicious round-number payments to "related" counterparties including Korf personally, and most importantly, a potential undervalue transfer scheme (selling goods to related parties for less than their true value and/or buying goods from related parties for more than their true value as a means of covertly transferring funds).

Accordingly, it appears that Kolomoisky and Bogolubov have breached the Joint Venture Agreement and are manipulating Warren Steel, Halliwel's sole asset, for their benefit to the detriment of Shulman and Hornbeam. However, more information is necessary to determine the extent of their scheme and its specific details before a fair value of Hornbeam's shares can be determined.

In 2013, Georgian American Alloys, Inc., CC Metals and Alloys, LLC, Felman Production, LLC, Felman Trading, Inc., Georgian Manganese, LLC, Vartsikhe 2005, LLC, Optima Industrial Management, LLC the ("**U.K. Claimants**") commenced an action against White & Case LLP (England And Wales) and White & Case LLP (USA) and obtained an order enjoining White & Case LLP from representing a party in an action against Kolomoisky and Bogolubov because "they own directly or indirectly the joint majority of the share capital of the [U.K.] Claimants" (the " **U.K. Decision**"). *See* Power Declaration, Ex. 3, ¶¶ 92, 97.

According to the U.K. Order, White & Case LLP was engaged to implement a corporate restructuring under which the **U.K. Claimants** would be brought into the ownership of a new holding company to be known as Georgian American Alloys, Inc. ("GAA") which would be the subject of an IPO." This is extremely relevant because the U.K. Claimants are all entities related to Kolomoisky, Bogolubov, and/or Korf and many of the U.K. Claimants provided related-party loans to Warren Steel. The validity of these related-party loans is an important subject of this discovery request.

According to the U.K. Decision, the Professional Service Providers received and/or compiled the related-parties IPO-related documents:

> From 30 June 2011, White & Case was granted access to a data-room maintained by MerrillCorp which contained hundreds of documents relating to the Claimants and around June 2011 White & Case also established a file transfer protocol ("FTP") site which

6

> uploaded all of the due diligence files it received relating to Georgian matters.
>
> As part of the Optima Engagement, White & Case drafted a Form S-1 for GAA which it was intended should be filed to enable GAA to register its securities with the United States Securities & Exchange Commission ("SEC"). The draft Form S-1 contained a significant amount of information and data about GAA and its ferroalloy subsidiaries, including information about the 'risk factors' affecting GAA's operations, related party transactions, tax issues for owners, and the company's future business strategies. In order to draft this document, White & Case reviewed privileged communications, detailed financial and accounting documentation, related-party transactions and agreements for the procurement of raw materials. White & Case also reviewed reports prepared by Price Waterhouse Coopers, liaised with KPMG in relation to the Georgian Manganese acquisition and scrutinised valuation reports.

Power Decl., Ex. 3, ¶¶ 21-22. This non-privileged information should clearly include the related-party loans that the U.K. Claims made to Warren Steel. Considering the information is already uploaded and compiled via FTP, it should not be burdensome to produce to Hornbeam.

## REQUEST FOR DISCOVERY ASSISTANCE

Applicant requests that the Court provide discovery assistance with respect to the Non-U.S. Proceedings. Applicant requests that the New York Banks and the Professional Service Providers, which are present in the Southern District of New York, be directed to provide discovery, described below, for use in the contemplated Non-U.S. proceedings. As more specifically described in Applicant's Memorandum of Law in Support of an *Ex Parte* Application for Discovery Pursuant to 28 U.S.C. § 1782, assistance is appropriate here because: (i) each of the New York Banks and the Professional Service Providers "resides" at or is "found" in this district; (ii) Applicant is an "interested person" (as a party to the contemplated Non-U.S. Proceedings); and (iii) the Non-U.S. proceedings are reasonably contemplated to be commenced

before a "foreign or international tribunal," and the information obtained will be for use in and in support of the foreign proceedings.

WHEREFORE, pursuant to 28 U.S.C. § 1782, Applicant requests that this Court enter an Order:

1. Authorizing Applicant to issue and serve subpoenas on the New York Banks for the production of the following documents:

   A. Copies of any orders, instructions or wire transfers received from a payor/transferor bank to a payee/transferee bank for the benefit or credit of, or with any reference to Warren Steel Holdings, LLC, commonly referred to as "Warren Steel".

   B. Copies of any orders, instructions or wire transfers received from a payor/transferor bank to a payee/transferee bank for the benefit or credit of, or with any reference to Halliwel Assets Inc., commonly referred to as "Halliwel".

   C. Copies of any orders, instructions or wire transfers received from a payor/transferor bank to a payee/transferee bank for the benefit or credit of, or with any reference to any of the following entities and/or individuals that have provided loans to Warren Steel (the "**Related Parties**"):

      i. Divot Enterprises Limited;

      ii. 5251 36th Street LLC;

      iii. CC Metal and Alloys LLC;

      iv. Felman Trading, Inc.;

      v. Mordechai Korf, also Motti Korf,;

      vi. Optima Acquisitions, LLC;

      vii. Optima Fixed Income LLC;

  viii. Optima Group LLC;

  ix. Optima International of Miami, Inc.;

  x. Optima Ventures, LLC;

  xi. Querella Holdings Limited;

  xii. Felman Production, LLC;

in which the New York Banks have acted as intermediary banks, together with any electronic and/or paper records thereof <u>for the period beginning January 1, 2006 to the present</u>.

