USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __12/24/2014__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                      :
IN RE:                      :               14 Misc. 424 (Part 1)
                      :
APPLICATION OF HORNBEAM CORP.   :            ORDER
                      :
--------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

       Hornbeam Corporation ("Hornbeam") applies *ex parte* for an Order pursuant to 28

U.S.C. § 1782 authorizing it to obtain discovery from banks and professional service providers

within the Southern District of New York for future use in foreign litigation.  (Doc. 1.)  For the

reasons stated below, Hornbeam's Application is GRANTED.

## I.    <u>Background</u>[1]

       In 2001, Vadim Shulman ("Shulman"), Igor Kolomoisky ("Kolomoisky"), and Genady

Bogolubov ("Bogolubov") entered into a joint venture to purchase a steel factory in Warren,

Ohio.  (*See* Campanile Decl. ¶¶ 30-35, 48-54.)[2]  They formed Warren Steel Holdings, LLC

("Warren Steel"), a Delaware entity, to own the factory.  (*Id.* ¶ 36.)  Their initial intention was to

dismantle the factory, move it to Ukraine, and resume its operations there, but in 2006, Shulman,

Kolomisky, and Bogolubov changed their plans and decided to resume operations at the plant in

Ohio rather than dismantle it.  (*Id.* ¶¶ 48, 55-56.)  To facilitate this endeavor, they incorporated

Halliwel Assets Inc. ("Halliwel"), a British Virgin Islands ("BVI") business company.  (*Id.* ¶ 58.)

Halliwel is the sole member of Warren Steel.  (*Id.*)  In turn, Shulman, Kolomoisky, and

---

[1] The following is only a brief summary of background information to provide some context for this Order.  I make no findings of fact.
[2] "Campanile Decl." refers to the Declaration of Fabrizio N. Campanile in Support of *Ex Parte* Application for Discovery Pursuant to 28 U.S.C. § 1782.  (Not filed on ECF.)

Bogolubov each ultimately own a one-third interest in Halliwel through intermediaries they control. (*Id.* ¶ 61.) Shulman is the ultimate beneficial owner of Hornbeam, which owns Shulman's one-third stake in Halliwel. (Shulman Decl. ¶ 1.)[3]

At some point, Shulman's relationship with Kolomisky became severely strained by a business dispute. (*Id.* ¶ 26; *see also* Campanile Decl. ¶¶ 122-27.) Shulman alleges that Kolomoisky and Bogolubov began to engage in self-dealing and breached the joint venture agreement by causing Warren Steel to accept loans secured by Warren Steel's assets and revenues from entities ("the Related Parties") controlled by Kolomoisky and Bogolubov and their allies. (*See* Campanile Decl. ¶¶ 9-16; Shulman Decl. ¶¶ 30-33.) In all instances, the same person—Mordecai Korf ("Korf"), the president of Warren Steel—executed the loan documents on behalf of both the lender, a Related Party, and the borrower, Warren Steel. (Campanile Decl. ¶ 13.) In short, Kolomisky and Bogolubov have allegedly taken control of Halliwel for their own purposes and endeavored to harm Shulman by saddling Warren Steel with debt and obtaining a priority security interest in its assets.

Hornbeam has previously initiated two actions in the BVI related to this dispute. First, in August 2014, Hornbeam sought an *ex parte* injunction against Halliwel and others to enjoin an extraordinary general meeting of Halliwel's shareholders at which a restructuring of Warren Steel's debt was expected to be approved. (Fay Decl. ¶¶ 8a-8d.)[4] The injunction was granted but then dismissed as moot when it was discovered that the restructuring had already been approved at another time. (*Id.* ¶¶ 8d-8e.) Second, in October 2014, Hornbeam applied for the appointment of a liquidator of Halliwel under the BVI Insolvency Act; the application was later

---

[3] "Shulman Decl." refers to the Declaration of Vadim Nathan Shulman in Support of *Ex Parte* Application for Discovery Pursuant to 28 U.S.C. § 1782. (Doc. 3-1.)
[4] "Fay Decl." refers to the Declaration of Michael John Fay in Support of *Ex Parte* Application for Discovery Pursuant to 28 U.S.C. § 1782. (Doc. 3-2.)

voluntarily withdrawn, due in part to a "lack of adequate disclosure regarding the underlying claims." (*Id.* ¶¶ 8g-8k.)  Hornbeam now intends to initiate proceedings in the BVI based upon a cause of action under the BVI Business Companies Act for oppression of minority shareholders. (*See* Campanile Decl. ¶¶ 128-140; Fay Decl. ¶¶ 9-22.)

