UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE THE APPLICATION OF HORNBEAM
CORPORATION

Civil Action No. 14-Misc. 424 (VSB)

## DECLARATION OF FABRIZIO N. CAMPANILE IN OPPOSITION TO PANIKOS SYMEOU'S ORDER TO SHOW CAUSE TO VACATE *EX PARTE* ORDER AND DENY 28 U.S.C. § 1782 APPLICATION

I, FABRIZIO N. CAMPANILE, of Goldauerstrasse 8, CH-8006 Zurich, Switzerland, declare as follows:

1. I am an attorney-at-law admitted to the bar of Zurich, Switzerland in the year 2000.

2. I make this declaration in opposition to Panikos Symeou's Order to Show Cause To Vacate *Ex Parte* Order And Deny 28 U.S.C. § 1782 Application.

### Hornbeam Remains An Interested Party

3. Initially, Panikos Symeou (**"Symeou"**) was reflected in the Halliwel Assets Inc. (**"Halliwel"**) share register as two-thirds owner. Symeou was acting as trustee, holding one-third in trust directly for Igor Kolomoisky, and one-third in trust directly for Vadim Shulman (**"Shulman"**).

4. In October 2012, Symeou complied with a request from Shulman that Symeou be replaced as registered shareholder of Shulman's one-third shares by Hornbeam Corporation (**"Hornbeam"**) (not owned by Shulman or one of his entities), a Panamanian trust entity, which would in turn hold the shares in Halliwel (**"Shares"**) for Bracha Foundation (**"Bracha"**), a Liechtenstein foundation controlled by Shulman and of which Shulman is the sole first beneficiary. Thus, since inception, the ultimate beneficial owner of one-third shares of Halliwel is Shulman.

5. Beginning in July 2014, after learning that Hornbeam's structure would no longer be compliant with the United States' Foreign Account Tax Compliance Act ("FATCA") and other global regulations, Mr. Shulman's representatives requested, on multiple occasions, that Symeou, the sole Director of Halliwel, transfer Hornbeam's Shares to another entity. Initially, Mr. Shulman's representatives asked that the Shares be transferred to Tectum Trust Management Establishment ("**Tectum**") and that Tectum be reflected to the registered shareholder; later they asked that the Shares be transferred to Bracha itself and Bracha be reflected as the registered shareholder. In either case, Bracha would remain the *principal* shareholder and Shulman the ultimate beneficial owner.

6. Despite Shulman's multiple requests, beginning in July 2014, Symeou has repeatedly refused to transfer the Shares as require under BVI law. Thus, there is no dispute that Hornbeam remains the registered shareholder—and therefore the current *legal* owner—of the Halliwel Shares under BVI law. Hornbeam nonetheless holds the Shares in trust for Bracha, who in turn holds the Shares for its sole beneficiary, Shulman.

7. On December 22, 2014, shortly after the instant action was filed, the shareholder(s) of Hornbeam (believed to be citizens of Liechtenstein and which are in no way controlled by Shulman or Bracha) begun dissolution proceedings of Hornbeam. Under Panamanian law, however, a corporation may continue functioning for up to three years after the commencement of dissolution proceedings. Symeou himself recognized this in a March 19, 2015 email. *See* **Exhibit 1** (stating "Under Panamanian law Hornbeam's dissolution on 22 December 2014 does not have the effect that it no longer exists: Hornbeam continues to exists and continues to act and be represented by its [Panamanian] directors in the usual way for three years after its dissolution."). As such, despite the commencement of dissolution proceedings, Hornbeam remains the registered shareholder of

Halliwel and is considered the "legal" shareholder under BVI law. However, Bracha remains the beneficial shareholder, holding the Shares in trust for Shulman, the ultimate beneficial owner (both of whom are also interested parties).

