UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE: | |
|---|---|
| APPLICATION OF HORNBEAM CORP. | 14 Misc. 424 (VSB) |

### PANIKOS SYMEOU'S RESPONSE TO AUGUST 4, 2015 ORDER

Panikos Symeou ("Symeou"), by and through his counsel, respectfully submits this response to the Order dated August 4, 2015. Counsel for Mr. Symeou intended to provide additional argument and amplify the materials of record at the August 7, 2015 hearing by introducing the most recent pleading filed by Bracha Foundation and Vadim Shulman in the Ohio Action, **Exhibit A**, and correcting the record by filing Hornbeam, Inc.'s Swiss attorney Campanile's Ohio Action affidavit, **Exhibit B**, which was quoted, but inadvertently not filed, in support of Symeou's Reply Brief in Support of the Motion to Vacate. *See* Reply Brief, p. 4, fn. 5 (ECF 20). Counsel is available if the Court believes an oral presentation would provide assistance on any issue, including the Ohio Action, violation of N.Y. Rule Prof. Cond. 3.3(d), BVI law, and the chronology of events.

### THE OHIO ACTION DEMONSTRAES HORNBEAM, INC IS NOT AN "INTERESTED PERSON" AND DISCOVERY IS NOT "FOR USE" IN FOREIGN PROCEEDINGS

On July 31, 2015, Bracha Foundation and Vadim Shulman filed their Objections to the Ohio Magistrate's Decision dissolving the TRO, **Exhibit A**. They *continue* to take the position that they have standing to assert claims for fraud, unjust enrichment, and conversion in Ohio based on the *same facts* that Hornbeam Inc. purports support future claims in the BVI related to Halliwel Assets, Inc. The Ohio Action contradicts Hornbeam's position here.

*First*, Bracha and Shulman assert they are interested in Ohio because they have standing to make the claims, but Hornbeam asserts here it has standing. It would be an abuse of §1782 to consider Hornbeam to be an "interested person" and permit discovery here while Hornbeam's

purported successor, Bracha, and beneficiary, Shulman, bring the same claims and seek discovery in Ohio.

***Second,*** Hornbeam has no logical reason to file claims in the BVI while the Ohio Action proceeds, particularly given it would be required to pay the $846,525 BVI judgment and post $250,000 for security for costs in order to proceed in the BVI. Thus, it is not an "interested person" because it does not truly intend to file in the BVI. This is particularly the case, given the admission in Ohio that Bracha and Shulman are using information from the §1782 discovery there. *See* Campanile Ohio Aff. at 164 ("other than the existence of Warren Steel bank accounts not previously identified by Symeou no information whatsoever received [from the §1782 proceeding] will be used in this Proceeding in support of the accounting and injunction."), **Exhibit B.** Notably, Campanile does not assert no information received from §1782 discovery will be used in support of the fraud, unjust enrichment, and conversion claims.

## HORNBEAM VIOLATED N.Y. RULE PROF. COND. 3.3(d)

Given limited briefing space, violation of N.Y. Rule Prof's Conduct 3.3(d)'s duty of disclosure at the December 23, 2014 *ex parte* hearing was not fully detailed. *See* Dec. 23 Transcript, attached as **Exhibit C** (ECF 18-35). Violations by Mr. Power include:

### Hornbeam's Misrepresentations Regarding "For Use": "Related Parties"

Hornbeam's counsel created the false impression that the discovery of New York banks was needed "for use" in the BVI to prove that the "Related Parties" are related, the sole basis for the Court granting discovery. Order at 6 (ECF 5). Hornbeam's counsel represented to the Court:

> There has been some suggestion in our papers, based on third-party information, that Kolomoisky and Bogolubov do own or firmly [sic] own all of these Optima entities. So, of course, if we can prove that they do, by showing the transfers of funds from their foreign-controlled offshore entities into one or more of their related parties, which then in turn encumbered Warren Steel, this is the type of information that is going to be introduced and useful to the claims in the BVI.

Dec. 23 Trans. at 7 (ECF 18-35).

