UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/17/2015___

-----------------------------------------------------------X
                                 :

IN RE:                        :             14 Misc. 424 (Part 1)
                                 :

APPLICATION OF HORNBEAM CORP.    :      **MEMORANDUM & ORDER**
                                 :

-----------------------------------------------------------X

Appearances:

James H. Power
Sam Spital
Sean P. Barry
Stosh Silivos
Holland & Knight LLP
New York, New York
*Counsel for Applicant Hornbeam Corp.*

Steven Cooper
Samuel Kadosh
Reed Smith LLP
New York, New York

Bruce Marks
Marks & Sokolov, LLC
Philadelphia, Pennsylvania
*Counsel for Movant Panikos Symeou*

VERNON S. BRODERICK, United States District Judge:

      While sitting in Part I, I granted the *ex parte* application (the "Application," Doc. 1) of

Hornbeam Corporation ("Hornbeam") for an order pursuant to 28 U.S.C. § 1782 authorizing it to

obtain discovery from banks and professional service providers within the Southern District of

New York for use in anticipated litigation in the British Virgin Islands ("BVI").  (*See* Doc. 5, the

"Authorizing Order").  Before me are the motions of Panikos Symeou ("Symeou") to intervene

in these proceedings and to vacate the Authorizing Order.  Symeou's motion to vacate also seeks

other relief, including that Symeou be provided with a copy of all subpoenas issued and all

1

discovery obtained under the Authorizing Order.  Although I find that Symeou has demonstrated that he has standing to intervene and is correct that a party should provide notice to its anticipated adversaries in foreign litigation before serving a third-party subpoena to obtain discovery in aid of that litigation, nothing presented by Symeou alters my previous conclusions that Hornbeam satisfies the requirements to obtain such discovery for use in contemplated foreign proceedings pursuant to § 1782 and that granting the Application was a proper exercise of my discretion.  Accordingly, for the reasons stated below, Symeou's motion to intervene is GRANTED, and Symeou's motion to vacate is GRANTED IN PART and DENIED IN PART.

## I.    <u>Background</u>[1]

This Order assumes familiarity with and incorporates by reference the factual background presented in the Authorizing Order.  Briefly summarized, the underlying dispute between the parties concerns the fate of Warren Steel Holdings, LLC ("Warren Steel"), a joint venture among Vadim Shulman ("Shulman"), Igor Kolomoisky ("Kolomoisky"), and Genady Bogolubov ("Bogolubov") (collectively, the "Oligarchs").  Halliwel Assets Inc. ("Halliwel") is the sole member of Warren Steel.  Shulman is the ultimate beneficial owner of Hornbeam, which owns a one-third stake in Halliwel.  Hornbeam alleges that, in an effort to exclude and oppress Shulman, Halliwel has put up Warren Steel's assets as collateral for loans from third parties controlled by Kolomoisky and Bogolubov.  At the time it filed the Application, Hornbeam had previously initiated two actions in the BVI related to this dispute, both of which were dismissed.  Hornbeam represented in the Application that it intended to file a new lawsuit in the BVI asserting causes of action for shareholder oppression and breach of contract.

I issued the Authorizing Order in my capacity as Part I Judge on December 24, 2014.  On

---

[1] The following is only a brief summary of background information to provide some context for this Memorandum and Order and does not include any findings of fact.

June 17, 2015, Symeou, a Cypriot lawyer who is the sole director of Halliwel and the legal owner of Kolomoisky's one-third share of Halliwel, (*see* Symeou Decl. ¶¶ 1-3),[2] filed the instant motions to intervene and vacate.  Symeou also filed a proposed temporary restraining order ("TRO") that sought to require Hornbeam to disclose the discovery it had previously obtained and to refrain from using it in the interim.[3]  Because I found that Symeou failed to show he would suffer immediate irreparable injury before Hornbeam could be given notice, I concluded that the issuance of a TRO without notice would be improper pursuant to Federal Rule of Civil Procedure 65(b)(1).  I held a hearing on June 22, 2015, with counsel for Hornbeam and Symeou present.

At the hearing, I instructed the parties to enter into a protective order that would prevent Hornbeam from issuing additional subpoenas and from disseminating or using the discovery it had already obtained pending my resolution of Symeou's motions to intervene and vacate.  (*See* 6/22 Tr. 39-41.)[4]  The parties entered into a Protective Order on June 29, (Doc. 27); Hornbeam filed papers in opposition to Symeou's motions on July 10, (Docs. 22-25)[5]; and Symeou filed reply papers on July 20, (Docs. 19-21).  I had scheduled a hearing on Symeou's motions on August 7, 2015 but advised the parties that I did not think it was necessary and offered them the opportunity to describe any additional material they might wish to present at the hearing.  (Doc. 28.)  The parties did not indicate that they wished to present additional material, so I adjourned the hearing, (Doc. 29), and between August 6 and September 2 the parties submitted a total of five supplemental letters, (Docs. 30-34).

