UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE: | 14 Misc. 424 (VSB) |
| APPLICATION OF HORNBEAM CORP. | |

**MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR PANIKOS SYMEOU'S
MOTION FOR RELIEF FROM THE COURT'S SEPTMEBER 17, 2015 ORDER**

**Reed Smith LLP**
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

and

**Marks & Sokolov, LLC**
1835 Market Street, 28th Floor
Philadelphia, PA 19103
(215)569-8901

*Attorneys for Intervenor Panikos Symeou*

## <u>TABLE OF CONTENTS</u>

Page

PREMILINARY STATEMENT ................................................................. 1

PROCEDURAL AND FACTUAL BACKGROUND ................................................ 3

    A.   HORNBEAM'S EX PARTE §1782 APPLICATION AND DECEMBER 24, 2014
          ORDER ............................................................................ 3

    B.   SYMEOU LEARNS OF THE APPLICATION, ORDER, AND
          SECRET DISCOVERY ............................................................ 3

    C.   THE 2015 OPINION ............................................................... 4

    D.   THE BVI EXECUTION PROCEEDINGS ........................................... 4

    E.   THE WIRE RECORDS ............................................................ 6

ARGUMENT ................................................................................... 7

I.    THE 2014 ORDER AND 2015 OPINION SHOULD BE VACATED OR MODIFIED
       BASED ON THE WIRE RECORDS WHICH DEMONSTRATE THE AUTHORIZED
       DISCOVERY IS NOT PROBATIVE OF ANY ISSUE IN DISPUTE AND DISCLOSES
       IRRELEVANT CONFIDENTIAL AND PROPRIETARY INFORMATION ................... 8

    A.   THE WIRE RECORDS ARE ALMOST ENTIRELY IRRELEVANT .......................... 10

    B.   THE WIRE RECORDS REVEAL IRRELEVANT CONFIDENTIAL PROPRIETARY
          AND PERSONAL INFORMATION ................................................ 11

II.   THE 2014 ORDER AND 2015 OPINION SHOULD BE VACATED BASED
       ON THE WIRE RECORDS AND APPLICATION OF THE "INTERNAL AFFAIRS
       DOCTRINE" ...................................................................... 12

    A.   THE INTERNAL AFFAIRS DOCTRINE ............................................. 12

    B.   THE INTERNAL AFFAIRS DOCTRINE" PRECLUDES DISCOVERY OF
          INTERNAL FINANCIAL INFORMATION OF HALLIWEL AND ITS
          SUBSIDIARY WARREN STEEL .................................................. 14

III.  THE 2014 ORDER AND 2015 OPINION SHOULD BE STAYED PENDING
       RESOLUTION OF THE BVI EXECUTION PROCEEDINGS BASED ON
       DEVELOPMENTS IN THE BVI EXECUTION PROCEEDINGS AFTER
       THE 2015 OPINION .............................................................. 16

    A.   SOUND DOCKET MANAGEMENT AND INTERNATIONAL COMITY SUPPORT
          THE STAY ...................................................................... 18

    B.   FAIRNESS TO LITIGANTS SUPPORTS THE STAY ................................. 20

    C.   JUDICIAL EFFICIENCY SUPPORTS THE STAY ................................... 20

IV.  THE WIRE RECORDS REVEAL A CONTINUED VIOLATION OF
       HORNBEAM'S DUTY OF DISCLOSURE .............................................. 21

CONCLUSION ................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank,*
    731 F.2d 112 (2d Cir.1984)...................................................................................9

*In re Braga,*
    789 F.Supp.2d 1294 (S.D. Fla. March 15, 2011)......................................17, 18, 20

*Caspian Invest., Ltd. v. Vicom Holdings, Ltd.,*
    770 F. Supp. 880 (S.D.N.Y. 1991)..............................................................17, 20

*Esterella v. Morisseau,*
    2015 U.S. Dist. LEXIS 135547 (E.D.N.Y. Sept. 30, 2015)...................................22

*Finanz AG Zurich v. Banco Economico S.A.,*
    192 F.3d 240 (2d Cir. 1999).................................................................................18

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba,*
    462 U.S. 611 (1983)...........................................................................................13

*In re Flag Telecom Holdings, Ltd. Securities Litigation,*
    No. 02 Civ. 3400 WCC, 2006 WL 2642192 (S.D.N.Y. Sept. 13, 2006)...................8

*In re Glitnir Bank HF.,*
    No. 08-14757 (SMB), 2011 WL 3652764 (Bankr. S.D.N.Y., Aug. 19, 2012).........9

*Hoyle v. Dimond,*
    612 F. Supp. 2d 225 (S.D.N.Y. 2005)....................................................................9

*In re Noboa,*
    Misc. Nos. M18-302, M19-111, 1995 WL 581713 (S.D.N.Y. Oct. 4, 1995).........18

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004)...........................................................................................15

*Kan v. Noro-Moseley Partners,*
    246 Fed. App. 662 (11th Cir. 2007)....................................................................8

*Kenner Products Co. v. Societe Fonciere et Financiere Agache-Willot,*
    532 F. Supp. 478 (S.D.N.Y. 1982).......................................................................17

*Koch v. Greenberg,*
    No. 07 CIV. 9600 (BSJ) (DF), 2009 WL 2143634 (S.D.N.Y., July 14, 2009) .......8

*In re Kreke Immobilien*,
    2013 WL 5966916 (S.D.N.Y. 2013) ........................................................................................14

*Landis v. North Am. Water Works and Elec. Co.*,
    299 U.S. 248 (1936) ...............................................................................................................16

*Miccosukee Tribe of Indians of Fla. v. South Fla. Water Mgmt. Dist.*,
    559 F.3d 1191 (11th Cir. 2009) .............................................................................................20

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006) ............................................................................15, 16

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986) ......................................................................................................7

*In re OOO Promnefstroy*,
    2009 WL 3335608 (S.D. N.Y. 2009) ................................................................................8, 16

*Matter of Palco Group Enters. LLC v. Collect Edge Servs. LLC*,
    15 Misc. 3d 1147(A) (Sur. Ct. Nassau Cty. June 6, 2007) ....................................................13

*Pennsylvania v. Williams*,
    294 U.S. 176 (1935) ...............................................................................................................12

*PHP Liquidating, LLC v. Robbins (In re PHP Healthcare Corp.)*,
    128 Fed. Appx. 839 (3d Cir. 2005) ........................................................................................13

