UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br>APPLICATION OF HORNBEAM CORP. | 14 Misc. 424 (VSB) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF INTERVENOR
PANIKOS SYMEOU'S MOTION FOR RELIEF FROM
THE COURT'S SEPTEMBER 17, 2015 ORDER**

**Reed Smith LLP**
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

and

**Marks & Sokolov, LLC**
1835 Market Street, 28th Floor
Philadelphia, PA 19103
(215)569-8901

*Attorneys for Intervenor Panikos Symeou*

# TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................. 1

I.     **THE WIRE RECORDS DEMONSTRATE THAT THE AUTHORIZED PRE-FILING DISCOVERY WAS OVERLY BROAD AND UNDULY INTRUSIVE** ............................................................................................. 1

     A.     **The 8,000+ Wire Records of Unrelated Persons Should Be Destroyed** ........... 1

     B.     **The 5,000+ Unrelated Records Of the Related Parties Should Be Destroyed** ................................................................................................ 2

     C.     **Responsive Records Need Not Be Destroyed** ...................................... 4

II.     **THE INTERNAL AFFAIRS DOCTRINE, AS WELL AS INTERNATIONAL COMITY, PRECLUDES DISCOVERY OF INTERNAL FINANCIAL INFORMATION OF HALLIWEL AND WARREN STEEL** ........................................................................................ 5

III.     **THE MATTER SHOULD BE STAYED PENDING RESOLUTION OF BVI EXECUTION PROCEEDINGS BASED ON SOUND DOCKET MANAGEMENT AND INTERNATIONAL COMITY** ................................ 8

IV.     **BVI PROCEEDINGS ARE NOT WITHIN REASONABLE CONTEMPLATION** .............................................................................. 8

V.     **THE WIRE RECORDS REVEAL A CONTINUING VIOLATION OF HORNBEAM'S DUTY OF DISCLOSURE IN *EX PARTE* PROCEEDINGS** ........... 9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Certain Funds, Accounts and/or Inv. Vehicles Managed By Affiliates Of Fortress*
  *Inv. Grp. L.L.C. v. KPMG, L.L.P.*,
  2015 U.S. App. LEXIS 14614 (2d Cir. Aug. 20, 2015)............................................................9

*CTS Corp. v. Dynamics Corp. of Am.*,
  481 U.S. 69 (1987)......................................................................................................6

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983)....................................................................................................6

*Graney Development Corp. v. Taksen*,
  92 Misc. 2d 764 (N.Y. Sup. Ct. 1978) ......................................................................2

*In re OOO Promnefstroy*,
  Misc. No. M 19–99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ................7

*In re Microsoft Corp.*,
  428 F. Supp. 2d 188 (S.D.N.Y. 2006).........................................................................7

*Nemaizer v. Baker*,
  793 F.2d 58 (2d Cir. 1986)...........................................................................................1

*Pennsylvania v. Williams*,
  294 U.S. 176,185 (1935)...............................................................................................5

*Rogers v. Guaranty Trust Co.*,
  288 U.S. 123 (1933).....................................................................................................5

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
  376 F.3d 79 (2d Cir. 2004)...........................................................................................7

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
  2015 U.S. Dist. LEXIS 162164 (S.D.N.Y. Dec. 3, 2015) .........................................4

*United States v. Int'l Bhd. of Teamsters*,
  247 F.3d 370 (2d Cir. 2001)........................................................................................1

*Zbigniew Zagroba v. York Restoration Corp.*,
  2011 U.S. Dist. LEXIS 57118 (S.D.N.Y. May 26, 2011) .........................................4

<u>**ARGUMENT**</u>

I. **THE WIRE RECORDS DEMONSTRATE THAT THE AUTHORIZED PRE-FILING DISCOVERY WAS OVERLY BROAD AND UNDULY INTRUSIVE**

Hornbeam does not seriously dispute that this Court may reconsider its decision based on the newly discovered Wire Records which Hornbeam refused to produce until ordered.[1] Symeou does not have to demonstrate "extraordinary" circumstances under Rule 60(b)(2). Rather, this Court may grant relief "to do substantial justice." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). The evidence need only be of "such importance that it probably would have changed the outcome." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001). Symeou satisfies this standard. A Wire Records summary is attached as **Addendum A.**

