UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br>APPLICATION OF HORNBEAM CORP. | 14 Misc. 424 (VSB) |

## DECLARATION OF THOMAS C. SULLIVAN

**THOMAS C. SULLIVAN**, an attorney duly admitted to practice law before the courts of the Commonwealth of Pennsylvania and the courts of the State of New Jersey, declares:

1. I am an attorney at Marks & Sokolov, LLC, counsel for Panikos Symeou ("Symeou").

2. I submit this declaration in support of Symeou's Reply Memorandum of Law In Further Support Of His Motion For Relief From The Court's September 17, 2015 Order.

3. I submit this declaration based upon my personal knowledge and involvement in this action unless I indicate otherwise.

4. On December 3, 2015, I was admitted *pro hac vice* in this matter.

### RECORDS

5. By letter dated November 5, 2015 to counsel for Hornbeam, James Power, Esq., I raised the issue of the overbreadth of Hornbeam's discovery resulting in the Banks producing what I then thought was over 9,000 wire records of Unrelated Persons, which Hornbeam had possessed for months and had not disclosed to the Court.

6. I advised that Symeou intended to report this issue to the Court and that we were interested in his proposal as to how notice should be given to the Unrelated Persons regarding Hornbeam's receipt of their bank account and transactional data, and the dissemination thereof, particularly to persons outside of the United States.

7. I further noted that on the face of the Wire Records, thousands of captured names were outside the intended scope of the December 24, 2014 Order and that a simple review of entity addresses with a quick Google search reveals entities identified in the Unrelated Persons Chart, attached to Symeou's November 18, 2015 sealed filing, (ECF 48).

8. By email dated November 5, 2015 to Mr. Power, I stated that Symeou's position is that Hornbeam should designate in spreadsheet format which wires it considers relevant and that we could then agree on a mechanism by which the Banks and Unrelated Persons whose confidential commercial and personal information has been improperly disclosed are notified of what occurred.

9. By email dated November 6, 2015, I again requested that Mr. Power provide a list of wires Hornbeam believes relevant.

10. By email dated November 6, 2015 Mr. Power stated that it was "Symeou's burden to tell Hornbeam which records are in which category."

11. By email dated November 9, 2015, I responded confirming that Hornbeam refused to disclose which of the 14,000+ wires transaction records it considered relevant and responsive to the subpoena. Because Hornbeam had done nothing towards identifying non-responsive wires, I attached spreadsheets for Citibank and HSBC with approximately 1,700 entries marked as responsive to the subpoenas, with the remaining records 5,500+ entries non-responsive. I also attached the only 8 responsive wire records from Royal Bank of Scotland ("RBS")'s 1,475 produced wire records. I requested that Hornbeam review and confirm the designations. I also requested that for the 6,000 wires collectively received from Bank of America, Bank of New York Mellon, BNP Paribas, Commerzbank, Deutsche Bank, J.P. Morgan, Standard Chartered and UBS AG, (and Wells Fargo if applicable), that Hornbeam should mark

(or otherwise indicate) which wires they deem responsive to the subpoenas. Hornbeam did not do this.

12. On November 13, 2015 during a meet and confer, counsel for Hornbeam Sean Barry represented that by November 20, 2013, Hornbeam would advise as to its position regarding designation of non-responsive wire transactions for Citibank, HSBC and RBS. Hornbeam did not do this.

13. By email dated November 30, 2015, Mr. Barry stated they believe "reviewing all the records from each bank would be completely unnecessary."

14. By email dated November 30, 2015 to Mr. Barry, I responded stating that not reviewing the records produced by each bank is illogical because one must actually look at the transactions in order to segregate responsive from non-responsive transactions. I further noted that his position was contrary to his representations at the November 13, 2015 Meet and Confer that they would review records for non-responsive transactions. I then requested that Hornbeam designate responsive wire transactions by Friday, December 4, 2015. Hornbeam did not do this.

15. By email dated December 2, 2015, I forwarded to Mr. Barry BNY Mellon's subpoena production with non-responsive wire transactions marked in yellow requesting Hornbeam to confirm which entries were non-responsive.

16. By email dated December 3, 2015, Mr. Barry advised they would review the marked BNY Mellon subpoena production the following week. Hornbeam did not do this.

17. As a result of Hornbeam's refusal to cooperate in identifying records of Unrelated Persons from the subpoena responses, I undertook a complete review of more than 14,000 wire transactions designating those which are non-responsive to the subpoena, i.e., the wire records of Unrelated Persons.

18. My tabulation of non-responsive wire transactions for each bank is as follows: Bank of America (28), BNP Paribas (0), BNY Mellon (174), Citibank (4,593), Commerzbank (0), Deutsche Bank (278), HSBC (1,333), JP Morgan Chase (21), Royal Bank of Scotland (1,467), Standard Chartered (279), and UBS (0). A summary of the wire records in the Bank subpoena responses, is attached hereto as **Exhibit A**.

### Hornbeam Had Identifying Information of The Related Parties

19. On December 9, 2015 Counsel for Hornbeam provided HSBC specific (and often multiple) addresses for each Related Party. A true and correct copy of the Dec. 9, 2015 Barry Email (redacted), is attached hereto as **Exhibit B**.

20. This email confirms Hornbeam's knowledge of proper identifying information of the Related Parties which should have been used to advise the banks of the capture of records of Unrelated Persons.

### Halliwel's Account Was A Mere Conduit

21. I am informed that Halliwel's account was merely used as a conduit through which Divot Enterprises Limited, a Related Entity, wired $81,842,000 on behalf of the other shareholders to purchase the Michigan plant in May 2008.

### Counsel For Hornbeam's Ex Parte Communications With The Banks

22. By letter dated February 2, 2015, Deutsche Bank objected to Hornbeam's subpoena. A true and correct copy is attached as part of **Exhibit C**.

23. By email dated October 22, 2015 to Deutsche Bank, Mr. Barry confirmed a conversation earlier in the week and enclosed a draft protective agreement. A true and correct copy is attached as part of Exhibit C.

24. By email dated October 30, 2015, Deutsche Bank sent to Mr. Barry a revised protective agreement. A true and correct copy is attached as part of Exhibit C.

25. By email dated October 30, 2015 to Deutsche Bank, Mr. Barry sent an executed protective agreement and advised he was amenable to receiving the subpoena production via email. A true and correct copy is attached as part of Exhibit C.

26. Hornbeam never advised us during October 2015 of their negotiations with Deutsche Bank regarding a protective agreement or that Deutsche Bank's document production was forthcoming.

27. We received Deutsche Bank's document production on November 3, 2015, along with an undated Protective Agreement between Deutsche Bank and Hornbeam.

28. We did not receive counsel for Hornbeam's correspondence with Deutsche Bank until November 19, 2015, with additional documents produced on December 10, 2015.

I executed this declaration within the United States and pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 11, 2015

By: _____
THOMAS C. SULLIVAN