D. Copies of any orders, instructions or wire transfers received from a payor/transferor bank to a payee/transferee bank for the benefit or credit of, or with any reference to any of the following entities and/or individuals that will be adverse to Hornbeam in the contemplated foreign proceedings (the "**Adverse Parties**"):

  i. A Marigold Trust Company Limited

  ii. Panikos Symeou

  iii. Igor Kolomoisky, a/k/a Igor Kolomoiskiy

  iv. Genady Bogolubov, a/k/a Gennadiy Bogolyubov

in which the New York Banks have acted as intermediary banks, together with any electronic and/or paper records thereof <u>for the period beginning January 1, 2006 to the present</u>.

E. Copies of any orders, instructions or wire transfers received from a payor/transferor bank to a payee/transferee bank for the benefit or credit of, or with any reference to any of the following entities and/or individuals that are used by Kolomoisky and/or

Bogolubov and/or Korf as conduits to invest money in the United States (the "**Investment Conduits**"):

    i. Georgian American Alloys, Inc.;

    ii. Privat Intertrading a/k/a ZAO Privat Intertrading;

    iii. Privat Group;

    iv. Haftseek Investments Ltd.;

    v. GM Georgian Manganese Holdings Ltd.;

    vi. Georgian Manganese, LLC;

    vii. Optima Industrial Management, LLC; and

    viii. Vartsikhe 2005, LLC.

in which the New York Banks have acted as intermediary banks, together with any electronic and/or paper records thereof <u>for the period beginning January 1, 2006 to the present</u>.

F. For the period beginning January 1, 2006 to the present, identify any bank accounts in the name of and/or held beneficially for any of the Related Parties, Adverse Parties, or Investment Conduits, and provide the full records thereof, specifically including copies of present and historical account balance information, and records of incoming and outgoing payments.

G. For the period beginning January 1, 2006 to the present, identify any accounts, loans, lines of credit or other funding arrangements to any of the Related Parties, Adverse Parties, or Investment Conduits.

H. Copies of any orders, instructions or wire transfers received from a payor/transferor bank to a payee/transferee bank for the benefit or credit of, or with any reference to

any of the following entities and/or individuals that were associated with the original purchase of the Steel Factory, currently operated by Warren Steel (the "**Purchase Parties**"):

    i.    Akiva Sapir;

    ii.    Plama Limited;

    iii.    Instrad Limited; and

    iv.    CSC Ltd.

in which the New York Banks have acted as intermediary banks, together with any electronic and/or paper records thereof <u>for the period beginning January 1, 2001 to the present.</u>

2. Authorizing Applicant to issue and serve subpoenas on the Professional Service Providers for the production of the following <u>non-privileged</u> documents:

    A. The Related Parties' Articles of Incorporation and By Laws, including any amendments thereto, as well as all Documents and Communications concerning the same.

    B. Any Corporate Resolutions, Minutes, Due Diligence Reports or other materials concerning any loan or line of credit extended to Warren Steel from January 1, 2006 to the present.

    C. Each Related Party's Corporate Organization Chart as well as all Documents and Communications concerning the same.

    D. All Documents and Communications, concerning any transaction, loan, agreement, contract, invoice or understanding with Warren Steel from January 1, 2006 to the present.

E. All Documents and Communications, concerning any transaction, loan, agreement, contract, invoice or understanding with a Related Party from January 1, 2006 to the present.

F. All Documents and Communications concerning all loans and credit transactions to which Warren Steel is a party from January 1, 2006 to the present.

G. All Documents and Communications concerning all loans and credit transactions to which any of the Related Party is a party from January 1, 2006 to the present.

H. Documents and Communications that are or are concerning internal or external valuations, appraisals, liquidation analyses, fairness or solvency opinions, or other documents concerning the value of the liabilities of Warren Steel from January 1, 2006 to the present.

I. Documents and Communications that are or are concerning internal or external valuations, appraisals, liquidation analyses, fairness or solvency opinions, or other documents concerning the value of the liabilities of any of the Related Parties from January 1, 2006 to the present.

J. Communications concerning, referencing, describing, discussing, from or to (including carbon copies and blind carbon copies) Warren Steel from January 1, 2006 to the present.

3. Directing the New York Banks and the Professional Service Providers to produce the documents requested in their respective subpoenas within twenty-one (21) days of service of the subpoena and as required under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York.

4. Directing the New York Banks and the Professional Service Providers to preserve documents and evidence, electronic or otherwise, in their possession, custody or control that contain information potentially relevant to the subject matter of the Applicant's document request as listed in this Order.

5. Retaining jurisdiction over the matter for the purpose of enforcement and assessing any supplemental request for discovery assistance that may be requested by Applicant.

In summary, based on the reasons set forth in this Application; the Declarations of James H. Power, dated December 19, 2014; Fabrizio N. Campanile, dated December 16, 2014; Vadim N. Shulman, dated December 17, 2014; and Michael J. Fay, dated December 18, 2014; as well as the exhibits thereto; and the Memorandum of Law; Applicant clearly meets the requirements of 28 U.S.C. § 1782, and this Application for the Order should be granted.

Dated:   New York, New York
         December 19, 2014

HOLLAND & KNIGHT LLP

By: _____
James H. Power
Warren E. Gluck
Tiana M. McLean
Sean P. Barry
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3494
Fax: (212) 385-9010
james.power@hklaw.com
warren.gluck@hklaw.com
tiana.mclean@hklaw.com
sean.barry@hklaw.com

*Attorneys for Hornbeam Corporation*