Hornbeam filed the instant *ex parte* Application on December 19, 2014.  (Doc. 1.) Hornbeam requests that I authorize it to issue subpoenas to twelve banks—Bank of America N.A.; Bank of NY Mellon; BNP Paribas S.A.; Citibank N.A.; Commerzbank AG; Deutsche Bank AG; HSBC Bank (USA) NA; JP Morgan Chase Bank N.A.; Royal Bank of Scotland PLC; Standard Chartered Bank; UBS AG; Wells Fargo Bank, N.A. (collectively, the "New York Banks" or "Banks")—for the production of documents.  Hornbeam's original request sought "[c]opies of any orders, instructions or wire transfers received from a payor/transferor bank to a payee/transferee bank for the benefit or credit of, or with any reference to":  Warren Steel; Halliwel; the Related Parties; four individuals and entities that Hornbeam intends to sue in the BVI, including Kolomisky and Bogolubov; eight entities that Kolomisky, Bogolubov, and Korf allegedly use as conduits to invest money in the United States; and four entities allegedly involved with the initial purchase of the steel factory.[5]  (Doc. 1 at 8-11.)  The original request also sought "the full records" of any bank accounts belonging to most of the foregoing individuals and entities.  (*Id.* at 10.)  Hornbeam also wishes to subpoena White & Case LLP, KPMG LLC, and PricewaterhouseCoopers LLP (collectively, the "Professional Service Providers") for documents relating to the structure, valuation, and past transactions of the Related Parties and Warren Steel.  (*Id.* at 11-12.)

After reviewing the materials in support of the Application, I ordered Hornbeam's

---

[5] With respect to most of these entities and individuals, Hornbeam sought records only for those transactions in which the Banks "acted as intermediary banks."  (*See* Doc. 1 at 8-11.)

counsel to appear at a hearing on December 23, 2014 to discuss, inter alia, whether the requested

discovery was unduly burdensome and whether there was a sufficient nexus between the

underlying dispute and the entities from and about which discovery was requested.  (*See* Doc. 4.)

At the hearing, counsel explained that discovery was sought from the New York Banks only

because they serve as intermediaries for wire transfers of funds from outside the United States to

within the United States, and not because the subject individuals or entities were likely to

maintain accounts at the Banks.  Although counsel did not know which of the New York Banks

had actually processed transactions for the subject individuals and entities, counsel stated, on the

basis of his experience, that these were the Banks most likely to provide such services.[6]

Counsel represented that the New York Banks routinely receive and comply with similar

subpoenas issued pursuant to 28 U.S.C. § 1782.  In response to subpoenas containing similar

language, the Banks have searched their electronic transaction databases for the relevant terms

and have timely provided counsel with simple electronic spreadsheets listing basic information

relating to any wire transfers that satisfy the search parameters.  Counsel provided examples of

subpoenas issued and spreadsheets produced in other cases for my inspection at the hearing.

Counsel explained that similar spreadsheets would satisfy the substance of Hornbeam's

discovery requests in this case.

I advised counsel at the hearing that I was not prepared to grant the Application at that

time.  I explained that Hornbeam's proposed order appeared to request many more documents

with a broader scope than the spreadsheets that counsel represented would be satisfactory.  I

advised counsel to revise the language of Hornbeam's proposed order to describe more narrowly

and more precisely the material that would satisfy the substance of its requests.  *See Schmitz v.*

---

[6] Counsel also indicated that they did not include other banks that provide such services, such as Chinese banks, because they are not aware of any transactions involving China or its currency.

*Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 85 (2d Cir. 2004) (expressing a "preference for narrowly tailored discovery orders where possible," in lieu of the outright rejection of applications under § 1782). Shortly after the hearing, counsel provided me with a revised proposed order. The revised proposed order requests only "wire transfer record[s]" for transactions in which the New York Banks served as intermediaries, (Revised Proposed Order ¶¶ 2A-2F),[7] rather than requesting "[c]opies of any orders, instructions or wire transfers" pertaining to such transactions. The revised proposed order also omits any request for account information or records.