## The Ohio Action Was Not Previously Contemplated

8. I understand that Symeou alleges that Hornbeam initiated this action in order to obtain pre-complaint discovery for a later Ohio action to enjoin the sale of Halliwel's sole asset, Warren Steel Holdings, LLC ("**Warren Steel**"), to related parties (the "**Ohio Action**"). This could not be further from the truth.

9. In fact, Hornbeam did not learn about the proposed sale until February 2015, several months after filing the instant action. Clearly Hornbeam could not have filed this § 1782 application in an attempt to obtain discovery for a later action to enjoin a sale, when, at the time it filed the application, it did not even know the sale was contemplated.

10. Furthermore, despite Symeou's accusations to the contrary, Hornbeam has not utilized any of the materials obtained from the subpoenas in this action in the Ohio Action.

11. I understand that Symeou alleges that Hornbeam utilized the material in the Ohio Action based on a reference to the existence of Warren Steel's account at Regions Bank.

12. However, Hornbeam initially learned about the Regions Bank account not through the subpoenas, but from documents provided by Symeou and Warren Steel's president, Mordecai Korf, before the Extraordinary General Meeting ("EGM") originally scheduled for August 8, 2014. *See* **Exhibit 2** (excerpts in pdf format of native spreadsheets provided by Symeou and Korf).

13. These documents clearly reference "Regions Bank Checking." *Id*.

14. As such, the existence of Warren Steel's account with Regions Bank was known before the commencement of Ohio Action. Based on Regions Bank's website and other publically available information, it is headquartered in Birmingham, Alabama, and has no branches in Ohio.

### The Subpoenaed Materials Do Not Reference Symeou

15. I have personally reviewed all the materials which Hornbeam obtained as a result of its subpoenas in this action. None of those materials reference Symeou in any way.

16. I have also instructed Holland & Knight to perform a full review, including using, as necessary, the services of its IT department, to verify that there are no references to the name "Symeou" in either the "originator," "beneficiary," or "reference" fields. Holland & Knight has confirmed to me that no such references exist.

### Symeou's Counsel's Potential Conflict of Interest

17. On June 5, 2015, I wrote an email to Shulman's previous counsel, Bruce Marks, requesting information on a related action in the United States District Court for the Western District of Pennsylvania (*Vadim Shulman et al. vs. Lemster et al.*, Civil Action No. 11-cv-00852), for the purpose of gathering information for use in the Ohio Action. At this time, Mr. Marks knew about this § 1782 proceeding, and more specifically, that I was involved in instructing U.S. counsel and had submitted a supporting declaration with this Court. *See* Plaintiff's Memorandum of Law Support Of Order To Show Cause To Vacate, at p. 9. Notably, in his reply, made on June 5, 2015, Mr. Marks raised no objection to the § 1782 application, nor did he make any demands for production of any records received in the § 1782.

18. He replied by vaguely stating that "our firm was involved in the 'Lemster case.'" This seemed like an understatement considering *he himself* represented plaintiffs, which included Shulman and other entities under Shulman's ownership and/or control, in the dispute, which

4

concerned the purchase of Warren Steel's assets and real property. Mr. Marks also refused to provide me with any information or records. The June 5, 2015 email correspondence with Bruce Marks is attached hereto as **Exhibit 3**. As an attorney who represented Shulman in a related matter, I considered his response not only to lack professional courtesy, but also less than forthcoming concerning his prior role.

19. I later learned that Mr. Marks currently represents Symeou in this matter, Symeou and Halliwel in the Ohio Action, and the "interests of Kolomoisky," in other actions. Yet, during our communications on June 5, 2015, Mr. Marks failed to disclose a potential conflict, or his representation of Symeou in New York action.

20. Shulman has expressly conveyed that he believes that Mr. Marks' current representation of Halliwel and Symeou, which is adverse to Shulman, is a direct conflict with his previous representation of Shulman in matters relating to Shulman's initial purchase of Warren Steel.

Pursuant to Section 1746 of Title 28 of the United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
July 9, 2015

_____
Fabrizio N. Campanile