Hornbeam's counsel did not disclose that in the BVI that it was *undisputed* that the Optima Entities were related to Kolomoisky and Bogolubov, as evidenced by the Korf BVI Affidavit. (ECF 18-6). This was not mere "third-party information" or some "suggestion" but the affidavit of Korf, Warren Steel's president, who is also president of various Optima entities, and now a defendant in the Ohio Action. In opposition to the Motion to Vacate, Hornbeam conceded that it was uncontested (and, in fact, asserted by Korf) in the BVI that the "Related Parties" were related.

### Hornbeam's Misrepresentation Regarding "For Use": Timing

The Court inquired about discovery of the accounting firms and White & Case. Hornbeam's counsel created the false impression that discovery was to be taken immediately, stating:

> Our firm has gotten a §1782 application before. They are done, I can tell you, as a professional working with another law firm, we would certainly do all we could to accommodate them, grant the requests. I know it's the holidays; we wouldn't be expecting hard deadlines. We would ask them to first just check on their records. I thing we would, again, work with them on sort of a rolling basis.

Dec. 23 Trans. at 17 (ECF 18-35).

To the contrary, Hornbeam *never* served subpoenas on the accounting firms or White & Case, undoubtedly because Hornbeam and its counsel knew that they would alert Kolomoisky, Bogolubov, and the Optima entities of what was happening, in contrast to the New York banks, whom Hornbeam's counsel represented "have never once objected." Dec. 23 Trans. at 5 (ECF 18-35). This slight-of-hand permitted Hornbeam to take secret discovery from New York banks in violation of §1782 and the Federal Rules. The failure to ever serve subpoenas on the accounting firms and White & Case strongly (as well as any subpoenas authorized in Delaware,

Florida, and Ohio) indicates Hornbeam never intended (and does not now intend) to file foreign proceedings.

### Hornbeam's Misrepresentation Regarding Jurisdictional Reach

The Court inquired whether the requested discovery was within the jurisdictional reach of the foreign courts. Dec. 23 Trans. at 2 (ECF 18-35). Hornbeam's counsel represented the BVI court "doesn't have jurisdiction over ... Warren Steel", Dec. 23 Trans. at 19, which is highly misleading. However, Hornbeam's counsel did not disclose that BVI defendant Halliwel would be required to disclose all relevant documents within its possession or control, including documents in possession of Warren Steel. This would include Warren Steel bank records reflecting payments for loans wired through the New York banks. The duty of disclosure is discussed in the undisputed BVI legal expert declaration of Robert Nader, ¶¶ 56-63 (ECF 18-21). Hornbeam's counsel's statement is thus highly misleading because the information sought was available in the BVI. *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) ("The relevant inquiry is whether the evidence is available to the foreign tribunal. In this case, it is. Thus, §1782 aid is both unnecessary and improper.").

### Hornbeam's Misrepresentation Regarding Circumvention of BVI Policies

The Court inquired whether "this sort of request is circumventing what you could do in the BVI?" Dec. 23 Trans. at 19 (ECF 18-35). Hornbeam's counsel did not disclose seeking discovery in the U.S. before filing claims in the BVI was intended to circumvent BVI policy because Hornbeam would have been required to pay the $846,526 judgment and post $250,000 for security, as set forth in the uncontested Nader BVI expert declaration, before being permitted to proceed in the BVI. Nader Dec. ¶48-51(ECF 18-21). This misrepresentation was compounded by Hornbeam concealing that its BVI proceeding was dismissed as "an abuse" and

the existence of the corresponding $846,526 judgment.  Hornbeam's counsel further did not disclose that the BVI Court would set the terms of disclosure including production of Warren Steel records.  Nader Dec. ¶¶ 56-63 (ECF 18-21).

Respectfully submitted,

**REED SMITH LLP**

By: /s/ Steven Cooper
Steven Cooper
Samuel Kadosh
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
scooper@reedsmith.com
Skadosh@reedsmith.com

*and*

**MARKS & SOKOLOV, LLC**

By: /s/ Bruce S. Marks
Bruce S. Marks
1835 Market Street, 28th Floor
Philadelphia, PA 19103
Telephone: (215) 569-8901
Facsimile: (215) 569-8912
marks@mslegal.com

*Attorneys for Movant Panikos Symeou*