---

[2] "Symeou Decl." refers to the Declaration of Panikos Symeou.  (Doc. 18-17.)
[3] Because Symeou was not a party to the § 1782 action initiated by Hornbeam, Symeou did not file his papers on ECF at that time.  They have since been filed.  (*See* Docs. 15-18.)
[4] "6/22 Tr." refers to the Transcript of Proceedings of June 22, 2015.  (Doc. 8.)
[5] Hornbeam's opposition papers were not filed on ECF until a later date after Symeou had filed his motion papers on ECF.

## II.    Discussion

### A.    *Motion to Intervene*

The Second Circuit has explained:

> [S]tanding to oppose subpoenas issued under § 1782 is [not] limited to the
> subpoenaed witness.  We have recognized, though implicitly, that parties against
> whom the requested information will be used may have standing to challenge the
> lawfulness of discovery orders directed to third parties.  [T]he ultimate targets of a
> § 1782 discovery order issued to third parties have standing to challenge the district
> court's power to issue a subpoena under the terms of an authorizing statute.

*In re Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (citations and internal

quotation marks omitted); *see also Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012)

(summary order) (explaining that *ex parte* consideration of a § 1782 application does not violate

due process of subpoena respondents or interested parties because they "can later challenge any

discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)").

Hornbeam represented in the Application that Symeou was among the parties against whom it

intended to initiate proceedings in the BVI.  (*See* Application 3.)  Therefore, Symeou is a

"part[y] against whom the requested information will be used" and has standing to challenge the

issuance of § 1782 subpoenas under the Rules of Civil Procedure and under the statute itself.  *In

re Application of Sarrio, S.A.*, 119 F.3d at 148; *see also In re Letter Rogatory from Justice Court,

Montreal*, 523 F.2d 562, 564 (6th Cir. 1975).  Therefore, it does not appear necessary for me to

determine whether Symeou satisfies the requirements for intervention of right or permissive

intervention pursuant to Federal Rule of Civil Procedure 24.

However, to the extent that it is necessary to rule on Symeou's motion to intervene, I

conclude that Symeou is entitled to permissive intervention.  To establish intervention as of right

pursuant to Rule 24(a), an applicant must  (1) timely file an application; (2) show an interest in

the action; (3) demonstrate that the interest may be impaired by the disposition of the action; and

4

(4) show that the interest is not adequately protected by the parties to the action. *See, e.g.*, *United States v. City of New York*, 198 F.3d 360, 364 (2d Cir. 1999). In exercising my broad discretion to determine whether an applicant is entitled to permissive intervention under Rule 24(b), I consider these same factors, as well as whether the proposed intervention will unduly delay or prejudice the adjudication of the parties' rights. *See In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003); *MASTR Adjustable Rate Mortg. Trust 2006-OA3 v. UBS Real Estate Sec., Inc.*, No. 12-CV-7322, 2013 WL 139636, at *2 (S.D.N.Y. Jan. 11, 2013). In evaluating whether the requirements for intervention are met, courts "accept as true the non-conclusory allegations of the motion . . . ." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Am.*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009) (internal quotation marks omitted); *accord Floyd v. City of New York*, 302 F.R.D. 69, 83 (S.D.N.Y. 2014).

There is no dispute that Symeou's motion is timely; Symeou learned of these proceedings in mid-May 2015, (Symeou Decl. ¶¶ 30-31), and moved to intervene in mid-June 2015. The material that Hornbeam was permitted to subpoena pursuant to the Authorizing Order included "[c]opies of all wire transfer records processed by the New York Banks, as intermediary banks," in which Symeou was "an originator, beneficiary, or is otherwise referenced in the wire transfer." (Authorizing Order ¶ III.1.D.) Symeou asserts that these wire transfer records may include personal financial information in which he maintains a confidentiality interest, (*see* Doc. 15 at 6), and permissive intervention is an appropriate means for Symeou to vindicate any confidentiality interests he might have, *see, e.g.*, *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (permissive intervention proper method for nonparty to seek modification of protective order); *Dorsett v. Cnty. of Nassau*, 283 F.R.D. 85, 90-91 (E.D.N.Y. 2012). Hornbeam also clearly represented that it intended to sue Symeou in the BVI. (*See* Application 3.)

Although Hornbeam asserts that none of the information it received in response to the subpoenas concerned Symeou, that does not mean that the information cannot be used against Symeou, and, for purposes of a motion to intervene, neither Symeou nor I am required to accept at face value Hornbeam's assertion that it "is not going to use the requested information against Symeou," (Intervention Opp. 3).[6]  *See Aristocrat Leisure*, 262 F.R.D at 352.  Furthermore, no party to this action would adequately protect Symeou's interests.  The only existing party, Hornbeam, is adverse to Symeou, and the recipients of the subpoenas have not moved to quash them and as far as I know have not shown any interest in doing so.  Finally, Hornbeam has not identified any prejudice it would suffer from permitting Symeou to intervene.  (*See* Intervention Opp. 4.)