*In re Pinchuk*,
    14-CIV-20047, 2014 WL 1328484 (S.D. Fla. Mar. 31, 2014) ..................................17, 18, 20

*Pravin Banker Assocs. v. Banco Popular Del Peru*,
    109 F.3d 850 (2d Cir. 1997) ...................................................................................................18

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*,
    No. 96 CIV 7590 (DAB) (JCF), 1997 WL 736726 (S.D.N.Y. Nov. 26, 1997) ......................9

*In re Puda Coal Sec. Inc., Litig.*,
    No. 11 Civ. 598(KBF), 2014 WL 715127 (S.D.N.Y. Feb. 21, 2014) .......................................6

*Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Group, PLC*,
    2012 WL 4767180 (S.D.N.Y. Sept. 28, 2012) ......................................................................20

*Relief Assn. of The Union Works v. Equitable Life Assur. Soc.*,
    140 Ohio St. 68, 42 N.E.2d 653 (1942) ................................................................................13

*Republic of Venezuela v. Philip Morris Cos., Inc.*,
    No. 99-0586-Civ, 1999 WL 33911677 (S.D. Fla. April 28, 1999) .........................................16

*Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006) ................................................................................. 18

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) ................................................................................. 15

*Sea Tow Intern'l, Inc. v. Pontin*,
    246 F.R.D. 421 (E.D.N.Y. 2007) .......................................................................... 8

*Strauss v. Credit Lyonnais, S.A.*,
    No. 06-CV-702 DLI MDG, 2011 WL 4736359 (E.D.N.Y. Oct. 6, 2011) .......................... 9, 11

*Terra Energy Techs., Inc. v. Terralinna Pty. Ltd.*,
    No. 12-cv-1337 (KNF), 2014 WL 5690416 (S.D.N.Y. Nov. 5, 2014) ...................................... 7

*Turner Entm't Co. v. Degeto Film GmbH*,
    25 F.3d 1512 (11th Cir. 1994) .............................................................................. 17

*U.S. v. Int'l Bhd. of Teamsters*,
    247 F.3d 370 (2d Cir. 2001) .................................................................................. 7

*United Bank for Afr. PLC v. Coker*,
    2003, WL 22741575 20880 (S.D. N.Y Nov. 18, 2003) ........................................................ 17

**Statutes**

28 U.S.C. § 1782 ............................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 60(b) ................................................................................................ 1

Fed. R. Civ. P. 60(b)(2) ..................................................................................... 6, 7, 22

N.Y.R. Prof Conduct 3.3(d) ..................................................................................... 21

**Other Authorities**

Restatement (Second) of Conflict of Laws § 302 cmt. a (1971) ................................................. 13

Panikos Symeou, by and through his counsel, submits this Memorandum of Law in support of his Motion pursuant to Fed. R. Civ. P. 60(b) for relief from this Court's order, entered September 17, 2015 ("2015 Opinion", ECF 35), which granted in part and denied in part Symeou's Motion to Vacate the December 24, 2014 Order ("2014 Order", ECF 5) granting Hornbeam Corp.'s ex parte application pursuant to 28 U.S.C. §  1782 .

## PRELIMINARY STATEMENT

On Thursday, October 8, 2015, Symeou, through counsel, was finally able to access responsive materials that Hornbeam Corp. ("Hornbeam") represented were produced by ten banks in New York (the "Banks") in response to subpoenas authorized almost ten months ago by the 2014 Order, ECF 5.   Review over the ensuing weekend confirmed that the responsive materials consisted of 11,367 wire records (the "Wire Records").  Of these Wire Records, 10,763 records contained confidential commercial and personal information completely unrelated to the dispute over Warren Steel Holdings, LLC ("Warren Steel").[1]   Only 604 Wire Records of Warren Steel are remotely relevant to the proposed BVI action.   This Motion was filed as soon as possible thereafter.   In addition, new developments since the 2015 Opinion have occurred in the BVI Execution Proceedings.

*First*, the Wire Records Hornbeam received contain thousands of unrelated transactions containing confidential commercial and personal financial information, including bank account numbers, transactions, customer information, supplier information, and/or personal information for the "Related Entities" and "Related Persons."[2]   These include 3,958 records of Related

---

[1] Wires related solely to the "Shulman Entities" are included in this figure.  It is not clear why Hornbeam sought and received §1782 discovery related to Shulman's own entities.

[2] The "Related Entities" refer to various Marigold, Divot, Felman, Georgian American Alloys, Optima, and Privat entities and Symeou.   The "Related Persons" refer to Gennady Bogolubov,

1

Entities and 388 records of Related Persons, as explained in the Marks Declaration.   Such records are ***completely unrelated*** to the dispute but contain sensitive financial information concerning Shulman's former business partners and competitors.   Hornbeam also received 5,952 wire records, which concern over 250 persons and entities who are strangers to this litigation, without informing the Court of what occurred or returning these Wire Records.   This illustrates the risks of taking discovery *ex parte,* in secret, not producing the discovery to the adverse party for almost ten months, and not reporting to the Court.   These Wire Records should be ordered destroyed.

  ***Second,*** the Wire Records implicate the "internal affairs doctrine," as the 604 Wire Records in which Warren Steel, the subsidiary of Halliwel Assets, Inc.  ("Halliwel"), is the originator or beneficiary - all concern its internal business affairs.  Hornbeam, as a Halliwel shareholder, should have sought this information in the BVI, not here.  Absent application of this doctrine, New York will become the pre-filing §1782 clearinghouse for disgruntled shareholders of foreign corporations who will be able to circumvent the "internal affairs doctrine" by seeking financial information of the foreign companies in which they hold shares, so long as money was wired in dollars through banks here.

  ***Third,*** the new developments in the BVI Execution Proceedings demonstrate that Hornbeam and Shulman have no intention of paying the BVI Judgment.  This supports granting a stay of these proceedings and the 2014 Order pending resolution of the BVI Execution Proceedings because if Hornbeam's shares in Halliwel are sold at execution, it will not be able to bring Section 184I proceedings in the BVI, making the instant discovery moot.

---

Igor Kolomoisky, and Mordecai Korf.  Hornbeam sought the wire transfer records for all these entities in its §1782 application.