A. **The 8,000+ Wire Records of Unrelated Persons Should Be Destroyed[2]**

Hornbeam does not dispute over 8,000 unresponsive records of Unrelated Persons have been produced.[3] Despite agreeing to help identify Unrelated Persons records, with the exception of Royal Bank of Scotland, Hornbeam's counsel refused to review Symeou's designation of Unrelated Persons records. Sullivan Dec. ¶¶ 5 – 18. Instead, Hornbeam merely proposed a protective order "against use" of Unrelated Persons records. This does not solve the problem.

***First***, the parties are not entitled to possess or disseminate confidential commercial and personal information involving billions of dollars of Unrelated Persons. A protective order "against use" does not solve this problem because the Unrelated Persons records are comingled

---

[1] Hornbeam's suggestion that Symeou should have been aware of the magnitude of Related Parties records because he was aware of the scope of discovery has no basis. Symeou had no knowledge that over 4,500 records ***unrelated*** to Halliwel and Warren Steel would be captured.

[2] The Parties agreed to reserve decision on whether the Court should order that Unrelated Persons are notified of what occurred, pending the relevant banks providing their view.

[3] Hornbeam's questioning of Symeou's motivation is unjustified. Hornbeam created this problem by secretly taking discovery in violation of Rule 45; if Symeou had been provided notice from the beginning, his counsel would have immediately spotted the problem.

with responsive records and Hornbeam seeks to disseminate them further, including to foreign counsel, foreign consultants, and other persons outside the United States.

*Second,* the improper dissemination of Unrelated Persons records by the banks implicates (1) violation of 15 U.S.C. §6801, which governs bank record confidentiality; (2) violation of NY Gen. Bus. L. §899-aa, which governs financial data breaches; and (3) breach of New York common law, which imposes a duty of confidentiality on banks not to disclose financial information. *See Graney Development Corp. v. Taksen*, 92 Misc. 2d 764 (N.Y. Sup. Ct. 1978). Symeou has informed the banks of such. This Court should not countenance Hornbeam continuing possession and dissemination of these records. Symeou and its counsel should not be exposed to liability if Hornbeam disseminates Unrelated Persons records which are then improperly disclosed (intentionally or otherwise) and Unrelated Persons are harmed.

*In sum,* the Court should order the parties to destroy the discovery containing Unrelated Persons records and have the eight related banks reproduce the discovery excluding the Unrelated Persons records identified by Symeou. *See* Chart, Addendum A. Persons who received Unrelated Persons records should (a) disclose to whom they disseminated these records, (b) certify they have been destroyed, and (c) submit to this Court's jurisdiction for enforcement.

### B.    The 5,000+  Unrelated Records Of the Related Parties Should Be Destroyed

Hornbeam does not dispute that the banks produced 5,512 records of Related Entities and Persons (collectively, "Related Parties") which are not to, from, or connected to Warren Steel or Halliwel. These records, totaling billions of dollars, contain confidential commercial and personal information ***unrelated*** to Warren Steel and Halliwel. Only six records of the Related Parties are to or from Warren Steel and Halliwel. Like the Alabama court, this Court should exclude discovery of the irrelevant records of Related Parties.

*First,* Hornbeam's purported BVI action involves alleged self-dealing transactions by

Warren Steel or Halliwel, whether by sham loans or otherwise. Hornbeam makes no cognizable argument as to why it needs unrelated records of Related Persons to file these claims. Tellingly, it does not point to a *single* unrelated wire of the 5,512 wires it already has to support its argument. Hornbeam points to payments made by Warren Steel on behalf of the Related Parties as improper, but these transactions prove the point --- they are revealed by Warren Steel wires.[4] The Alabama court accepted this distinction after hearing Symeou and excluded discovery of the Related Parties. Alabama Order, ECF 53-3.