II.     **Analysis**

I conduct the following analysis on the basis of the record currently before me, mindful that the state of the relevant foreign proceedings may be "continually in flux" and that I may need to revisit my rulings if "appropriate circumstances arise in the future." *Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6, 8 (2d Cir. 2014) (summary order). I also reserve the right to revise my conclusions if any subpoenaed party moves to quash the subpoena or vacate this Order and presents additional evidence bearing on the factors that inform my exercise of discretion.

When reviewing an application for discovery related to a foreign proceeding under 28 U.S.C. §1782, I must first determine whether I have the authority to grant the request. I am authorized to grant a § 1782 request if: (1) the person from whom discovery is sought resides or is found in the district where the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or an "interested person." *Schmitz*, 376 F.3d at 83. The proceeding before a foreign or

---

[7] This document is not filed on ECF.

international tribunal need not be ongoing or imminent; a dispositive ruling must merely be within "reasonable contemplation."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).

Based upon the papers submitted, the threshold requirements are satisfied here.  The Banks and Professional Service Providers from which Hornbeam seeks discovery are located within the Southern District of New York.  (*See* Doc. 3 ¶ 4.)  Hornbeam initiated two legal proceedings in the BVI related to the underlying dispute over Warren Steel, and it intends to initiate further proceedings once it obtains additional information.  The material Hornbeam seeks to discover is potentially critical to those proceedings because it is relevant to whether Kolomisky and Bogolubov controlled the Related Parties or provided the funds that the Related Parties loaned to Warren Steel.  Evidence that Kolomisky and Bogolubov controlled or funded the entities that obtained a security interest in Warren Steel's assets would "provide critical . . . support" to Hornbeam's anticipated claim that it has been oppressed and discriminated against as the minority shareholder in Halliwel.  (Fay Decl. ¶ 14.)  Hornbeam therefore seeks evidence for use in foreign proceedings in which a dispositive ruling is within reasonable contemplation.  *See In re Wilhelm*, 470 F. Supp. 2d 409, 411 (S.D.N.Y. 2007); *In re Servicio Pan Americano de Proceccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) ("Section 1782 may be invoked even where foreign legal proceedings are not even underway . . . .").  Finally, Hornbeam is plainly an interested person in the foreign proceedings it expects to initiate.

"[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion."  *In re Application for an Order Permitting Metallgesellschaft AG To Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997).  To determine whether to exercise my discretion to grant the request, I must consider four factors:  (1) whether the person from whom discovery is

sought is not a participant in the foreign proceeding and is therefore outside the foreign tribunal's jurisdictional reach; (2) the nature of the foreign tribunal and its receptivity to judicial assistance by U.S. federal courts; (3) whether the request conceals an attempt to circumvent foreign evidence-gathering rules; and (4) whether the request is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65; *Mare Shipping*, 574 F. App'x at 8.

First, the New York Banks and Professional Services Providers are not expected to be parties to any future BVI litigation. Especially in light of the BVI's relatively restrictive discovery practices, which are largely limited to obtaining documents from parties to the litigation, (*see* Fay Decl. ¶¶ 25-27), there is no reason to believe that documents in the possession of the New York Banks or Professional Service Providers would be within the jurisdictional reach of the BVI courts. *In re Application of OOO Promnefstroy for an Order To Conduct Discovery for Use in a Foreign Proceeding*, Misc. No. 19-99, 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009). This factor weighs in favor of granting Hornbeam's Application. *See Intel*, 542 U.S. at 264.

Second, Hornbeam has provided the declaration of a respected practitioner of BVI law that there is no legal barrier to the use of documents obtained under 28 U.S.C. § 1782 in BVI proceedings. (Fay Decl. ¶ 28.) Hornbeam need not "affirmatively show" that the BVI courts are receptive to U.S. judicial assistance; the burden is on the opponent of a § 1782 request to prove that the foreign court would reject the evidence obtained through § 1782. *OOO Promnefstroy*, 2009 WL 3335608, at *7. The BVI courts are at least not obviously unreceptive to my assistance. *Cf. In re Microsoft Corp.*, 428 F. Supp. 2d 188, 196 (S.D.N.Y. 2006) (relying on foreign tribunal's express objection to conclude that it was not receptive to the assistance of the U.S. federal courts). Under these circumstances, I should err on the side of permitting the

requested discovery.  *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100-01 (2d Cir. 1995).