For the foregoing reasons, Symeou has established that permissive intervention pursuant to Federal Rule of Civil Procedure 24(b) is appropriate, and his motion to intervene will be GRANTED.

## B.    *Motion to Vacate*

Symeou argues that Hornbeam's Application suffered from various procedural and substantive defects; that the Authorizing Order must therefore be vacated and the Application denied; and that Hornbeam must disclose all subpoenas issued and documents obtained pursuant to the Authorizing Order.  Procedurally, Symeou contends that Hornbeam should not have proceeded *ex parte*; that Hornbeam's counsel violated their heightened duty of candor under those circumstances; and that, regardless, Hornbeam should have provided its expected adversaries in the anticipated BVI litigation with notice of the issuance of subpoenas.  (*See* Vacatur Mem. 11-15.)[7]  Substantively, Symeou's central argument is that the Application was a

---

[6] "Intervention Opp." refers to Hornbeam's Memorandum of Law in Opposition to Panikos Symeou's Motion to Intervene.  (Doc. 25.)  In making this comment I do not mean to suggest that I suspect that Hornbeam is not being candid.

[7] "Vacatur Mem." refers to the Memorandum of Law in Support of Panikos Symeou's Order to Show Cause to

ruse and that Hornbeam did not reasonably contemplate any BVI litigation.  (*See id.* at 16-20.)

Symeou claims that Hornbeam actually sought discovery to enable Shulman to file an action in

state court in Ohio for an accounting of Warren Steel and an injunction against the sale or

transfer of any Warren Steel assets to entities controlled by Kolomoisky or Bogolubov.  Such an

action (the "Ohio Action") was in fact filed in the Court of Common Pleas for Trumbull County,

Ohio, on June 15, 2015, (*see* Kadosh Decl. Ex. 40),[8] and Shulman obtained a TRO from the

Court of Common Pleas enjoining the sale of Warren Steel assets to such entities or the credit

bid by Warren Steel of any loan to such entities, (*id.* Ex. 44).[9]  The TRO was subsequently

vacated on the grounds that Shulman and Bracha lacked standing to sue because they were not

registered shareholders of Halliwel, and an inquiry into whether Shulman and Bracha were

actually shareholders of Halliwel despite not being registered as such would interfere with the

BVI's ability to regulate the affairs of a BVI corporation under the internal affairs doctrine.  (*See*

Kadosh 2d Decl. Ex. 46.)[10]  Symeou also offers additional reasons why Hornbeam failed to

satisfy the requirements of § 1782 and failed to show that an exercise of discretion in its favor

was warranted.  (*See* Vacatur Mem. 21-24.)

### 1.    *Ex Parte* Proceedings

District courts may and customarily do resolve applications for discovery pursuant to §

1782 through *ex parte* proceedings.  *See, e.g.*, *Gushlak*, 486 F. App'x at 217; *Application of*

*Esses*, 101 F.3d 873, 874 (2d Cir. 1996); *In re Ishihara Chem. Co.*, 121 F. Supp. 2d 209, 210 n.1

---

Vacate *Ex Parte* Order and Deny 28 U.S.C. § 1782 Application.

[8] "Kadosh Decl." refers to the Declaration of Samuel Kadosh.  (Doc. 18.)

[9] The Plaintiffs in the Ohio Action were Shulman and Bracha Foundation ("Bracha"), a Liechtenstein entity that, according to Hornbeam, is an intermediate beneficial owner of Shulman's shares in Halliwel interposed between Hornbeam and Shulman, (*see* Declaration of Fabrizio N. Campanile in Opposition to Panikos Symeou's Order to Show Cause to Vacate *Ex Parte* Order and Deny § 1782 Application ("Campanile Decl."), Doc. 24, ¶ 4).  The Defendants in the Ohio Action included Kolomoisky, Bogolubov, Symeou, Halliwel, and Warren Steel itself.

[10] "Kadosh 2d Decl." refers to the Second Declaration of Samuel Kadosh.  (Doc. 21.)

(E.D.N.Y. 2000), *vacated as moot*, 251 F.3d 120 (2d Cir. 2001); *In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991); *see also In re Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais*, No. 13-MC-266, 2013 WL 6164435, at *2 n.1 (E.D. Pa. Nov. 22, 2013) (collecting recent cases).  The Committee on International Commercial Disputes of the New York City Bar noted in a report concerning the use of § 1782 as a means of obtaining discovery that "Section 1782 applications may be made on an *ex parte* basis by a party (or nonparty) directly to a district court, without the need to notify in advance the party from whom discovery is sought or the adverse party in the foreign proceeding."  Comm. on Int'l Commercial Disputes, N.Y.C. Bar Ass'n, 28 U.S.C. § 1782 as a Means of Obtaining Discovery in Aid of International Commercial Arbitration—Applicability and Best Practices 15, http://www.nycbar.org/pdf/report/1782_Report.pdf.