**Fourth,** the Wire Records demonstrate a continued breach of the duty of disclosure owed by Hornbeam in *ex parte* proceedings.  It was never disclosed to the Court that almost all Wire Records are irrelevant to the Warren Steel dispute and contain confidential commercial and personal information of not only Related Entities and Related Persons, but over 250 persons and entities unrelated to this litigation.   There should be meaningful sanction for this conduct.

## PROCEDURAL AND FACTUAL BACKGROUND

### A.  HORNBEAM'S EX PARTE §1782 APPLICATION AND DECEMBER 24, 2014 ORDER

On December 19, 2014, Hornbeam filed an *ex parte* application to take discovery pursuant to 28 U.S.C. §1782 for use in a future British Virgin Island ("BVI") proceeding for violation of Section 184I of Business Companies Act of 2004 ("BVI Proceedings"). See Application, ECF 1.   After an *ex parte* hearing, on December 24, 2014, the Court granted the 2014 Order, ECF 5, authorizing Hornbeam to obtain discovery from twelve banks and three professional service providers within the Southern District of New York for use in anticipated BVI Proceedings.  2015 Opinion, p. 1, ECF 35.

### B.  SYMEOU LEARNS OF THE APPLICATION, ORDER, AND SECRET DISCOVERY

By happenstance, Symeou learned of the Application and 2014 Order in May 2015.  In response to Symeou counsel's letters, James Power, counsel for Hornbeam, confirmed that Hornbeam served subpoenas on and received discovery from banks without notice to Symeou. Power Letter dated June 11, 2015, ECF 18-38.   Despite demand, Hornbeam refused to produce neither the subpoenas nor the responsive materials  to Symeou.

### C.  THE 2015 OPINION

On June 17, 2015, Symeou moved to intervene and vacate the Order.  Motion to
Intervene, ECF 15; Motion to Vacate, ECF 16.   On August 4, 2015 the Court entered a
Protective Order which, *inter alia,* prohibited Hornbeam from (1) issuing further subpoenas
pursuant to the 2014 Order; (2) using the records or information in any foreign or domestic
proceeding; and (3) further disseminating the records or information to Vadim Shulman
("Shulman") or anyone other than Shulman's legal team.  See Protective Order, ECF 27.   On
September 17, 2015, the Court granted the Motion to Intervene but denied the Motion to Vacate.
See 2015 Opinion, ECF 35.

### D.  THE BVI EXECUTION PROCEEDINGS

**The BVI Proceedings:**  On August 29, 2014, Hornbeam, as a registered shareholder of
Halliwel Assets, Inc. ("Halliwel"), filed an *ex parte* application in the BVI to enjoin Halliwel's
shareholder meeting.  Nader Dec. ¶¶24-29, ECF 18-21.  Hornbeam filed further BVI applications
to appoint a provisional liquidator and to liquidate Halliwel. Fay Dec., ¶8 f-h, ECF 18-14.  At an
October 13, 2014 hearing, Hornbeam abandoned its injunction and its application for a
provisional liquidator was dismissed as "an abuse."  Oct. 12, 2014 Trans, p. 172-173, ECF 18-1.

**The BVI Judgment:**  On December 10, 2015, the BVI court assessed $846,526 in costs
and attorney fees ("BVI Judgment") against Hornbeam in favor of Halliwel, Symeou, and
Marigold Trust Company Limited ("Marigold") (collectively, "BVI Judgment Creditors"). Nader
Dec. ¶¶35, 48, ECF 18-21.  On December 19, 2014, Hornbeam purported to transfer its Halliwel
shares to Bracha Foundation.  ECF 18-33.  Hornbeam would be required to pay the judgment as
well as $250,000 in security for costs if it filed new BVI claims before being allowed to
proceeding. Nader Dec. ¶51, ECF 18-21.

**The Charging Orders:**  On March 3, 2015, the BVI Judgment Creditors filed *ex parte* applications for provisional charging orders against Hornbeam's shares in Halliwel to enforce the BVI Judgment. On August 14, 2015, the Court granted provisional "Charging Orders."  Power Ltr., Exs. 1 and 2, ECF 33.   On September 25, 2015, Hornbeam and its alleged beneficial owner, Bracha, filed Objections.  Third Nader Dec., ¶2, Ex. 1.[3]  The Objections did not contest the validity of the BVI Judgment.    On September 28, 2015, in §1782 proceedings pending in Alabama, Fabrizio Campanile, Hornbeam's attorney, submitted an affidavit stating that Hornbeam has no assets (other than its shares in Halliwel).  Second Campanile Dec., ¶81, Marks Dec. Ex 2.

**The October 9, 2015 Hearing:**  As BVI attorney Robert Nader explains, on October 9, 2015, the BVI Court held a hearing and will give directions that may require Bracha to provide security for costs.   Given its position that it has no equitable interest in the Halliwel shares, Hornbeam did not request to further participate.  Third Nader Dec. ¶ 10.  Resolution of the amount of security and whether it is to be posted is expected shortly after October 16, 2015.  It is estimated security will be around $200,000.  *Id.*  ¶5.  If the security is not posted, Bracha's Objections will be denied.  *Id.*  ¶4(b).  If security is posted, a hearing on the Objections is anticipated in January 2016, although the BVI Judgment Creditors prefer and will agree to an earlier date.  *Id.*  ¶6.  If the Objections are denied, the BVI Judgment Creditors will be permitted to execute on Hornbeam's shares in Halliwel.   If Hornbeam ceases to be a Halliwel shareholder, its right to bring or maintain Section 184I claims will be extinguished.  *Id.*  ¶¶ 7-9.

---

[3] The objections allege the Charging Orders should be set aside because (1) the BVI court lacked jurisdiction to enter the Charging Orders because Hornbeam only had legal title, not beneficial ownership, in the Halliwel shares, and (2) the Judgment Creditors did not disclose, or misrepresented, certain facts regarding the beneficial interest of Bracha or Shulman in Hornbeam's Halliwel shares.

### E.  THE WIRE RECORDS

Per the Court's 2015 Opinion, on October 8, 2015,  Horbeam produced copies of materials which its represented had been produced by ten New York banks in response to the subpoenas authorized by the § 1782 Order.  Marks Decl. ¶ 4.  The Wire Records contained 11,367 records of wires transfers which reflect, among other information, the originator's name and bank account number, the recipient's name and bank account number, the date and dollar amount of the transaction, and for many banks, a memo field in which the purpose of the transfer was described.  *Id.* ¶ 6.