*Second,* Hornbeam attempts to justify discovery of Related Parties by manufacturing a new claim related to Halliwel wiring money to purchase a Michigan plant for its two other shareholders in May-June 2008. Here too, Hornbeam only needs Halliwel wires to assert a claim concerning this transaction, not those of Related Parties. Moreover, this purported claim has no merit. The current protective order did not prevent Hornbeam's counsel from confirming with Shulman that he has no interest in the Michigan plant before making wild allegations. If Hornbeam had bothered to request relevant records under BVI law, it would have learned that Halliwel's account was merely used as a conduit through which Divot Enterprises Limited, a Related Entity, wired $81,842,000 on behalf of the other shareholders to purchase this plant in May 2008. Sullivan Dec. ¶ 21. These funds are separate from the $90 million credit used to restart Warren Steel, as Shulman knows and accepted from the inspection of Warren Steel's plant and records by his agent, Western Reserve Consultants in 2012. Korf Aff. ¶¶5.3-5.4, ECF 18-6 at p. 2-3. Hornbeam should only be permitted discovery *needed* to file the claims described in its Application. Hornbeam's allegation that "retention of forensic accountants with expertise

---

[4] Although not explained by Hornbeam, these payments were disclosed in the more than 20,000 pages of Warren Steel documents voluntarily produced by Halliwel in 2014. These *disclosed* payments were credited against the Related Parties' loans to Warren Steel – hardly fraud.

in the area of international fraud" is needed to review a handful of 2008 wire records is pure bombast designed to muddy the waters.

**Third**, the Related Parties will be harmed if Hornbeam is permitted to retain their **unrelated** records disclosing confidential commercial transactions, personal transactions, and bank accounts. Even with a protective order, the Wire Records have been sent to persons outside this Court's reach – Campanile in Switzerland, Ferree in England, and Shulman in Monaco. Even worse, Hornbeam would like to disseminate these records to Shulman's non-attorney "agents" and "representatives" located in foreign countries. *See* Hornbeam Proposed Protective Order § 4(b) (permitting disclosure to "Vadim Shulman … as well as … **non-attorney agents and non-attorney representatives**.")(emphasis added).

**Finally**, none of Hornbeam's cases concern pre-filing discovery under §1782 and are otherwise inapposite because its allegations can be established with Warren Steel and Halliwel records. In contrast, numerous cases limit discovery of financial records to avoid intruding in unrelated matters, even before Rule 26 was amended, effective December 1, 2015, to narrow the scope of discovery.[5] Thus, the Court should order the Related Parties records, other than six related to Halliwel and Warren Steel, to be destroyed. This can be done during the process of destroying the Unrelated Persons records, which leaves only Warren Steel and Halliwel records.

### C. Responsive Records Need Not Be Destroyed

Symeou is not arguing that responsive records, i.e. 84 records of Halliwel, 470 records of Warren Steel, and 6 related records of the Related Parties be destroyed because Unrelated

---

[5] *See e.g., Zbigniew Zagroba v. York Restoration Corp.*, 2011 U.S. Dist. LEXIS 57118, *8 (S.D.N.Y. May 26, 2011)(granting motion to quash and modify: "the Court finds that plaintiffs' other financial information sought by defendants is not relevant to claims and defenses in this action *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 U.S. Dist. LEXIS 162164, *7 (S.D.N.Y. Dec. 3, 2015) (recently amended Rule 26(b)(1) is intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse").

Persons records or unrelated Related Parties records were produced. To the extent that the Court orders that Unrelated Persons or Related Parties records be destroyed, these records can be segregated and preserved or reproduced by the banks.

## II. THE INTERNAL AFFAIRS DOCTRINE, AS WELL AS INTERNATIONAL COMITY, PRECLUDES DISCOVERY OF INTERNAL FINANCIAL INFORMATION OF HALLIWEL AND WARREN STEEL

This Court should reconsider its conclusion that §1782 does not implicate "substantive questions of Hornbeam's governance" because §1782 is "merely a discovery device". The internal affairs doctrine is a paramount policy adopted by federal and state courts. This §1782 discovery directly interferes with Halliwel's management.