Third, Hornbeam's request does not conceal an attempt to circumvent foreign evidence-gathering rules.  As an initial matter, nothing is "conceal[ed]"; Hornbeam is forthright that BVI discovery rules, like most countries', are less permissive than those in the United States.  (*See* Fay Decl. ¶¶ 25-27.)  In any event, there is no requirement under § 1782 that the requested material be discoverable under the rules governing the litigation in the foreign jurisdiction.  *See Intel*, 542 U.S. at 261; *Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 98 (2d Cir. 2009) (summary order).  Because there is no reason to believe that Hornbeam's effort to obtain materials not discoverable in the BVI through § 1782 would undermine "principles of comity" or "cooperation" with the BVI, this factor weighs in favor of—or at least not against—granting Hornbeam's Application.  *See In re Microsoft*, 428 F. Supp. 2d at 196.

Fourth, I conclude that the discovery Hornbeam seeks is not unduly intrusive or burdensome.  Although I was initially concerned that Hornbeam's requests to the New York Banks were significantly overbroad, counsel provided assurances and examples of the Banks' routine compliance with previous similar requests.  Counsel then narrowed Hornbeam's requests to exclude unnecessary "orders" and "instructions" pertaining to wire transfers and irrelevant account information.  Therefore, I am persuaded that the wire transfer spreadsheets Hornbeam seeks from the New York Banks are a "specific, discrete set of documents that are easily identifiable."  *In re Berlamont*, No. 14-mc-00190, 2014 WL 3893953, at *2 (S.D.N.Y. Aug. 4, 2014).  I may also weigh the probative value of the requested materials in considering whether the requests are unduly burdensome.  *See In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Solution Int'l To Take Discovery of Chadbourne & Parke LLP*, --- F.

Supp. 3d ----, 2014 WL 5090028, at *9, *13 (S.D.N.Y. 2014).  The requested documents may be

highly probative because they may establish that Kolomisky and/or Bogolubov controlled or

funded the Related Parties that allegedly obtained a security interest in Warren Steel's assets.

Finally, although requests for privileged material may be unduly intrusive, and § 1782 "expressly

shields privileged material," *In re Microsoft*, 428 F. Supp. 2d at 196, Hornbeam's requests to the

Professional Service Providers expressly exclude privileged documents.  For these reasons, on

the basis of the existing record, I conclude that Hornbeam's requests are not unduly intrusive or

burdensome.

Because all of the factors guiding my exercise of discretion weigh in favor of granting

Hornbeam's Application, I choose to do so.

### III.   Operative Provisions of the Order

For the foregoing reasons, Hornbeam's *Ex Parte* Application for Discovery Pursuant to

28 U.S.C. § 1782, (Doc. 1), is GRANTED.  It is hereby ordered that:

1.   Hornbeam Corporation is authorized to issue and serve subpoenas on Bank of America
     N.A., Bank of NY Mellon, BNP Paribas SA, Citibank N.A., Commerzbank AG,
     Deutsche Bank AG, HSBC Bank (USA) NA, JPMorgan Chase Bank N.A., Royal Bank
     of Scotland PLC, Standard Chartered Bank, UBS AG, and Wells Fargo Bank, N.A.
     (collectively, the "**New York Banks**") for the production of the following documents:

   A.   Copies of all wire transfer records processed by the New York Banks, as
        intermediary banks, where Warren Steel Holdings LLC, commonly referred to as
        "Warren Steel" ("**Warren Steel**"), is an originator, beneficiary, or is otherwise
        referenced in the wire transfer for the period beginning January 1, 2006 to the
        present.

   B.   Copies of all wire transfer records processed by the New York Banks, as
        intermediary banks, where Halliwel Assets Inc., commonly referred to as
        "Halliwel" ("**Halliwel**"), is an originator, beneficiary, or is otherwise referenced
        in the wire transfer for the period beginning January 1, 2006 to the present.

   C.   Copies of all wire transfer records processed by the New York Banks, as
        intermediary banks, where  any of the following entities and/or individuals that
        allegedly have provided loans to Warren Steel (the "**Related Parties**") is an

originator, beneficiary, or is otherwise referenced in the wire transfer <u>for the period beginning January 1, 2006 to the present</u>:

      i.     Divot Enterprises Limited;
      ii.     5251 36th Street LLC;
      iii.     CC Metal and Alloys LLC;
      iv.     Felman Trading, Inc.;
      v.     Mordechai Korf, also Motti Korf;
      vi.     Optima Acquisitions, LLC;
      vii.     Optima Fixed Income LLC;
      viii.     Optima Group LLC;
      ix.     Optima International of Miami, Inc.;
      x.     Optima Ventures, LLC;
      xi.     Querella Holdings Limited; or
      xii.     Felman Production, LLC.