Symeou points out that Hornbeam failed to make a showing by affidavit, pursuant to Local Rule 6.1, "why a procedure other than by notice of motion is necessary."  S.D.N.Y. Local Civ. Rule 6.1(d).[11]  Given the widespread recognition that § 1782 applications are properly handled *ex parte*, the fact that Hornbeam brought a § 1782 application might alone be understood as a "good and sufficient reason[]" for proceeding *ex parte* that satisfies the substance of Local Rule 6.1(d).  Indeed Symeou does not identify precedent from this district that prohibits a district court from hearing § 1782 applications *ex parte*.[12]  In any event, district courts have broad discretion to overlook noncompliance with Local Rules.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).  Any noncompliance with Local Rule 6.1 therefore does not provide a

[11] Local Rule 6.1(d) provides that "[n]o *ex parte* order, or order to show cause to bring on a motion, will be granted except upon a clear and specific showing by affidavit of good and sufficient reasons why a procedure other than by notice of motion is necessary, and stating whether a previous application for similar relief has been made."
[12] *In re Merck & Co.*, 197 F.R.D. 267, 271 (M.D.N.C. 2000), cited by Symeou, essentially stands for the unremarkable proposition that a district court has the discretion to require notice to an interested party before a § 1782 request is considered.

basis to vacate the Authorizing Order.

Symeou also argues that Hornbeam's counsel violated their heightened duty of candor to the tribunal while proceeding *ex parte*, *see* N.Y. R. Prof'l Conduct 3.3(d), by failing to disclose certain allegedly relevant facts.  (*See* Vacatur Mem. 12-14.)  I need not determine whether Hornbeam's counsel violated their duty of candor.  Even if they did, Symeou provides no argument and cites no authority for the proposition that a lawyer's violation of the Rules of Professional Conduct provides sufficient grounds to vacate an order authorizing the lawyer's client to issue a subpoena.  I may vacate the Authorizing Order if, after considering any facts not known to me at the time I issued it, I conclude that the requirements of § 1782 are not satisfied. *See Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6, 8 (2d Cir. 2014) (summary order).  However, vacating an order on the basis of newly presented material facts is not the same as vacating an order as a sanction for an alleged ethical failure by counsel to present those facts in the first instance.  And since I determine below that the newly presented facts do not alter my view that the requirements of § 1782 were met, even assuming the ethical violation posited by Symeou I would not vacate the Authorizing Order as a sanction for such a transgression.

For these reasons, the *ex parte* nature of the prior proceedings in this matter does not provide Symeou with valid basis to vacate the Authorizing Order.

### 2.    Notice of Issuance of Subpoenas

Pursuant to the text of § 1782, unless the district court's order authorizing discovery provides otherwise, "the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."  28 U.S.C. § 1782(a). Symeou argues that, in accordance with the Federal Rules of Civil Procedure, Hornbeam should

have provided him (and the other expected defendants in the anticipated BVI litigation) with notice before serving any subpoenas.  (*See* Vacatur Mem. 14-15.)  The parties have cited cases that address whether notice to the adverse party is required when taking other kinds of discovery pursuant to § 1782.  However, neither party has cited and I have not identified any case dealing with the exact factual circumstances of this case, which involves service of subpoenas *duces tecum* pursuant to § 1782 to aid foreign litigation that does not yet exist.  However, upon a review of the Federal Rules and the circumstances in which courts have applied the Rules to § 1782 requests, I agree with Symeou that notice of service of the subpoenas was required under the circumstances.

Federal Rule of Civil Procedure 45(a)(4) provides that notice must be served on each party to an action before a subpoena commanding the production of documents or tangible things is served on any third party.  *See* Fed. R. Civ. P. 45(a)(4).  Therefore, unless the district court's authorizing order provides otherwise, a party engaged in foreign litigation who serves a § 1782 subpoena *duces tecum* to obtain documents for use in the foreign litigation must first serve notice on all parties to the foreign proceedings.  *See In re Edelman*, 295 F.3d 171, 178-79 (2d Cir. 2002) (protections of Rule 45 apply to persons subpoenaed pursuant to § 1782); *see also Tex. Keystone, Inc. v. Prime Natural Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012) (once threshold determination is made that applicant is entitled to take discovery under § 1782, § 1782 "drops out" and the Federal Rules govern subsequent events).  Similarly, consistent with Rule 30(b)(1), a party to foreign litigation who has been authorized under § 1782 to obtain testimony for use in that litigation must ordinarily provide notice to all other parties before doing so.  *See In re Letters Rogatory from Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019-20 (9th Cir. 1994); *In re Letter of Request from the Supreme Court of Hong Kong*, 138 F.R.D. 27, 31 (S.D.N.Y.