Ninety five percent of the Wire Records did not involve Warren Steel in any way.  *Id.* ¶ 14.  Of the 604 wires where Warren Steel was an originator or recipient, only one wire was with one of the Related Entities, and five were with Korf, Warren Steel's CEO.  *Id.* ¶ 9. There were no wires between Warren Steel and Kolomoisky, Bogolubov, Symeou or Marigold.  *Id.* ¶ 9.

There were 3,958 wires where one of the Related Entities was an originator or recipient. *Id.* ¶ 10.   There were 388 wires where one of the Related Persons was an originator or recipient . *Id.* ¶ 13.    Again, only six of these wires related to Warren Steel.  The other wires (3,957 for the Related Entities, 383 for the Related Persons) all related to other confidential commercial and personal transactions.  459 of the Wire Records related solely to the "Shulman Entities."  The Wire Records also include 5,952 wires involving over 250 persons and entities who appear completely unrelated to Warren Steel, the Related Entities, the Related Persons, or the Shulman Entities, and which were captured by the search terms use by the Banks.  *Id.* ¶ 17.   A chart showing the percentage of the Wire Records attributable to each of these categories is attached as Exhibit 1 to the Marks Declaration.

## **ARGUMENT**

"Pursuant to Rule 60[b], the Court may relieve a party from a judgment, order, or proceeding due to 'newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move to amend the judgment." *In re Puda Coal Sec. Inc., Litig.*, No. 11 Civ. 598(KBF), 2014 WL 715127, at *1 (S.D.N.Y. Feb. 21, 2014) (quoting Fed. R. Civ. P. 60(b)(2)).  "[T]he Rule 'should be broadly construed to do substantial justice.'" *Terra Energy Techs., Inc. v. Terralinna Pty. Ltd.*, No. 12-cv-1337 (KNF), 2014 WL 5690416, at *4 (S.D.N.Y. Nov. 5, 2014) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).

To obtain relief from a judgment pursuant to Rule 60(b)(2), the movant need only demonstrate: "(1) that the newly discovered evidence was of facts that existed at the time of the prior dispositive proceeding, (2) that the movant was justifiably ignorant of the facts despite due diligence, (3) that the evidence is admissible and of such importance that it probably would have changed the outcome, and (4) that the evidence is not merely cumulative or impeaching." *U.S. v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)).  Symeou satisfies each requirement.

***First***, access to these Wire Records was not provided to Symeou until 9:57 p.m. on October 7, 2015 – approximately three weeks after the Court's 2015 Opinion.  Thus, the Wire Records clearly constitute new evidence of facts in existence at the time Symeou moved to vacate, but to which Symeou was justifiably without access.

***Second***, Symeou was justifiably ignorant of the facts despite his due diligence.  Although he requested that the discovery be produced at the June 22, 2015 hearing, the Court did not grant the request at that time.  Symeou could not be expected to know, and certainly did not know, what records the Banks ultimately produced.

***Third,*** the Wire Records are so important that they should change the outcome of the decision on the Motion to Vacate, as explained herein.

***Fourth***, the Wire Records are not merely cumulative or impeaching; rather, they are the critical evidence of what was produced, which was not available to Symeou or known and considered in connection with the 2015 Opinion.

I. **THE 2014 ORDER AND 2015 OPINION SHOULD BE VACATED OR MODIFIED BASED ON THE WIRE RECORDS WHICH DEMONSTRATE THE AUTHORIZED DISCOVERY IS NOT PROBATIVE OF ANY ISSUE IN DISPUTE AND DISCLOSES IRRELEVANT CONFIDENTIAL AND PROPRIETARY INFORMATION**

It is axiomatic that "[s]ubpoenas issued under Rule 45 are subject to Rule 26(b)(1)'s overriding relevancy requirement." *Koch v. Greenberg*, No. 07 CIV. 9600 (BSJ) (DF), 2009 WL 2143634,  at * 2 (S.D.N.Y., July 14, 2009) (granting in part motion to quash a subpoena seeking irrelevant information).[4]   The law is clear that parties are not permitted to use Rule 45 to engage in a fishing expedition for irrelevant documents, especially when such materials reflect confidential and private banking and financial information.  *See Sea Tow Intern'l, Inc. v. Pontin*, 246  F.R.D. 421 (E.D.N.Y. 2007) (citations omitted) (quashing subpoena).

These relevance proscriptions are equally applicable to discovery authorized pursuant to § 1782.  *See In re OOO Promnefstroy*, Misc. No. M 19-99 (RJS), 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009) (denying §1782 application: "the Court finds [applicant]'s subpoena to be broad by any standard . . .  it extends to a wide array of documents related to tens of business

---

[4] Pursuant to Rule 26(b)(1), discovery must be limited "to nonprivileged matter that is relevant to any party's claim or defense." Thus, a Rule 45 subpoena necessarily runs afoul of Rule 26(b) if it seeks information that is wholly irrelevant to the claims or defenses at issue in the matter at bar. *See e.g., In re Flag Telecom Holdings, Ltd. Securities Litigation*, No. 02 Civ. 3400 WCC, 2006 WL 2642192, at *2 (S.D.N.Y. Sept. 13, 2006) (granting motion to quash subpoenas where the court "determined that the [ ] documents are not likely to lead to the discovery of relevant evidence").

entities and to all of their affairs, many of which [the discovery subject] is not even associated with."); *Kan v. Noro-Moseley Partners*, 246 Fed. App. 662, 664 (11th Cir. 2007) (court must deny a § 1782 application if "the information sought is irrelevant to the causes of action" at issue).

Additionally, Rule 45 imbues the Court with discretion to quash or modify a subpoena "to protect . . . against the disclosure of personal, private financial information to avoid undue annoyance, embarrassment or oppression." *In re Glitnir Bank HF.*, No. 08-14757 (SMB), 2011 WL 3652764, at *5 (Bankr. S.D.N.Y., Aug. 19, 2012) (granting in part motion to quash subpoena seeking confidential bank records and other financial and/or private information). Confidential and sensitive personal information concerns the existence and amounts of transactions, including "amounts, dates and persons involved," "transfer, collection, withdrawal and payment instructions to the Bank," and "the identities of transferees and depositors into [bank]." *Strauss v. Credit Lyonnais, S.A.*, No. 06-CV-702 DLI MDG, 2011 WL 4736359, at *8 (E.D.N.Y. Oct. 6, 2011).[5]

To protect the confidentiality of improperly produced documents, court may require that they be returned or destroyed and require the destruction of work product generated as result of the information contained therein. *See Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 CIV. 7590 (DAB) (JCF), 1997 WL 736726, at *1 (S.D.N.Y. Nov. 26, 1997); *see also Hoyle v. Dimond*, 612 F. Supp. 2d. 225, 228 (S.D.N.Y. 2005) (ordering return of all "confidential and

---

[5] In fact, "financial records . . . have historically not been subject to public access in the United States" as "courts have recognized that banking customers have a "justifiable expectation of privacy that their names and financial records not be revealed to the public." *Credit Lyonnais*, 2011 WL 4736359, at *4; *see also Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 123 (2d Cir.1984) (recognizing bank's duty under New York law to keep customer's records confidential).

proprietary records" and "to remove confidential and proprietary information from any electronic storage devices").