*First,* the doctrine is a limitation on the exercise of jurisdiction: "a court—state or federal—sitting in one State will as a general rule decline to interfere with or control by injunction or otherwise the management of the internal affairs of a corporation organized under the laws of another State but will leave controversies as to such matters to the courts of the State of the domicile." *Rogers v. Guaranty Trust Co.,* 288 U.S. 123, 130 (1933) (affirming dismissal of diversity jurisdiction case, citing multiple federal and state cases).[6] The Ohio court squarely held that permitting Hornbeam to inspect Warren Steel's books and records "would interfere with the internal management of Halliwel." Ohio Decision, ECF 44-1 at 7. Thus, the limitation on the exercise of jurisdiction barred ordering inspection of Warren Steel's books and records, even though they were in Ohio. Ohio Decision at 14. This shows the issue is whether records can be obtained through procedures in Halliwel's home forum, not where records are located. As the Wire Records demonstrate, this information can be obtained by seeking these records

---

[6] *See also Pennsylvania v. Williams,* 294 U.S. 176,185 (1935) (reversing exercise of diversity jurisdiction, holding "it has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state.").

from Halliwel, subject to Symeou's exercise of discretion under BVI law (such as conditioning inspection on payment of Halliwel's judgment).[7] To permit otherwise interferes with Halliwel's substantive governance and the BVI court's power to control inspection of internal information.

**Second,** the internal affairs doctrine provides a choice of law rule: "the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation. Application of that body of law achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983). This rule mandates that BVI law governs access to the information in internal records of Halliwel and its subsidiary, rather than permitting Hornbeam to use §1782 to circumvent these limitations.

**Third,** "[p]ursuant to the Fourteenth Amendment Due Process Clause, directors and officers of corporations have a significant right . . . to know what law will be applied to their actions and stockholders . . . have a right to know by what standards of accountability they may hold those managing the corporation's business and affairs." Ohio Decision at 5 (quoting *VantagePoint Venture Partners 1996 v. Examen, Inc.,* 871 A.2d 1108 (Del. 2005)). "[A]pplication of the internal affairs doctrine is mandated by constitutional principles, except in the 'rarest situations.'" Ohio Decision at 5 (quoting *CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 90 (1987)).[8] Constitutional concerns dictate that disputes over the books and records of

---

[7] Symeou vigorously disputes Hornbeam's allegation that he refused and continues to refuse to produce documents to which Hornbeam is entitled. Halliwel voluntarily produced over 20,000 pages of Warren Steel records during 2014. Campanile Dec. ¶101, ECF 3-3 at 22. Hornbeam's response was to file BVI proceedings without notice in August 2014. After its claims were dismissed as "an abuse", Hornbeam filed five secret §1782 proceedings between December 2014 and May 2015 and the Ohio Action with less than one day's notice in June 2015. Hornbeam has never made a good faith effort to inspect internal records under BVI law.

[8] As *CTS Corp,* explained, "Th[e] beneficial free market system depends at its core upon the fact that a corporation -- except in the rarest situations -- is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation." 481 U.S. at 90.

Halliwel and its subsidiary be governed by BVI law and decided by BVI courts.  Notably, in 2007, Shulman, Bogolubov, and Kolomoisky transferred their Warren Steel shareholdings to Halliwel to obtain the benefits of a BVI corporation.  Hornbeam should not be permitted to use §1782 to circumvent their choice of BVI law and courts to govern internal affairs.

**Finally,** separate from the internal affairs doctrine, international comity principles underlie §1782.  Discovery is not favored if the "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264.  As the Ohio Decision and Wire Records demonstrate, permitting §1782 discovery would allow a shareholder of a foreign corporation to circumvent the foreign forum's law and procedures governing inspection of internal records simply because a third party located in the United States has  information contained in the foreign corporation's records – which will always occur if the corporation maintains bank accounts in the United States.  Hornbeam's forum shopping not only interferes with Halliwel's management's power over the internal affairs of Halliwel and Warren Steel and BVI court control over what is produced, but also the BVI requirement that it pay the BVI Judgment before prosecuting new litigation.  The key issue is that the information is available from Halliwel in the BVI.[9]

---

[9] *See e.g. Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) ("Although technically the respondent in the district court was [a local law firm], for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation."); *In re OOO Promnefstroy*, Misc. No. M 19–99(RJS), 2009 WL 3335608, at 5 (S.D.N.Y. Oct. 15, 2009) ("the foreign tribunal's ability to control the evidence and order production, not the nominal target of the §1782 application, [is] on which the district court should focus."); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) ("The relevant inquiry is whether the evidence is available to the foreign tribunal. In this case, it is.  Thus, § 1782 aid is both unnecessary and improper.")