D.     Copies of all wire transfer records processed by the New York Banks, as intermediary banks, where any of the following entities and/or individuals that allegedly will be adverse to Hornbeam in the contemplated foreign proceedings is an originator, beneficiary, or is otherwise referenced in the wire transfer <u>for the period beginning January 1, 2006 to the present</u>:

      i.     A Marigold Trust Company Limited;
      ii.     Panikos Symeou;
      iii.     Igor Kolomoisky, a/k/a Igor Kolomoiskiy; or
      iv.     Genady Bogolubov, a/k/a Gennadiy Bogolyubov.

E.     Copies of all wire transfer records processed by the New York Banks, as intermediary banks, where any of the following entities and/or individuals that allegedly are used by Kolomoisky and/or Bogolubov and/or Korf as conduits to invest money in the United States is an originator, beneficiary, or is otherwise referenced in the wire transfer <u>for the period beginning January 1, 2006 to the present</u>:

      i.     Georgian American Alloys, Inc.;
      ii.     Privat Intertrading a/k/a ZAO Privat Intertrading;
      iii.     Privat Group;
      iv.     Haftseek Investments Ltd.;
      v.     GM Georgian Manganese Holdings Ltd.;
      vi.     Georgian Manganese, LLC;
      vii.     Optima Industrial Management, LLC; or
      viii.     Vartsikhe 2005, LLC

F.     Copies of all wire transfer records processed by the New York Banks, as intermediary banks, where any of the following entities and/or individuals that were associated with the original purchase of the steel factory currently operated

by Warren Steel is an originator, beneficiary, or is otherwise referenced in the wire transfer <u>for the period beginning January 1, 2001 to the present</u>:

      i.    Akiva Sapir;
     ii.    Plama Limited;
    iii.    Instrad Limited; or
    iv.    CSC Ltd.

2.    Hornbeam Corporation is authorized to issue and serve subpoenas on White & Case LLP, KPMG LLC, and PricewaterhouseCoopers LLP (collectively, the "**Professional Service Providers**"), for the production of the following, to the extent they are not legally privileged documents:

    A.    Each Related Party's Articles of Incorporation and By Laws, including any amendments thereto, as well as all Documents and Communications concerning the same.

    B.    Any Corporate Resolutions, Minutes, Due Diligence Reports or other materials concerning any loan or line of credit extended to Warren Steel from January 1, 2006 to the present.

    C.    Each Related Party's Corporate Organization Chart, as well as all Documents and Communications concerning the same.

    D.    All Documents and Communications, concerning any transaction, loan, agreement, contract, invoice or understanding with Warren Steel from January 1, 2006 to the present.

    E.    All Documents and Communications, concerning any transaction, loan, agreement, contract, invoice or understanding with a Related Party from January 1, 2006 to the present.

    F.    All Documents and Communications concerning all loans and credit transactions to which Warren Steel is a party from January 1, 2006 to the present.

    G.    All Documents and Communications concerning all loans and credit transactions to which any of the Related Party is a party from January 1, 2006 to the present.

    H.    Documents and Communications that are or are concerning internal or external valuations, appraisals, liquidation analyses, fairness or solvency opinions, or other documents concerning the value of the liabilities of Warren Steel from January 1, 2006 to the present.

    I.    Documents and Communications that are or are concerning internal or external valuations, appraisals, liquidation analyses, fairness or solvency opinions, or other

documents concerning the value of the liabilities of any of the Related Parties from January 1, 2006 to the present.

J.      Communications concerning, referencing, describing, discussing, from or to (including carbon copies and blind carbon copies) Warren Steel from January 1, 2006 to the present.

3.      The New York Banks and the Professional Service Providers shall produce the documents requested in their respective subpoenas within twenty-one (21) days of service of the subpoena and as required under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York.

4.      Until further Order by this Court, the New York Banks and the Professional Service Providers shall preserve documents and evidence, electronic or otherwise, in their possession, custody, or control that contain information potentially relevant to the subject matter of Hornbeam's document request as described in this Order.

5.      The Court shall retain jurisdiction over the matter for the purpose of enforcing this Order, as appropriate, and assessing any supplemental request for discovery assistance by Hornbeam.

6.      A copy of this Order shall be served with each discovery demand.

SO ORDERED.

Dated:      December 24, 2014
            New York, New York

Vernon S. Broderick
United States District Judge