1991).  And, where a person is authorized under § 1782 to obtain a witness's testimony before

commencing anticipated foreign litigation, he must serve first notice on "each expected adverse

party" pursuant to Federal Rule of Civil Procedure 27, which governs depositions to preserve

testimony in advance of litigation.  Fed. R. Civ. P. 27(a)(2); *see Tokyo Dist. Prosecutor's Office*,

16 F.3d at 1020; *Supreme Court of Hong Kong*, 138 F.R.D. at 31.

Here, the circumstances are slightly different:  Hornbeam was authorized to subpoena

documents for use in anticipated foreign litigation which had not yet been initiated and to which

Hornbeam was not yet a party.  The Rules of Civil Procedure include express notice

requirements for subpoenas during active litigation, *see* Fed. R. Civ. P. 45(a)(4), depositions

during active litigation, *see* Fed. R. Civ. P. 30(b)(1), and depositions in advance of litigation, *see*

Fed. R. Civ. P. 27(a)(2), but there is no Rule of Civil Procedure that deals with subpoenas in

advance of litigation.  Hornbeam therefore argues that it was not obligated to provide any notice

to its expected adversaries in the BVI proceedings it contemplated.  (*See* Vacatur Opp. 3-5.)[13]

This narrow reading is inconsistent with the "basic purpose" of the Federal Rules of Civil

Procedure, which is to "eliminate trial by ambush" and encourage full disclosure of relevant

information among the parties.  *Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966); *see also, e.g.*,

*Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979); *In re Zyprexa Injunction*,

474 F. Supp. 2d 385, 414-15 (E.D.N.Y. 2007); *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D.

87, 93 (S.D.N.Y. 2002).  In light of the objectives of the Federal Rules, it simply makes no sense

to require that Hornbeam provide notice of a subpoena *duces tecum* or a deposition to its

adversaries in actual foreign litigation, or of a deposition to its expected adversaries in

anticipated foreign litigation, but not of a subpoena *duces tecum* to its expected adversaries in

---

[13] "Vacatur Opp." refers to Hornbeam's Memorandum of Law in Opposition to Panikos Symeou's Motion to
Vacate.  (Doc. 23.)

anticipated foreign litigation.[14]  In other words, the Federal Rules generally require notice to one's actual or expected adversaries when taking discovery from third parties.  *See* Fed. R. Civ. P. 27(a)(2), 30(b)(1), 45(a)(4).  A party should not be permitted to avoid this notice requirement under § 1782 by using a particular form of discovery—a pre-litigation subpoena for the production of documents—that is even more expansive than those expressly contemplated by the Federal Rules.

I therefore conclude that, because § 1782 provides for discovery in accordance with the Federal Rules and because I did not order otherwise, Hornbeam was obligated to provide notice to its expected adversaries before issuing subpoenas to third parties to obtain documents for use in anticipated BVI litigation.  Symeou was among the expected adversaries, (*see* Application 3), and Hornbeam did not provide him with notice before issuing its subpoenas.  I will consider the appropriate remedy for Hornbeam's failure to do so below, after considering whether Symeou is entitled to relief on any other grounds.

### 3.    Requirements of § 1782

Symeou argues that Hornbeam does not satisfy the legal requirements to obtain discovery under § 1782.  (Vacatur Mem. 15-20.)  I am authorized to grant a § 1782 request if  (1) the person from whom discovery is sought resides or is found in the district where the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or an "interested person."  *Schmitz v.*

---

[14] Of course, where countervailing interests support a party's need to take discovery in secret, a district court can always impose restrictions consistent with the Federal Rules of Civil Procedure or order, pursuant to 28 U.S.C. § 1782(a), that discovery *not* be taken in accordance with the Federal Rules.  Thus, for example, in *In re Letter of Request from Government of France*, 139 F.R.D. 588, 592 (S.D.N.Y. 1991), on which Hornbeam relies, the adverse party in the foreign litigation was not entitled to notice of the examinations taken under § 1782 because the foreign litigation was a French criminal investigation, and French law provides that the subject of a criminal investigation is not entitled to notice of witness examinations.  Here, Hornbeam does not provide and an independent review of the record does not reveal a reason why Hornbeam could not have provided notice to its anticipated adversaries before serving its subpoenas.

*Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004).  The proceeding before a foreign or international tribunal need not be ongoing or imminent; a dispositive ruling must merely be within "reasonable contemplation."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).  I previously concluded that the Application was sufficient on its face to satisfy these requirements for the reasons set forth in the Authorizing Order.  I will not provide a further explanation of my reasoning, except to the extent that Symeou relies on information not before me in the record at the time I issued the Authorizing Order.

Symeou essentially makes four new arguments why the § 1782 requirements are not satisfied.  None is particularly persuasive or availing.