## A.  THE WIRE RECORDS ARE ALMOST ENTIRELY IRRELEVANT

The 2014 Order permitted Hornbeam to subpoena twelve banks and three professional organizations from 2006 to the present. The 2014 Order granted discovery in order for Hornbeam to determine "whether Kolomoisky and Bogolubov controlled the Related Parties or provided the funds that the Related Parties loaned to Warren Steel."  2014 Order, ECF 5, p. 6. In the 2015 Opinion, the Court stated the "reference to this particular reason for Hornbeam's request was meant to be illustrative."   2015 Opinion, ECF 35, p. 14.  The Court recognized that Hornbeam "wanted to determine whether the loans issued to Warren Steel by the Related Parties were merely 'paper loans,' i.e., loans where no cash was exchanged … and more generally to determine the precise nature and specifics of the transactions in which Warren Steel is engaged," presumably with Kolomoisky, Bogolubov, and related entities.  *Id.* (quotations omitted).  "The broader purpose of Hornbeam's discovery requests was to investigate the nature and full context of the loans from the Related Parties to Warren Steel."  *Id.*

Neither the 2014 Order nor 2015 Opinion authorized a fishing expedition into business and personal financial transactions unrelated to the Loans or Warren Steel.   But the Wire Records reveal this is ***exactly*** what occurred.   Hornbeam's subpoenas almost exclusively gathered information irrelevant to "loans from the Related Parties to Warren Steel", its authorized purpose.  Instead, the Wire Records contain completely unrelated confidential and sensitive financial information of the Related Entities (various Divot, Felman, Georgian-American Alloys, Optima, and Privat entities as well as Marigold Trust and Symeou), Related Persons (Bogolubov, Kolomoisky, and Korf), and complete strangers.

Of the 11,367 transactions reflected in the Wire Records, only 1 transaction is between Warren Steel/Halliwel and one of the Related Entities. Five transactions are between Warren Steel and Korf, who is Warren Steel's CEO. Six hundred and four (604) of the transactions involve Warren Steel as an originator or beneficiary, reflecting business activity. There are no transfers between Kolomoisky or Bogolubov and Warren Steel. Of the remaining 10,763 records, 388 records concern the Related Persons, 3,958 records concern the Related Entities, and 5,952 records concern persons and entities that are strangers to in this dispute. 459 records concern Shuman Entities.[6] A chart showing the percentage of the Wire Records attributable to each of these categories is attached as Exhibit 1 to the Marks Declaration.

If the subpoenas had been provided to Symeou prior to production, his counsel would have been aware that the Banks were being directed to produce and were producing irrelevant records containing confidential commercial and personal information and could have intervened and/or objected to preclude this result. But, not only did Hornbeam fail to provide the subpoenas to Symeou, it never informed the Court of what occurred, despite ample opportunity at the June 22, 2015 hearing. Based on relevance alone, this motion should be granted, the December 2014 Order should be vacated, and Hornbeam ordered to destroy the Wire Records and information derived therefrom.

### B. THE WIRE RECORDS REVEAL IRRELEVANT CONFIDENTIAL PROPRIETARY AND PERSONAL INFORMATION

The originators and recipients of the transactions reflected in the Wire Records are harmed by Hornbeam's possession of the Wire Records. The Wire Records include at a minimum: the originator's name and bank account number, the recipient's name and bank

---

[6] The Application does not explain and the 2014 Order does not address why Hornbeam sought or was authorized to take discovery regarding Shulman related entities and their relevance.

account number, the date and dollar amount of the transaction, and in many cases, a memo field where the purpose of the wire is described.  All of this information has been deemed confidential by courts in this Circuit.  *See Credit Lyonnais*, 2011 WL 4736359, at *8.

There is no justification for Hornbeam and/or Shulman to possess this information – let alone use or disseminate it.  Such private, confidential and commercially sensitive financial information should never have been produced, let alone to Hornbeam and/or Shulman, who is involved in contentious litigations with Symeou, Halliwel, Marigold, Kolomoisky, and Bogolubov.   This Court should order the immediate destruction of the documents already produced and further prohibit the use of such documents or information contained therein for any purpose, including, without limitation, prohibiting the use of such information in any proceeding commenced or to be commenced in the BVI or elsewhere.

II.      **THE 2014 ORDER AND 2015 OPINION SHOULD BE VACATED BASED ON THE WIRE RECORDS AND APPLICATION OF THE "INTERNAL AFFAIRS DOCTRINE"**

The Wire Records give much greater clarity to Symeou's argument that the 2014 Order should be vacated because it permits  discovery in violation of the "internal affairs doctrine." The Wire Records only contain 604 transactions to and from Warren Steel, only six of which are with a Related Entity or Related  Person.  Hornbeam should seek these records in the BVI as a registered shareholder of Halliwel.

### A.  THE INTERNAL AFFAIRS DOCTRINE

"[I]t has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state."  *Pennsylvania v. Williams,* 294 U.S. 176, 185 (1935).   "As a general matter, the law of the state of incorporation normally determines

issues relating to the internal affairs of a corporation. Application of that body of law achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation." *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983).

> The "internal affairs doctrine" applies to a variety of shareholders' rights including:
>
> the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, **shareholders' rights to examine corporate records,** charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares. …

*PHP Liquidating, LLC v. Robbins (In re PHP Healthcare Corp.)*, 128 Fed. Appx. 839, 844 (3d Cir. 2005) *quoting* Restatement (Second) of Conflict of Laws § 302 cmt. a (1971) (emphasis added).