### III. THE MATTER SHOULD BE STAYED PENDING RESOLUTION OF BVI EXECUTION PROCEEDINGS BASED ON SOUND DOCKET MANAGEMENT AND INTERNATIONAL COMITY

Hornbeam's allegation that Symeou seeks a stay as a "clear delay tactic" is a baseless assertion made without support to distract from the merits.

***First,*** sound docket management counsels that this Court should not spend time adjudicating the matter, other than ordering the Unrelated Persons and Related Parties records destroyed, if the BVI Execution Proceedings may moot the issue. Symeou submitted the unrebutted BVI attorney Nader declaration that BVI law permits the creditors to obtain a final charging order and execute the charge against the Halliwel shares. ECF 43. Hornbeam argues that Symeou has not established that a judicial sale of its Halliwel shares may bring less than $1.1 million (the BVI Judgment plus security for costs), noting Shulman's alleged $58 million investment. But, this ignores that the Related Entities and Korf lent more than $100 million which is secured by Warren Steel's assets, and current steel industry conditions. Shulman's equity interest – subordinate to this debt -- may be worth less than $1.1 million. If Hornbeam loses its Halliwel shares, it will no longer have standing to bring BVI Section 184I claims in the BVI, making the §1782 discovery moot.

***Second,*** fairness to litigants supports the stay, which will avoid further expense by Symeou and prevent Hornbeam from circumventing the BVI policy that judgments should be paid. If, as Hornbeam argues, it is at "extreme risk of being substantially injured if use of the Responsive Material is delayed," Shulman should pay the BVI Judgment which this Court has described as a "fairly trivial obstacle." Order, ECF 35 at 15.

### IV. BVI PROCEEDINGS ARE NOT WITHIN REASONABLE CONTEMPLATION

"At a minimum, a *§1782* applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in

counsel's eye." *Certain Funds, Accounts and/or Inv. Vehicles Managed By Affiliates Of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 2015 U.S. App. LEXIS 14614, *27-28 (2d Cir. Aug. 20, 2015) (citations omitted.).[10]   Hornbeam's stated that if the Ohio TRO was dissolved and the case dismissed "there will likely no longer be assets in the BVI to justify the contemplated BVI proceedings."   Defendants' Joint Motion To Strike, ECF 32 at 2.   As the Court knows, the Ohio TRO was dissolved, and the case dismissed on October 22, 2015.   ECF 42-1.   This alone demonstrates that BVI proceedings are no longer likely.   The failure to pay the BVI Judgment, despite being "a fairly trivial obstacle," also demonstrates that the BVI Action is not "within reasonable contemplation."   Unless the BVI Judgment is paid, the "objective indicium" establishes BVI proceedings are speculative, at best.[11]

## V.   THE WIRE RECORDS REVEAL A CONTINUING VIOLATION OF HORNBEAM'S DUTY OF DISCLOSURE IN *EX PARTE* PROCEEDINGS

The Wire Records establish that Hornbeam's counsel violated the duty imposed by N.Y.R. Prof Conduct 3.3(d) in *ex parte* proceedings by failing to disclose that the discovery resulted in production of records containing confidential commercial and personal information of Unrelated Persons that Hornbeam had no right to possess.