First, the central point of Symeou's motion to vacate is that Hornbeam's real intention in filing the Application was to obtain discovery for use in the Ohio Action, not in a future BVI proceeding.  I do not agree.  The fact that Shulman filed suit in Ohio in June 2015 does not disprove that Hornbeam reasonably intended to sue in the BVI when it filed the Application in December 2014, or that Hornbeam still reasonably intends to sue in the BVI at some point in the future.  The primary purpose of the Ohio Action is to enjoin Halliwel from selling Warren Steel to parties controlled by Bogolubov and Kolomoisky, and Hornbeam presents uncontroverted evidence that it did not learn of Halliwel's intention to sell Warren Steel until February 2015, well after the issuance of the Authorizing Order.  (*See* Campanile Decl. ¶¶ 8-9.)  Although Hornbeam's Application clearly did not disclose all facts that might have been relevant to its request known to it at the time, I do not find that it was a ruse.

Second, Symeou argues that the purported reason why Hornbeam needed to obtain discovery—to determine whether certain parties that lent money to Warren Steel (the "Related Parties") were controlled or funded by Kolomoisky and Bogolubov—was a fabrication.  (*See*

Vacatur Mem. 16-17.)  According to Symeou, it was undisputed in prior BVI proceedings that Warren Steel accepted loans from parties controlled by Kolomoisky and Bogolubov because no one else would lend to Warren Steel in its distressed condition.  (*Id.* at 16; *see* Doc. 14-6 ¶ 5.4.) In the Authorizing Order, I explained that the material Hornbeam sought to discover was "potentially critical" to Hornbeam's anticipated BVI proceedings because it was "relevant" to whether Kolomoisky and Bogolubov controlled or funded the Related Parties.  (Authorizing Order 6.)  However, my reference to this particular reason for Hornbeam's request was meant to be illustrative, and it was not intended to suggest that this was the *only* reason why the material Hornbeam sought would be relevant in future BVI litigation.  Hornbeam also offered other valid reasons why the material it wished to subpoena would be useful in such proceedings.  By way of example, Hornbeam explained that it wanted to determine whether the loans issued to Warren Steel by the Related Parties were merely "paper loans," i.e., loans where no cash was exchanged, (*see* 12/23 Tr. 6:14-25),[15] and more generally to determine "the precise nature and specifics of the transactions in which Warren Steel is engaged," (Doc. 2 at 6).  The broader purpose of Hornbeam's discovery requests was to investigate the nature and full context of the loans from the Related Parties to Warren Steel.  In other words, information far beyond the mere fact that loans were made to Warren Steel from entities controlled by Kolomoisky and Bogolubov. Moreover, none of the additional information provided by Symeou demonstrates that this purpose was not genuine or that material bearing on this issue could not be used productively in future BVI litigation.

Third, Symeou argues that Hornbeam's prior attempts to litigate the issue in the BVI resulted in a merits ruling unfavorable to Hornbeam and that Hornbeam would have to satisfy an

---

[15] "12/24 Tr." refers to the Transcript of Proceedings of December 24, 2014.

$846,526 judgment and post $250,000 in security before filing a new BVI action.  (Vacatur

Mem. 17-18; Kadosh Decl. Ex. 21 ¶¶ 48-55.)  I do not find it plausible that these monetary

requirements would stop Hornbeam from litigating in the BVI again.  The underlying

controversy among the Oligarchs is a vigorous, and perhaps even bitter,[16] dispute over tens of

millions of dollars, (*see* 6/22 Tr. 25:19), among extraordinarily wealthy men, (*see, e.g.*, Kadosh

Decl. Ex. 9 (press coverage of the parties' business dealings); *id.* Ex. 11).  Assuming it is true

that Hornbeam would need to pay $1.1 million to pursue its BVI claims, this requirement is a

fairly trivial obstacle in context.  Nor would the existence of the Ohio Action make new

litigation in the BVI unnecessary or duplicative, as the Ohio Action does not include causes of

action for breach of contract or shareholder oppression, (*see id.* Ex. 40 ¶¶ 127-211), which

Hornbeam intended to bring in the BVI, (Application 3).

Finally, Symeou argues that Hornbeam lacks standing to bring claims in the BVI because

it attempted to transfer its shares in Halliwel to a third party prior to filing the Application.

However, as the magistrate in Ohio found in vacating the TRO that had been entered in the Ohio

Action, (*see* Kadosh 2d Decl. Ex. 46 at 4), Hornbeam remains the registered shareholder and

legal owner of Shulman's shares in Halliwel because the attempted transfer has not been

recorded in Halliwel's register of shareholders.  (*See* Campanile Decl. ¶ 6.)  Hornbeam contends

that the transfer of shares has not been recorded because Symeou, who is Halliwel's sole

director, acted in bad faith, (*see id.*), while Symeou asserts that his refusal to record the transfer

was reasonable and justified, (*see* Kadosh 2d Decl. Ex. 47 ¶¶ 7-8).  Either way, there is no

---

[16] I note that counsel for the parties employed rhetoric and made accusations that from my perspective were beyond that which was necessary to be zealous advocates for their respective clients during their appearance before me on June 22, 2015, (*see, e.g.*, 6/22 Tr. 7:12-21, 13:9-12, 13:24, 20:13-20, 35:13-17), so the attitudes or feelings of the clients towards one another may have influenced counsel.  *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 908 (9th Cir. 2002) ("The parties are advised to chill.").

dispute that the shares have not been transferred and that Hornbeam remains on the books as the legal owner of Shulman's one-third of the shares of Halliwel. Symeou fails to explain how the legal owner of shares of a BVI corporation would lack standing to bring claims for shareholder oppression or breach of the co-owners' joint venture agreement.