It is broadly recognized that courts will not exercise their jurisdiction if such would interfere with the "internal affairs doctrine." In *Relief Assn. of The Union Works v. Equitable Life Assur. Soc.*, 140 Ohio St. 68, 42 N.E.2d 653 (1942), the Ohio Supreme Court held: "Courts of Ohio are without jurisdiction to entertain an action against a foreign corporation where the result of granting the relief asked would be to interfere with the management of such corporation or the exercise by the board of directors of such corporation of a discretion vested in them …" *Id.* at syllabus. *See Matter of Palco Group Enters. LLC v. Collect Edge Servs. LLC*, 15 Misc. 3d 1147(A) (Sur. Ct. Nassau Cty. June 6, 2007) (dismissing case, "this Court is being asked to determine relates to the rights of a member of a New Jersey limited liability company to inspect its books and records. … Issues relating to inspection of records of a New Jersey limited liability company such as Collect Edge should be heard by the courts of New Jersey.")

### B.  THE "INTERNAL AFFAIRS DOCTRINE" PRECLUDES DISCOVERY OF INTERNAL FINANCIAL INFORMATION OF HALLIWEL AND ITS SUBSIDIARY WARREN STEEL

Pursuant to BVI law, a shareholder has various means to examine corporate records, including a demand pursuant to Section 100(5) of the 2004 BVI Business Companies Act by which shareholders may apply for an order allowing inspection or in a Section 184I "unfair prejudice" proceeding if "the shareholder establishes that the company's failure to provide information amounts to unfair prejudice".  These actions are only maintainable before the "High Court of the Eastern Caribbean Supreme Court."  Willins Dec., ¶¶ 10(d); 20(d); 21, 46-50, ECF 21-8.

In rejecting Symeou's "internal affairs doctrine" argument, the Court held "Symeou fails to explain how resolving Hornbeam's request for discovery from third parties under §1782 requires any intervention in Halliwel's internal affairs." 2015 Opinion, p. 17, ECF 35.  The Court based its decision on the fact that "documents in the possession of firms located in New York" would not "be produced in the BVI."  2015 Opinion at 17, ECF 35.   The production of the new Wire Records should change the Court's analysis.

*First*, the Wire Records establish this §1782 action is itself a dispute over the internal corporate records and financial information of Warren Steel, Halliwel's subsidiary.   It is precisely this type of dispute to which the "internal affairs doctrine" applies.   Hornbeam can ask the BVI court to compel Halliwel—a BVI company—to produce Warren Steel's bank and wire records  If Hornbeam wants information internal to a BVI company in which it is a registered shareholder, it should proceed before the BVI High Court.  Federal courts should not permit "discovery forum shopping" via a §1782 proceeding by litigants who are circumventing the procedures of the foreign forum which govern a corporation's internal affairs. *See In re Kreke*

*Immobilien*, 2013 WL 5966916, at \*6 (S.D.N.Y. 2013) ("we are loath to sanction forum shopping under the guise of *§ 1782*.")

**Second**, the Wire Records establish that the information contained therein – transactions of Warren Steel – can be obtained in the BVI by seeking the same information from Halliwel, subject to the limitations and protections of BVI law.  "A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241, 264 (2004).  "The relevant inquiry is whether the evidence is available to the foreign tribunal.  In this case, it is.  Thus, § 1782 aid is both unnecessary and improper." *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (denying discovery because "Microsoft's 1782 application constitutes a blatant end-run around 'foreign proof-gathering restrictions or other policies of a foreign country.' See *Intel,* 542 U.S. at 264.").  Hornbeam should not be able to get through the back door – discovery of Wire Records related to Warren Steel, Halliwel's subsidiary – that it has not tried to get (or cannot get based on BVI law and policy) in the BVI.

**Third**, the Wire Records further establish that the issue is not whether records exist in New York – ***but whether the information is the same and should be obtained from Halliwel in the BVI.***   In affirming denial of discovery, *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) held, "[a]lthough technically the respondent in the district court was [a local law firm], for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation."   *See In re Microsoft Corp.*, 428 F. Supp. 2d 188 (S.D.N.Y. April 20, 2006) (quashing §1782 subpoenas upon IBM and Clearly Gottlieb for information that should come from the European Commission and "constitute[d] a clear circumvention of the [European] Commission's procedures-- which the Supreme Court expressly prohibited in *Intel.*")

***There is no difference between the New York law firms and IBM in Schmitz and Microsoft, respectively, and the New York banks here.***  Hornbeam should seek Warren Steel bank and wire records from Halliwel in the BVI.     "[T]he foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782 application, [is] on which the district court should focus."  *In re OOO Promnefstroy*, 2009 WL 3335608,  at *5 (S.D. N.Y. 2009); *In re Microsoft Corp., supra.*

**Fourth,** Hornbeam should not benefit from obtaining the Wire Records by secretly serving the subpoenas and obtaining them before Symeou was aware of this proceeding.  If the Court concludes that the §1782 discovery should not have been authorized because it violated the "internal affairs doctrine", it should order destruction of any Wire Records and related information which Hornbeam obtained.

**In sum,** New York should not become the pre-filing §1782 clearinghouse for disgruntled shareholders of foreign corporations who could circumvent the "internal affairs doctrine" by seeking financial information of the foreign companies in which they hold shares, so long as money was wired in dollars through banks in New York, as many foreign corporations do.  *Intel* cautions that federal courts must vigilantly consider foreign comity interests in order to prevent §1782 from being used as a tool of circumvention, as occurred here.

### III.    THE 2014 ORDER AND 2015 OPINION SHOULD BE STAYED PENDING RESOLUTION OF THE BVI EXECUTION PROCEEDINGS BASED ON DEVELOPMENTS IN THE BVI EXECUTION PROCEEDINGS AFTER THE 2015 OPINION

It is well-established that a district court has the authority to stay proceedings. *See, e.g., Landis v. North Am. Water Works and Elec. Co.,* 299 U.S. 248, 254 (1936) (federal courts have inherent authority to stay proceedings to conserve judicial resources and ensure that each matter

is handled efficiently); *Republic of Venezuela v. Philip Morris Cos., Inc.,* No. 99-0586-Civ, ,

1999 WL 33911677, at *1 (S.D. Fla. April 28, 1999) (discretion to stay proceedings "is derived

from and incidental to a court's inherent power to control the disposition of cases on its docket

and ensure a 'fair and efficient' adjudication of matters").