***First***, Hornbeam does not dispute that its counsel owed a duty of disclosure in *ex parte* proceedings.   Nor does Hornbeam dispute that its counsel received over 8,000 Unrelated Persons records unresponsive to the subpoenas.   Nor can Hornbeam dispute that N.Y.R. Prof. Conduct

---

[10] *Certain Funds*' statement that this should be assessed "at the time the §1782 application was filed" did not mean the literal time of filing.   This statement was directed at precluding expansion of the record on appeal to show the foreign proceeding had been filed after the district court's decision.   As *Certain Funds* explained, "We must instead consider the facts as they were presented to the district court."   *Id.* at 124. Here, the August 12, 2015 submission was presented to this Court and, in any case, this Court may grant relief under Rule 60(b) based on changed circumstances.

[11] Hornbeam argues that Halliwel may have assets other than Warren Steel because it purchased the Michigan plant.   But Halliwel did not purchase this plant.   The other shareholders purchased the plant by wiring their money through Halliwel's account.

9

4.4(b) requires an attorney who has received inadvertently produced discovery to promptly notify the sender.

*Second*, it is beyond implausible that Hornbeam's counsel, along with Swiss attorney Campanile, did not realize that over 8,000 records were improperly produced from March 2015 onward. After all, they knew *exactly* where the Related Entities were located, as evidenced by their recent communication with HSBC Bank disclosing such. Sullivan Dec., ¶¶ 19-20. While Mr. Power's declaration states that Hornbeam did not "determine how many specific transactions were non-responsive to the subpoena", he does not deny that his firm, as well as Hornbeam's Swiss attorney Campanile, knew that a ***massive*** number were unresponsive; they did not count them because there was so many. On their face, these 8,000 records have nothing to do with the Related Entities – different names, different addresses, etc. It took Symeou's counsel only a few days to identify the significant Unrelated Persons, some named in the sealed filing, whose financial data involving hundreds of millions of dollars has been compromised. If the Court has any doubt as to the facts, Symeou requests discovery, such as billing records, to determine when Hornbeam's counsel discovered Unrelated Persons records were produced and why this was not disclosed. The Unrelated Persons records can also be examined *in camera*.

***Third,*** Hornbeam's counsel chose not to disclose this, because Hornbeam did not want to risk that the Court and/or banks would alert the identified BVI defendants that Hornbeam was taking, and continued to take, secret discovery. Hornbeam's counsel violated their duty to keep the Court informed of what occurred to ensure the interests of unrepresented persons, including the banks and Unrelated Persons, were protected. They should be sanctioned.

Dated: December 11, 2015
      New York, New York

**REED SMITH LLP**

By: /s/ Steven Cooper
Steven Cooper
Samuel Kadosh
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
scooper@reedsmith.com
skadosh@reedsmith.com

*Attorneys for Intervenor Panikos Symeou*

**MARKS & SOKOLOV, LLC**

By: /s/ Bruce S. Marks
Bruce S. Marks
1835 Market Street, 28th Floor
Philadelphia, PA 19103
Telephone: (215) 569-8901
Facsimile: (215) 569-8912
marks@mslegal.com

# Addendum A

| Bank | Date Produced by Bank | Unrelated Entities/ Persons | Shulman Entities | Warren Steel | Halliwel | Related Entities/ Persons |
|---|---|---|---|---|---|---|
| Bank of America | 04/09/2015 | **28** | 0 | 142 | 0 | 7 |
| BNP Paribas | 02/18/2015 | **0** | 0 | 0 | 0 | 39 |
| BNYM | 03/12/2015 | **174** | 33 | 11 | 4 | 457 |
| Chase | 02/25/2015 | **21** | 529 | 0 | 0 | 0 |
| Citibank | 02/03/2015 | **4593** | 70 | 159 | 0 | 1021 |
| Commerzbank | 01/30/2015 | **0** | 0 | 0 | 0 | 4 |
| Deutsche Bank | 11/02/2015 | **278** | 36 | 68 | 79 | 3103 |
| HSBC | 02/18/2015 | **1333** | 0 | 36 | 0 | 489 |
| Royal Bank of Scotland | 03/23/2015 | **1467** | 0 | 0 | 0 | 8 |
| Standard chartered | 01/26/2015 | **279** | 16 | 54 | 0 | 359 |
| UBS | 02/02/2015 | **0** | 13 | 0 | 1 | 25 |
| **TOTAL** | | **8173** | **697** | **470** | **84** | **5512** |