For the foregoing reasons, any discrepancies in or additions to the record since I issued the Authorizing Order do not lead me to conclude that my previous conclusion that Hornbeam satisfies the legal requirements to obtain discovery in aid of reasonably contemplated foreign proceedings pursuant to § 1782 was incorrect or even ill advised. *See Schmitz*, 376 F.3d at 83.

### 4. Discretionary Factors

If the legal requirements to authorize discovery under § 1782 are satisfied, I next determine whether to exercise my discretion to grant the request by considering four factors: (1) whether the person from whom discovery is sought is not a participant in the foreign proceeding and is therefore outside the foreign tribunal's jurisdictional reach; (2) the nature of the foreign tribunal and its receptivity to judicial assistance by U.S. federal courts; (3) whether the request conceals an attempt to circumvent foreign evidence-gathering rules; and (4) whether the request is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65.

Symeou advances various arguments to support its view that the discretionary factors disfavor discovery. (*See* Vacatur Mem. 20-24.) I already considered whether Hornbeam was attempting to circumvent BVI evidence-gathering procedures and concluded that it was not. (*See* Authorizing Order 8.) I also considered whether Hornbeam's requests were unduly burdensome or intrusive, and after requiring Hornbeam to narrow its requests to exclude unnecessary and irrelevant material, I concluded that they were not. (*See id.* at 8-9.) I have reviewed Symeou's additional legal arguments on these issues and find them to be without merit, and I adhere to my

16

previous conclusions for the reasons stated in the Authorizing Order.

Although as a general matter the additional legal arguments do not warrant discussion, two of Symeou's new arguments merit a brief response.  First, Symeou contends that obtaining discovery through § 1782 is unnecessary because "any relevant documents" can be obtained directly from Halliwel by court order under the BVI Civil Procedure Rules.  (Vacatur Mem. 21.) However, neither Symeou nor his BVI legal expert, (*see* Kadosh Decl. Ex. 21 ¶¶ 57-64), explains how documents in the possession of firms located in New York, none of whom are expected to be parties to the BVI proceedings, would be produced in the BVI proceedings.  To the contrary, Symeou's expert maintains that Halliwel would have an affirmative duty of disclosure, (*id.* ¶¶ 58, 62), and that Hornbeam would have the ability in any BVI litigation to "seek the specific disclosure of directly relevant documents or classes of documents *from parties to the prospective proceedings at any stage of the proceedings*," (*id.* ¶ 63 (emphasis added)).  These statements do not explain how Hornbeam could obtain wire transfer records from non-party financial institutions located outside the jurisdiction.  Second, Symeou argues that I should decline to exercise jurisdiction because the underlying dispute among the parties involves the internal affairs of Halliwel, a BVI corporation, and the BVI should be permitted to apply its law to regulate its own corporation's affairs.  (*See* Vacatur Mem. 22-23 (citing *Pennsylvania v. Williams*, 294 U.S. 176, 184 (1935); *Friedman v. Revenue Mgmt. of N.Y., Inc.*, 839 F. Supp. 203 (S.D.N.Y. 1993)).)  This argument might well be persuasive if the Application implicated substantive questions of Halliwel's governance.  But Symeou fails to explain how resolving Hornbeam's request for discovery from third parties under § 1782 requires any intervention in Halliwel's internal affairs, and Symeou does not cite any authority suggesting that this form of abstention is appropriate in the context of a § 1782 application.  This argument also makes no

sense because a § 1782 request is merely a discovery device not a pleading or means of actually litigating a dispute about Halliwel's internal affairs.  In fact, Hornbeam sought the subpoenas to further its desire to bring an action in the BVI related to Halliwel.  Symeou has therefore failed to show that allowing Hornbeam to obtain discovery would be contrary to principles of comity. *See In re Microsoft Corp.*, 428 F. Supp. 2d 188, 196 (S.D.N.Y. 2006).

Accordingly, I maintain my previous view that the discretionary factors favor granting Hornbeam's request for discovery under § 1782.  *See Intel*, 542 U.S. at 264-65.

### 5.      Remedy

As explained above, I conclude that Hornbeam should have provided notice to Symeou before issuing any subpoenas but was otherwise entitled to receive the discovery it obtained.  I must now determine the appropriate remedy for Hornbeam's failure to provide notice.