      "[A] variety of circumstances may justify a district court stay pending resolution of a

related case in [a foreign] court. A stay sometimes is authorized simply as a means of controlling

the district court's docket and of managing cases before the district court. And, in some cases, a

stay might be authorized also by principles of abstention." Courts apply international abstention

principles to determine the propriety of a stay pending resolution of related foreign litigation.

*Turner Entm't Co. v. Degeto Film GmbH,* 25 F.3d 1512, 1522 (11th Cir. 1994) (staying litigation

based on international abstention analysis until German court ruled on appeal and foreign

litigation was complete).   The relevant considerations for determining whether to impose a

comity based stay are: (1) international comity; (2) fairness to litigants; and (3) judicial

efficiency. *Turner Entm't Co.,* 25 F.3d at 1518.[7]

      The broad authority to grant a stay extends to §1782 proceedings pending resolution of

foreign proceedings.  *In re Braga,* 789 F.Supp.2d 1294, 1310 (S.D. Fla. March 15, 2011)

(staying certain §1782 proceedings pending rulings from Brazilian and Cayman courts); *In re*

---

[7] *See United Bank for Afr. PLC v. Coker*, 2003 , WL 22741575 20880, at *3 (S.D.N.Y. Nov. 18, 2003) ("principals of judicial efficiency and international comity give courts the 'inherent power' to stay or dismiss actions …Factors weighed … include the similarity of parties and issues involved, promotion of judicial efficiency, adequacy of relief available in the alternative forum, considerations of fairness to all parties and possible prejudice to any of them, and the sequence of commencement of the actions."); *Caspian Invest., Ltd. v. Vicom Holdings, Ltd.,* 770 F. Supp. 880, 885 (S.D.N.Y. 1991) ("A stay … would also serve the goals of judicial efficiency, judicial consistency, and fairness to the parties. … the foreign court will be required to interpret the contractual obligations"); *Kenner Products Co. v. Societe Fonciere et* Financiere Agache-Willot, 532 F. Supp. 478, 480 (S.D.N.Y. 1982) (staying New York action in deference to French proceeding).

*Pinchuk*, 14-CIV-20047, 2014 WL 1328484 , at*6 (S.D. Fla. Mar. 31, 2014) (staying §1782

discovery until rulings by the Cypriot court); *In re Noboa*, Misc. Nos. M18-302, M19-111, 1995

WL 581713, *3 (S.D.N.Y. Oct. 4, 1995) (staying "taking of . . . depositions" under §1782 "until

[decedent]'s Will has been opened and read in the Ecuadorian probate proceeding and, if it is

found to be valid").

### A.  SOUND DOCKET MANAGEMENT AND INTERNATIONAL COMITY SUPPORT THE STAY

Both sound docket management and international comity support a stay.

Under comity, "United States courts ordinarily … defer to proceedings taking place in

foreign countries so long as the foreign court had proper jurisdiction and enforcement does not

prejudice the rights of United States citizens or violate domestic public policy," *Finanz AG*

*Zurich v. Banco Economico S.A.,* 192 F.3d 240, 246 (2d Cir. 1999) (quotations and citations

omitted.)[8]  In *In Re Braga*, the Court stayed §1782 discovery while awaiting a potentially

dispositive ruling in the foreign court "which w[ould]l resolve the question of whether

[applicant] has the right to the discovery requested" pursuant §1782.  *Id.,* 789 F.Supp. 2d at

1310.  *In Re Pinchuk* did the same.  *See* 2014 WL 1328484, at *6 (staying §1782 discovery until

rulings by the Cypriot court).

In the 2015 Opinion, the Court accepted that the BVI Judgment must be paid (and

$250,000 for security for costs posted) in order for Hornbeam to proceed with §184I claims in

the BVI.  However, the Court assumed the "$1.1 million" judgment obstacle was "fairly trivial"

---

[8] *See e.g. Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.,* 466 F.3d 88, 96 (2d Cir. 2006) ("a measured temporary stay … might permit the district court a window to determine whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties"); *Pravin Banker Assocs. v. Banco Popular Del Peru,* 109 F.3d 850, 855 (2d Cir. 1997) (describing a prior issued "six-month stay to allow the completion of the on-going liquidation proceedings for Banco Popular" in Peru).

because this was a dispute among "extraordinary wealthy men" and it was not "plausible" these monetary requirements would prevent Hornbeam from litigating in the BVI.  Opinion, 15, ECF 35.   The newly developed BVI record dispels this assumption.

*First*, the recent actions of Bracha and Hornbeam show that neither Hornbeam nor Shulman intend to pay the BVI Judgment.  Instead, Hornbeam and Bracha have challenged the Charging Orders on Hornbeam's shares in Halliwel, but not the BVI Judgment itself.  Charging Orders, ECF 33; Third Nader Dec., Ex. 1.  And Hornbeam attorney Campanile admitted in Alabama §1782 proceedings that Hornbeam has no assets (other than the Halliwel shares).  Second Campanile Dec. ¶81, Marks Dec. Ex 2.

*Second,* as BVI attorney Nader explains, it is expected that shortly after October 16, 2015 that the BVI Court will determine whether Bracha will be required to post security for costs, estimated to be $200,000.  Given Hornbeam's position that it is not the equitable owner of the Halliwel shares, it has not requested to further participate.  If security is not posted, Bracha's Objections will be dismissed.  If Bracha posts security, its Objections will be heard in January 2016, although the BVI Judgment Creditors are amenable to a hearing in November.   If the Objections are denied, the BVI Judgment Creditors will be permitted to execute against Hornbeam's Halliwel shares.  If this occurs, Hornbeam will cease to be a Halliwel registered shareholder and its right to bring Section 184I claims will be extinguished.

*In sum*, there is no need for the Court to make assumptions on whether Hornbeam (or Shulman) will pay the BVI Judgment.   The "keys to the kingdom" are in their hands.  If the BVI Judgment is paid, this issue is mooted.  If Bracha drags out the BVI Execution proceedings, the Court should not permit §1782 discovery until the issue before the BVI court is resolved.