Whether to quash a subpoena is "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (internal quotation marks omitted).  It is within my discretion to quash a subpoena pursuant to Rule 45 for failure to provide other parties with notice before serving the subpoena.  *See, e.g.*, *Mirra v. Jordan*, No. 13-CV-5519, 2014 WL 2511020, at *3 (S.D.N.Y. May 28, 2014); *Cootes Drive LLC v. Internet Law Library, Inc.*, No. 01-CV-877, 2002 WL 424647, at *2 (S.D.N.Y. Mar. 19, 2002); *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 412 (S.D.N.Y. 2000).  However, there is no requirement that I do so, and courts often require the party seeking such relief to show that it was prejudiced by the lack of notice before quashing a subpoena for failure to provide notice.  *See, e.g.*, *Malinowski v. Wall Street Source, Inc.*, No. 09-CV-9592, 2010 WL 4967474, at *2 (S.D.N.Y. Nov. 23, 2010); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03-CV-5560, 2008 WL 4452134, at *3 (S.D.N.Y. Oct. 2, 2008) (explaining that the "majority approach" requires a showing of

prejudice); *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166, 2006 WL 2882580, at *11-12 (E.D.N.Y. Oct. 6, 2006).

Here, I do not find it appropriate to exercise my discretion to quash any previously issued subpoenas or vacate the Authorizing Order as a sanction for Hornbeam's failure to provide Symeou with notice that subpoenas would be issued.  As an initial matter, the law on this issue is hardly clear.  Neither party identified a case directly addressing whether a § 1782 applicant is required to provide its expected adversaries with notice before serving subpoenas to obtain discovery in aid of anticipated foreign litigation.  Hornbeam's failure to provide notice is therefore understandable even if ultimately incorrect.  More important, Symeou has not established that he was prejudiced by the lack of advance notice.  Symeou cannot have been prejudiced by his inability to file a motion to vacate the Authorizing Order or a motion to quash the subpoenas at an earlier date, as such a motion would not have been granted for the reasons set forth in this decision.  Symeou also claims he was prejudiced by the fact that no protective order was in place when Hornbeam obtained documents in response to the subpoenas.  (*See* Vacatur Reply 4.)  However, any prejudice resulting from the absence of a protective order would have been exceedingly minimal, as Hornbeam represents that no one was given access to responsive documents other than Shulman and members of his legal team.  (*See* Doc. 27 at 1-2.) I therefore see no reason to exercise my discretion to sanction Hornbeam for its failure to provide advance notice by quashing previously issued subpoenas or vacating the Authorizing Order.

However, consistent with the Federal Rules of Civil Procedure, Hornbeam must now remedy its failure to provide notice to Symeou by providing Symeou with a copy of all subpoenas previously served under the Authorizing Order.  *See* Fed. R. Civ. P. 45(a)(4). Symeou is also entitled to inspect all materials produced in response to the previously issued

subpoenas.  *See* Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment ("Parties desiring access to information produced in response to the subpoena will need to follow up with the party serving it or the person served to obtain such access.  The rule does not limit the court's authority to order notice of receipt of produced materials or access to them.  *The party serving the subpoena should in any event make reasonable provision for prompt access*." (emphasis added)); *see also Coleman-Hill v. Governor Mifflin Sch. Dist.*, 271 F.R.D. 549, 552 (E.D. Pa. 2010) ("The purpose of prior notice is to afford other parties an opportunity to object to the production or inspection and to obtain the materials at the same time as the party who served the subpoena.").

### III.   <u>Conclusion</u>

For the foregoing reasons, Symeou's motion to intervene is GRANTED, and Symeou's motion to vacate is GRANTED IN PART and DENIED IN PART.  It is hereby ORDERED that

- No later than ten (10) business days from the date of this Memorandum and Order, Hornbeam shall provide Symeou with a copy of  (1) all subpoenas issued pursuant to the Authorizing Order; and (2) all documents or other materials received in response to such subpoenas (the "Responsive Materials").

- The parties shall meet and confer as soon as possible to discuss any issues relating to the confidentiality of the Responsive Materials.  Within five (5) business days from the date of this Memorandum and Order, the parties shall provide the court with either (1) a proposed amended protective order; (2) a joint letter explaining that no changes to the existing Protective Order are required; or (3) a joint letter setting forth any disputes regarding the language of a proposed amended protective order that require my resolution.

- The existing Protective Order shall remain in effect unless and until I order otherwise.

- If Hornbeam initiates proceedings in the BVI of the type described in its Application, Hornbeam may use the Responsive Materials in such proceedings.  Hornbeam may not use the Responsive Materials in any other litigation without demonstrating good cause to me.

- In the event Hornbeam wishes to serve any additional subpoenas pursuant to the Authorizing Order, Hornbeam shall first serve copies on its expected adversaries in the anticipated BVI proceedings and shall ensure that any responsive materials are produced to its expected adversaries at or close to the same time they are produced to Hornbeam.

SO ORDERED.

Dated:      September 17, 2015
            New York, New York

Vernon S. Broderick
United States District Judge