## B.  FAIRNESS TO LITIGANTS SUPPORTS THE STAY

Hornbeam will suffer no prejudice waiting for disposition of the BVI Execution Proceedings.  Nor should Hornbeam be permitted to complain of not paying the BVI Judgment arising from its "abuse" in order to proceed with another round of BVI Section 184I claims. Symeou should not be forced to litigate §1782 proceedings here, or in Alabama, Delaware, Florida, and Ohio, if Hornbeam is not going to pay the BVI Judgment and the §1782 proceedings become moot.[9]

## C.  JUDICIAL EFFICIENCY SUPPORTS THE STAY

A request for stay should be granted where the decision in a foreign proceeding is "likely to have a substantial or controlling effect on the claims and issues in the stayed case." *In re Braga*, 789 F. Supp. 2d at 1310 (granting stay, *quoting Miccosukee Tribe of Indians of Fla. v. South Fla. Water Mgmt. Dist.,* 559 F.3d 1191, 1198 (11th Cir. 2009) (dismissing appeal of stay order for lack of jurisdiction but noting that "the reason for the district court's stay was at least a good one, if not an excellent one" where decision in other proceeding was "likely to have a substantial or controlling effect on the claims and issues in the stayed case"); *Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Group, PLC*, 2012 WL 4767180, at *12 (S.D.N.Y. Sept. 28, 2012) ("Judicial efficiency is clearly promoted by deferring to the Chinese courts. As reported, plaintiff has already obtained a judgment there…the appropriate step is to stay further

---

[9] *See* e.g. *In re Pinchuk*, 2014 WL 1328484,  at * 3  (stay should "not disrupt the Cyprus proceedings. There is no prejudice to the Petitioners arising from this stay, and this Court has found the absence of prejudice to be a compelling reason for granting a stay of Section 1782 proceedings."); *Caspian Invest., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880**,** 885 (S.D.N.Y. 1991) (granting stay, "There is no indication that Caspian or either defendant will be prejudiced or treated unjustly if the entire dispute is resolved in the Irish courts. … Caspian invoked the jurisdiction of the Irish court in the initial action, Caspian cannot assert that the Irish court will not afford substantial justice to its claims.")

proceedings in this case -- that is, at present principally discovery -- until at least clarification of the status of the appeal and any further litigation in the China case.")

Judicial efficiency is served as the BVI Execution Proceedings may extinguish Hornbeam's standing.  If Hornbeam wishes to avoid this result, then it (or Shulman) should pay the BVI Judgment, not delay the BVI Execution Proceedings.

## IV.   THE WIRE RECORDS REVEAL A CONTINUED VIOLATION OF HORNBEAM'S DUTY OF DISCLOSURE

As set forth in the Motion to Vacate, Hornbeam's counsel had a duty of disclosure pursuant to N.Y.R. Prof Conduct 3.3(d).  The Court did "not determine whether Hornbeam's counsel violated the duty of candor" when proceeding *ex parte* pursuant to N.Y.R. Prof. Conduct 3.3(d) because it found "the newly presented facts do not alter [the Court's] view that the requirements of §1782 were met, even assuming the ethical violation … [the Court] would not vacate the Authorizing Order as a sanction for such a transgression."  2015 Opinion, p. 9, ECF 35.[10]   The Court did observe "Hornbeam's Application clearly did not disclose all facts that might have been relevant to its request known at the time."  2015 Opinion, p. 13, ECF 35.

The Wire Records now reveal that Hornbeam, in taking *ex parte* discovery, obtained Wire Records containing confidential commercial and personal information, *inter alia,* of the Related Entities and Related Persons unrelated to Warren Steel, but never informed the Court or returned the records.   Hornbeam also obtained over 5,952 Wire Records of over 250 third persons completely unrelated to this case, but never informed the Court or returned the records. Despite neither the Court nor Symeou knowing this, Hornbeam argued the subpoenas were not

---

[10] Symeou submits that this is not simply an ethical violation, given the purpose of the rule is to protect the interests of the unrepresented party in *ex parte* proceedings.   Similarly, Local Rule 6.1(d) is designed to protect unrepresented parties in *ex parte* proceedings.

overbroad in opposing the Motion to Vacate.   This type of conduct – a lack of candor to the

Court and the adversary in regard to discovery obtained *ex parte* which Hornbeam refused to

produce and only it knew about -- deserves meaningful sanction. Further, the sanction may also

be directed at Hornbeam, given that a client is responsible for the conduct of its counsel.

*Esterella v. Morisseau*, 2015 U.S. Dist. LEXIS 135547, *11 (E.D.N.Y. Sept. 30, 2015) ("an

attorney is the client's agent, and the court has the power to sanction the client for its attorney's

bad conduct").   At a minimum, the Court should vacate the 2014 Order and compel Hornbeam

to destroy all Wire Records and related information which it received.

<u>**CONCLUSION**</u>

For the foregoing reasons, Symeou respectfully requests that this Court grant its motion,

pursuant to Fed R. Civ. P. 60(b)(2),  for relief from the 2015 Opinion.  Symeou respectfully

requests that this Court order the immediate destruction of the documents already produced and

further prohibit the use of such documents or information contained therein for any purpose,

including, without limitation, prohibiting the use of such information in any proceeding

commenced or to be commenced in the BVI or elsewhere.   Alternatively, Symeou asks the

Court to stay this proceeding and the 2014 Order until the BVI Execution Proceedings are

completed.

Dated: October 15, 2015
        New York, New York


**REED SMITH LLP**                          **MARKS & SOKOLOV, LLC**

By: /s/ Steven Cooper                       By: /s/ Bruce S. Marks
Steven Cooper                               Bruce S. Marks
Samuel Kadosh                               1835 Market Street, 28th Floor
599 Lexington Avenue                        Philadelphia, PA 19103
New York, New York 10022                    Telephone: (215) 569-8901
Telephone: (212) 521-5400                   Facsimile: (215) 569-8912
Facsimile: (212) 521-5450                   marks@mslegal.com
scooper@reedsmith.com
skadosh@reedsmith.com

*Attorneys for Intervenor Panikos Symeou*

# Appendix



Transactions Involving
Unrelated Entities
**5952**
52.36%

Transactions Involving Shulman
Entities
**459**
4.04%

Transactions of Warren Steel or
Halliwell
**604**
5.31%

Transactions Involving Related
Entities and Warren Steel
**1**
0.0008%

Transactions Involving Korf and
Warren Steel
**5**
0.04%

Transactions Involving
Kolomoisky/Bugolobov/Korf
and NOT Warren Steel or
Halliwell
**388**
3.41%

Transactions Involving
Marigold/Felman/Optima/
Symeou/Georgian American
Alloys/Divot/Privat and NOT
Warren Steel or Halliwell
**3958**
34.82%

**Total Transactions:
11,367**