1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   -------------------------------x

3   IN RE:,

4   APPLICATION OF HORNBEAM
    CORPORATION,
5
                                        14 MC 424
6
    PANIKOS SYMEOU,
7
                    Intervenor.
8
    -------------------------------x
9                                       New York, N.Y.
                                        September 12, 2019
10                                      4:00 p.m.

11  Before:

12                  HON. VERNON S. BRODERICK,

13                                      District Judge

14                      APPEARANCES

15  MURPHY & McGONIGLE PC
        Attorneys for Applicant Hornbeam Corporation
16  BY:  MICHAEL V. RELLA
         HENRY L. SAURBORN JR.
17       CAROL ELDER BRUCE
         -and-
18  BYRD CAMPBELL, P.A
    BY:  TUCKER H. BYRD
19       -and-
    KAISER SAURBORN & MAIR PC
20  BY:  HENRY L. SAURBORN JR.

21  MARKS & SOKOLOV LLP
        Attorneys for Intervenor Panikos Symeou
22  BY:  BRUCE MARKS
         MARIA GRECHISHKINA
23

24

25

1          (In chambers; case called; parties present

2    telephonically)

3          MR. RELLA:  Michael Rella and Carol Bruce, from the

4    law firm of Murphy & McGonigle, for applicant Hornbeam Corp.

5          THE COURT:  Okay.

6          And for --

7          MR. MARKS:  This is Bruce Marks with Maria

8    Grechishkina for intervenor Panikos Symeou.

9          THE COURT:  I apologize.  This is Judge Broderick.

10   You mentioned your co-counsel's name.  If I could get the

11   spelling of that name, last name?

12         MR. MARKS:  Your Honor, are you asking -- which side?

13         THE COURT:  Oh, I'm sorry, I have on my appearance

14   sheet Mr. Rella, and was it Ms. O'Shaughnessy?  Ms. Bruce?

15   Sorry.  But I only have Mr. Marks for Mr. Symeou.

16         MR. MARKS:  Sorry, your Honor.  Unless you're going to

17   test my pronunciation of Russian, I'm going to have Maria tell

18   you how she spells her name.

19         THE COURT:  Okay.

20         MS. GRECHISHKINA:  It's Maria, M-a-r-i-a,

21   Grechishkina, G-r-e-c-h-i-s-h-k-i-n-a.

22         THE COURT:  Okay.

23         MR. RELLA:  Your Honor, I believe we have also on the

24   line new counsel for the applicant, who just filed a notice of

25   appearance yesterday.

1      THE COURT:  Okay.  If that person would note their
2  appearance.
3      Hello?  Is new counsel coming in for Hornbeam on the
4  line?
5      MR. BYRD:  Your Honor, this is Tucker Byrd.  I have a
6  pro hac application pending.  Mr. Henry Saurborn is our local;
7  he was supposed to be on the line.
8      THE COURT:  Okay.  I have not seen the notice of
9  appearance yet but I'll take a look right now.
10      Going forward, with regard to the conference, we're in
11  my chambers, I have a court reporter here, so when you do
12  speak, I'd ask that you please identify yourself by name first
13  and then you can proceed to make your point.
14      While I have you on the line, let me try and look up
15  the case just to find the notice of appearance.
16      MR. RELLA:  Your Honor, I would note the notice of
17  appearance was filed on Wednesday, September 11th, by
18  Mr. Saurborn.  He is local counsel admitted in the S.D.N.Y. and
19  then there was an amended motion for Mr. Byrd's pro hac motion
20  filed just yesterday, I believe.  And there is a notice from
21  your Court saying that the document has been reviewed and there
22  are no deficiencies.  That's the last docket entry there.
23      THE COURT:  Yes, I see that, so I think the next step
24  is probably for us -- I haven't seen the actual documents yet,
25  but based upon the clerk's office review, I don't see any

1    reason why I wouldn't grant the application to be admitted

2    pro hac.

3          So, let me ask, because right now I have pending

4    before me the motion to be relieved as counsel, from Murphy &

5    McGonigle, current counsel for Hornbeam, and an objection from

6    the adversary, Mr. Symeou, to that happening.

7          I don't know whether, counsel, you have been able to

8    look at the docket or you were appraised of new counsel coming

9    in prior to this, but let me hear from you with regard to your

10   current position relating to the motion to withdraw.

11         MR. MARKS:  Your Honor, our current position is that

12   the motion to withdraw should not be granted until current

13   counsel, who has the knowledge of what has happened to date,

14   does certain things.  We have no idea really why counsel seeks

15   to withdraw.  They submitted some type of document under seal.

16   Obviously, we don't know the contents of that.  I was under the

17   impression that certain aspects of that were going to be

18   redacted and then filed on the ECF, but that hasn't happened,

19   so we have no idea what counsel has said to your Honor

20   regarding the reason for their withdrawal.

21         THE COURT:  I'm sorry, is this Mr. Marks?

22         MR. MARKS:  Mr. Marks.  Excuse me.  I'm sorry.  I

23   messed it up right out of the box.  It's Mr. Marks, for the

24   court reporter.

25         THE COURT:  Okay.

1           MR. MARKS: So, our position on that, your Honor, is

2      that counsel, Ms. Bruce, who's really been the one involved in

3      this case -- not so much in the Southern District of New York

4      but there's been extensive proceedings in the Southern District

5      of Florida -- that that firm, which is the third firm that's

6      been involved, that's the firm that has the substantive

7      knowledge as to who has received the discovery materials, for

8      reasons I don't understand, there's been no certifications

9      filed with the Court, as we're required.  The protective order

10     required certifications of anybody who received the discovery

11     to be filed under seal.  I don't believe that any have been

12     filed under seal ex parte, but we get notice of a filing, your

13     Honor.  I don't believe that any have been filed.

14          When your Honor entered the protective order, back in

15     2015, counsel, Holland & Knight, your Honor -- we had agreement

16     that counsel in that case at the time did not have to file

17     those certifications, so, Mr. Power and the folks at Holland &

18     Knight did not do that.  The folks at Reed Smith and my firm

19     did not do that.  There's been nobody on our side who received

20     the discovery outside of our two law firms.

21          In contrast, there's been subsequent firms, Holland &

22     Knight and then the Murphy & McGonigle firm, that have received

23     that discovery.  We believe that Mr. Shulman has received the

24     discovery.  Your Honor may recall he's a beneficiary of

25     Hornbeam.  There may have been other people who received it.

1    Mr. Shulman has Russian-speaking folks, who at least assisted

2    in the Southern District of Florida, who filed certifications

3    there.  They did not file certifications in the Southern

4    District.

5         Your Honor, it kind of proves my point, but four years

6    ago, in December of 2015, they told your Honor that the

7    ex parte hearing that they were going -- Hornbeam was going to

8    file these claims in the B.V.I.  There's been no certifications

9    of B.V.I. attorneys that they received it, but we don't think

10   that that happened because that was never their intent.

11        So, your Honor, all we're saying is that counsel

12   should not be relieved until certain obligations are completed,

13   obligations that they would have factual knowledge of, but new

14   counsel, who just entered his appearance yesterday, would not,

15   and those obligations are to have certifications filed with

16   your Honor.

17        At this point, we think that we should receive copies

18   of them so we know before they leave the case who has received

19   the discovery.  And your Honor knows, from our second request,

20   that we believe that the time has come for this saga to end and

21   that discovery that your Honor allowed in December of 2015 --

22   '14, excuse me -- wow, 2014 -- that that was conditioned on the

23   discovery being used only in the B.V.I. by Hornbeam.  They have

24   never filed a new proceeding since then.  For reasons I can

25   provide to your Honor, it's obvious that they're never going to

1   file that.  And we would like counsel to stay in the case so

2   that once the certifications are filed as to who received the

3   responsive materials, that they can oversee the subsequent

4   certifications that are in the protective order, your Honor,

5   that require certifications that the discovery has been

6   destroyed.

7           In addition, your Honor, we have very good reason to

8   believe that some of the information from the responsive

9   materials in this district were shared with the government.  We

10  have text messages which we quoted in our letter, asking for

11  destruction -- that would be ECF 157, your Honor, on the second

12  page -- text messages from Mr. Shulman to a third party where

13  he threatened that this information from the discovery would be

14  disclosed to the government unless Mr. Kolomoiskiy and

15  Mr. Bogolubov paid him money.  They never paid him the money,

16  and we believe that that information was shared with the

17  government.

18          He mentions Ms. Bruce in these text messages as being

19  involved with it.  And we believe that there should be

20  clarification, and if the information was shared with the

21  government, contrary to the protective order, which only

22  allowed its use in the B.V.I., that there should be disclosure

23  of what was shared and when it was shared.

24          Our position is, once this is accomplished, your

25  Honor, we don't have any opposition to counsel being relieved

1  of their duties and new counsel coming in, but we believe that

2  because counsel has been involved in this, and they're the ones

3  with the personal knowledge, they should complete this process.

4           THE COURT:  Okay.  Let me hear from -- I don't know

5  whether it's Ms. Bruce or Mr. Rella who is going to respond on

6  behalf of Hornbeam.

7           MR. RELLA:  Yes, your Honor.  It's Michael Rella, and

8  I appreciate the opportunity to respond to Mr. Marks.

9           From the getgo, none of the reasons I just heard from

10 Mr. Marks warrant keeping us in the case when you have new

11 counsel, who has already appeared and can deal with all those

12 issues.  And, frankly, I think the appearance of new counsel

13 has actually mooted a bunch of the issues that Mr. Marks raised

14 in his motion papers.

15          So, if your Honor looks at the papers, he has very

16 three very specific reasons we should not be able to withdraw.

17          One is, Hornbeam as a corporation cannot proceed

18 pro se.  That is now mooted because new counsel has already

19 appeared and will be in the case going forward.

20          Number two is that we made no showing of the reasons

21 for our withdrawal.  Having now proceeded, your Honor, and

22 pursuant to our order we did file a declaration under oath

23 under seal in accordance with your Honor's rules, specifically

24 outlining all of the details and the reasons and the bases for

25 a withdrawal, which satisfy our obligations.

1          Which brings us to number three, which is, quite

2    frankly, complete speculation on Mr. Marks' part.  Just so the

3    record is clear here, since we got in the firm and we got hold

4    of the documents, we have not shared them with anyone.  I want

5    that to be clear for the record.  And because we have not

6    shared them with anyone outside of our firm, of course, we

7    didn't file any certifications.  So, there's no reason to keep

8    us in the case so that we can file certifications for something

9    that we didn't do.  It, frankly, doesn't make any sense.

10         What we propose is, we withdraw from the case, the

11   institutional knowledge and the documents that we have we would

12   pass off to new counsel, who has already appeared, and new

13   counsel can deal with the documents and any issues going

14   forward.  But none of the issues raised by Mr. Marks have

15   anything to do with keeping us in the case.

16         So, we're just not sure of the basis for the argument

17   here and the strenuous opposition to us exiting the case when

18   new counsel has appeared, the same new counsel, by the way, who

19   has appeared in other related actions in Florida.  I understand

20   that Mr. Marks opposed those actions to withdraw as well, and

21   the motion to withdraw were granted over his objection.  So,

22   new counsel has appeared there handling those matters, same new

23   counsel has appeared here, has the institutional knowledge and

24   will handle this matter going forward just as they're handling

25   the Florida matter.  So, there's no reason to keep us in the

1    case.

2            THE COURT:  Let me ask some follow-up questions.

3            Mr. Rella, I know you mentioned that the materials had

4    not been shared with anyone else since you've come onboard.

5    Now, what are the certifications that have been filed in the

6    Florida case?  Were there materials disclosed and

7    certifications filed in connection with the Florida action?

8            MR. RELLA:  Well, I'll tell you one thing and then

9    I'll turn it over to Carol to address that.  So, we're dealing

10   with a different set of documents.  One document is protected

11   by the second amended protective order here.  Since we got in

12   the case, we haven't done anything with those documents.  Then

13   there are other documents in the Florida action that are

14   protected by a separate protective order there.

15           But, Carol, you can address the question as to the

16   certifications that were filed there.

17           MS. BRUCE:  Yes.  Hello, your Honor.  I was looking

18   forward to appearing before you in the court in New York, but I

19   am happy to turn the reins over to new counsel.

20           I just want to say to you that there were

21   certifications filed in Florida.  We did file the

22   certification.  They were somewhat redundant of what was filed,

23   what I understand was filed by previous counsel in New York

24   with the Court, but it was only -- and usually I would not have

25   to be exposing this to the other side but the other side knows,

1   from our dealings in Florida, that the principal new

2   certification was for Tanya Berring, the agent, representative,

3   of Mr. Shulman and Hornbeam.

4            THE COURT:  Okay.  Let me just check.  You mentioned

5   that there were materials filed.  Are you saying that there

6   were certifications that were filed here in the Southern

7   District of New York by prior counsel?

8            MS. BRUCE:  It was my understanding that there were

9   certifications prepared, and I assume they were submitted to

10  the Court.  I have not looked -- I have not sought to look at

11  the court record, but from what we have seen, Holland & Knight,

12  who was first counsel in the case, did obtain certifications,

13  signed certifications -- to the protective, the original

14  protective order, from the client as well as -- from

15  Mr. Shulman and from Mr. Barry and a few others.  And I am

16  aware of that but I have not seen the Court's records.  I just

17  know that they were produced.

18           THE COURT:  Okay.

19           There are certain sealed documents that are part of

20  the docket here; however, I don't recall -- I'm not saying this

21  didn't happen -- I don't recall those certifications.  But,

22  again, I'm not saying that they weren't filed, but I would have

23  expected that I would have been notified.

24           MS. BRUCE:  Right.

25           THE COURT:  Right now -- I just did a quick search --

1    there certainly are sealed documents, and I did a quick search

2    of "certification," and the first thing that pops up isn't

3    until much, much later in the docket.  I guess what I would say

4    is the following:  I have reviewed -- I'm sorry, did someone --

5              MR. MARKS:  Your Honor -- this is Mr. Marks -- I'd

6    like to add on that.

7              First of all, your Honor, no such certifications were

8    filed in the Southern District of New York.  The process there

9    is, something is filed under seal, that there's a docket entry

10   that's made on ECF so that everybody knows that something is

11   filed under seal, even if it's done ex parte.  That did not

12   happen, has not happened.  That's one point.

13             Number two, it appears that Ms. Bruce has knowledge of

14   the file.  She's worked on this case.  It appears that she's

15   aware of certifications that were prepared but were never

16   filed; I think she said four, which is news to us.  This is

17   part of the reason why we think that counsel should stay in the

18   case until this process is completed, because she's the one who

19   has the factual knowledge of this, the new counsel doesn't.

20             Number three, there is no exception in the protective

21   order for counsel to file certifications.  The only exception

22   was the one that was agreed between Mr. Power and myself way

23   back in 2015, when the order was entered, that didn't apply to

24   the firms that are of record.  If your Honor looks at the

25   protective order, you'll see that nothing excludes counsel in

1    this case from doing that.  That would be particularly

2    important in this case, when counsel is withdrawing.  And it

3    would seem to me, as I requested, that whoever received access

4    to the discovery at Ms. Bruce's firm should, number one, have

5    to file a certification that they received it, and then would

6    have to do -- then there's a second certification that your

7    Honor orders it to be destroyed, that they have to file that

8    certification as well.

9         Just one final comment, your Honor, which is a little

10   troubling to me, when Mr. Rella spoke, he said that no

11   documents have been shared outside the firm.  Well, the

12   protective order is not limited to documents.  No information

13   from the responsive materials should have been shared -- used

14   outside of the B.V.I. litigation.  And in the text message that

15   was sent by Mr. Shulman's agent to Mr. Kolomoisky, which

16   appears on document 157, page 2, it says -- and we redacted the

17   name of the person -- "should think about how they will explain

18   to the FBI the fact that in 2010 to 2011 more than" dollar sign

19   redacted "was taken from his Swiss account and transferred

20   to" -- we redacted the name of the casino -- "as Carol," which

21   means Carol Bruce, "says, this is one of the most typical money

22   laundering schemes."

23        The only way, your Honor, that I can understand how

24   they would have knowledge that money was paid to casinos at

25   that time period was from the discovery that was produced in

1    this case.  So, it's concerning.

2              MS. BRUCE:  Your Honor, I object.  Mr. Marks is

3    behaving as he ordinarily does in cases that I have been

4    involved in him, where he's talking over the Court and other

5    counsel.  And the Court was asking a specific question with

6    respect to the documents, and we answered it, and I hope we

7    answered it to the Court's satisfaction, but I don't think it's

8    appropriate for Mr. Marks to go back into his issue about

9    extortion and other things that are totally baseless and

10   offensive, his accusations.

11             But I'm happy to answer any questions with respect to

12   the certifications.  I believe, if I'm not incorrect, that

13   Mr. Marks was wrong, that provision 6(d) specifically

14   provides -- I'm sorry, 6(d), as in dog -- provides, counsel of

15   record in this proceeding may not -- signed certification.

16             So, the agreement that he spoke of with respect to

17   Holland & Knight's personal agreement that he had -- Holland &

18   Knight has carried over into an actual provision of the

19   protective order and that is that.

20             So, as counsel, we had no understanding that we had to

21   provide any certification with respect to how we would honor

22   the protective order.  The Court and counsel of record --

23   adhere to the provisions of the protective order.

24             We have said that we never gave the documents or the

25   information to anyone outside of our firm.  I'm making that

representation to the Court.  And it applied specifically to

the New York case.  If you look at docket entry 2, it lists all

the different banks that were subpoenaed in this case, so it's

no secret as to what documents were sought and obtained in this

case, but we did not provide anyone with the information.

MR. RELLA:  One last point.  This is Michael Rella.  I

think this goes right to the heart of your question as to what

Mr. Marks was arguing.  We didn't file any certifications

because we didn't share the document.  To the extent that there

are certifications from prior counsel, those are part of any

file that we have that's going to be turned over to new

counsel, just like any document that we got through the

discovery process will be turned over to new counsel.

So, to keep us in the case, as Mr. Marks says, so we

can file certifications that we didn't prepare because we

didn't share anything, makes no sense when there's new counsel

that's in the case for that reason, to deal with the discovery

issues, certifications, all other issues going forward, is in

the case now.  So, again, I don't believe that's a reason to

keep us in the case at this point.

THE COURT:  Okay.

Let me just say, because I have gone back in, and my

law clerk has gone back, and there does appear -- again, I

haven't been able to tick and tie it out to entries on the

docket, but that there are -- one, two, three, four -- five

1    certifications that I believe were filed by Holland & Knight.

2              MS. BRUCE:  Correct.

3              THE COURT:  So, I don't know whether that dovetails at

4    all with the -- let me just take a quick look.

5              MS. BRUCE:  While you're looking, your Honor -- the

6    Court has -- and if Mr. Marks wants to gain access to them,

7    there is a procedure on the protective order where he needs to

8    petition the Court, probably over new counsel's objection, to

9    have access to identify the people that Holland & Knight were

10   working with at the time.

11             THE COURT:  Okay.  But let me ask this:  What I think

12   makes sense of a way to proceed is the following.  Obviously,

13   Mr. Marks, if you want to make an application to ferret out who

14   the people were who filed certifications, obviously that is up

15   to you, but I do think that it would be appropriate for counsel

16   who has filed the notice to be relieved, to file a declaration

17   indicating exactly what's been said in the documents that have

18   been filed, that since taking -- again, since beginning working

19   on the case, that Murphy & McGonigle has not -- well, has

20   abided by protective order in the following ways:  Number one,

21   that with regard to any documents, is that it has not shared

22   the documents with any other folks other than people who may

23   have already signed certifications when prior counsel was on

24   the case.

25             And I just want to ask Ms. Bruce:  We have five.  Is

1    that consistent with what your file shows as to the number of

2    certifications that --

3            MS. BRUCE:  I think it is, your Honor, but I need to

4    quickly scroll through my email.

5            THE COURT:  No, no.  I think what makes sense is, as

6    part of the declaration, you can indicate the number of

7    certifications that are part of the file that you received from

8    Holland & Knight, and then --

9            MS. BRUCE:  Okay.

10           THE COURT:  -- you can also include, in redaction --

11   and I am giving you permission to redact the names of the

12   individuals for whom certifications you have a record for in

13   your file --

14           MS. BRUCE:  Okay.

15           THE COURT:  -- just so that I can tick and tie that

16   out and so that incoming counsel will have an understanding

17   that either it matches up or it doesn't match up for some

18   reason.

19           MS. BRUCE:  Very good.

20           THE COURT:  And, in addition -- again, I don't have a

21   copy of the protective order in front of me, but a similar sort

22   of provision with regard to any prohibition with regard to the

23   sharing of information without signing a certification.  So, it

24   would be documents and sharing of information to individuals

25   other than the folks -- and I'm not saying that you have been

1    in communication with the people who had previously signed

2    certifications, but that there aren't any additional folks with

3    whom information has been shared for whom certifications had

4    not been previously obtained.

5              MS. BRUCE:  Very well, your Honor.

6              THE COURT:  I guess what I'm saying is, I still think

7    there's some work to do.  I do think, if I hadn't mentioned it,

8    I reviewed the submission that you made under seal, and I grant

9    permission for you to file it under seal and to make

10   appropriate redactions as you see fit -- I don't have it up in

11   front of me -- concerning the bases for the withdrawal, and I

12   make a finding that they are sufficient bases to withdraw.

13   However, I'm not granting the motion at this stage because I

14   want to get the declaration that I mentioned on file.

15   Obviously, in the meantime, to the extent, Ms. Bruce,

16   Mr. Rella, to the extent you have not already passed the

17   documents over, obviously, I'd like that transition to happen

18   over the next however long, week or two, whatever, to make sure

19   there's a smooth transition.

20             The third thing, Ms. Bruce, and, again, just in light

21   of -- let me ask, Mr. Marks, did you share the Russian version

22   of the -- and I apologize if I should know this but of the

23   emails with Mr. Rella and Ms. Bruce?

24             MR. MARKS:  No.  Their client, Mr. Shulman, has it.

25             THE COURT:  No, no.  I mean, as I understand it, what

1    you provided to us, you received it from somewhere.  In other

2    words, that there was an email that came in that you were just

3    reading from, you were reading a translation from.

4          So, my question is:  Whatever that email is, had that

5    been provided to your adversary, even in redacted form?

6          MR. MARKS:  No, your Honor.  It's a text message,

7    number one, and number two, they have it because it was sent by

8    Mr. Shulman.

9          THE COURT:  Well, you're making several assumptions

10   that I'm not prepared to make at this time, that, number one,

11   that there's a hundred percent transparency between a client

12   and an attorney concerning communications that the client may

13   have, and, second, that even if there is a certain amount of

14   transparency, that there was a sharing of that email, which

15   leads me to the third part of -- I'm not sure if it's three, it

16   may be more than three, but the declaration.  Ms. Bruce, it's

17   the reason why I asked whether the Russian version has been

18   shared.

19         What I would ask, Mr. Marks, is, with the same

20   redactions that you did with regard to English version that

21   you've provided, that you provide the text, the Russian text,

22   whether it's a screenshot or however you choose to do it, to

23   Ms. Bruce and Mr. Rella, so that they can review it, have it

24   translated themselves, because I would like, Ms. Bruce, for you

25   to -- and you don't need to now -- to respond to that

1   particular issue related to the claim that information was

2   going to be shared with the government.  And I'd like that to

3   be part of the declaration also.

4           And I'm not in any way, by making the request,

5   suggesting that what I read in the translation of that text,

6   that could be read to implicate that somehow you knew of or

7   were involved in the idea that materials would be turned over

8   to the government, but I just want to clear that up before

9   ultimately deciding the issue with regard to withdrawal.

10          MS. BRUCE:  Very well, your Honor.

11          MR. MARKS:  Your Honor, this is Mr. Marks.  We're

12  happy to provide the copy of the text in the original Russian.

13  We're also happy to provide it unredacted because the reason we

14  redacted it here was just we didn't want the amounts and the

15  names to be on the public record, but obviously they are known

16  to Mr. Shulman.

17          And, your Honor, just one thing we would ask is that

18  in the response, that the -- if they acknowledge that they're

19  genuine or if they take a different position, fine, but I think

20  that that issue should be resolved for the Court, whether these

21  were text messages that were sent by Mr. Shulman.  I don't want

22  there to be any issue that I made them up.

23          THE COURT:  Well, no, no.  What I would say is the

24  following:  Obviously, if counsel, either Ms. Bruce or

25  Mr. Rella, is aware, has current knowledge of the text, that I

1    would allow that to be included in the declaration, but if they

2    see fit, because they believe it's attorney-client privilege or

3    something like that, they can submit it in redacted form.

4         Having said that, I'm not requiring them to go and

5    confirm, one way or the other, with their client what this text

6    is or is not.  Number one, I think, to the extent there's going

7    to be any follow-up on that, I think incoming counsel can

8    handle that.  Again, this is under the understanding that

9    Ms. Bruce and Ms. Rella have no knowledge of the text.  I

10   guess, Mr. Rella, now that I'm thinking about it, I'll probably

11   need to get a declaration from you also.

12        The issue, I think, is the following:  I don't know

13   who knew or who didn't know, but, obviously, clients -- I don't

14   know what happened here, but I just want to clear things up so

15   that (a) we have a clean transition, between counsel, and (b)

16   so that everybody has an understanding of what has transpired

17   so that new counsel, quite frankly, also has an understanding

18   in coming in.

19        So, Mr. Marks, I understand what you're saying, but

20   I'm not going to require counsel to go back and -- if they're

21   unaware of the text message, either literally the text message

22   or that the substance, in other words, that they were informed

23   that, hey, you know, I sent this or I'm going to send this, or

24   what have you -- and, again, to the extent it's privileged,

25   they should feel free to submit it in redacted form, and

1  obviously they can share it with incoming counsel in an

2  unredacted form since he should be in the loop on that.

3       Let me ask, Mr. Rella/Ms. Bruce, how much time would

4  you need to take care of that?

5       Actually, before we get to that, on the other issue, I

6  would like to know also what the current status of the Florida

7  litigation is and, in particular, whether there is still

8  pending anything to extend or not extend the protective order

9  down there with regard to documents.

10      MR. RELLA:  Your Honor, it's Mike Rella.  My

11  understanding is there are several pending motions and appeals

12  in Florida right now, which concern, among other things, the

13  extension of time to use or destroy confidential material and

14  where those materials will ultimately be used.  Another

15  reference earlier, your Honor -- new counsel, who has now

16  appeared here, I believe has appeared there as well and will be

17  handling those going forward.

18      THE COURT:  Okay.  So, I would expect, again, new

19  counsel who's coming in to similarly handle the applications

20  that have now been made here, after we clear up and we get the

21  declarations from outgoing counsel, to handle the issue

22  relating to whether you believe that the protective order

23  should be extended for some reason or whether we can proceed

24  with the process outlined in the protective order for dealing

25  with the documents at the conclusion of the case, basically.

1         MS. BRUCE:  Can I just ask for one clarification with

2    respect to the declaration?

3         THE COURT:  Sure.  Is this Ms. Bruce?

4         MS. BRUCE:  Yes, sir.

5         THE COURT:  Okay.

6         MS. BRUCE:  You said in redacted form.  So, should I

7    then follow the procedures that I have in the Court's rules

8    with respect to in camera/under seal/redacted form declaration

9    as I did before with the motion to withdraw?

10        THE COURT:  Well, I think there may be some things, I

11   guess, that are clearly -- obviously, if there are things --

12   let me take a step back.

13        You can submit the declaration, and I think my rules

14   provide that you should highlight the portions that you

15   anticipate redacting so that I can make a ruling on that, and

16   then, once I do, assuming that I agree with the redactions, you

17   can file the redacted version on the docket and the unredacted

18   version can get filed under seal.

19        So, yes, I'm sorry, that was a long way of saying,

20   yes, you should follow my individual rules with regard to that.

21        MS. BRUCE:  Very well.  Thank you.

22        THE COURT:  So, build in a certain amount of time with

23   regard to that.

24        I'm sorry, now, Mr. Marks, were you going to say

25   something before -- I thought I --

1          MR. MARKS:  Yes, your Honor, I was.

2          The issue is this, your Honor:  The issue of our

3    letter motion to destroy the documents has been fully briefed.

4    When we filed our motion, they filed a response, we filed a

5    reply.  Your Honor ordered, years ago, that the only use for

6    these documents was for in the B.V.I.  Your Honor ultimately

7    extended that deadline.  That deadline expired about -- that

8    deadline was conditioned on a motion that was in front of your

9    Honor in 2017, which was decided, then it was conditioned on a

10   motion that was pending in Florida that was also decided.

11         The discovery has already been completed in Florida.

12   They got the documents in September of 2018.  The depositions,

13   your Honor, were concluded in December of 2018.  The responses

14   to our requests to destroy the documents do not even suggest

15   that Hornbeam is going to refile claims in the B.V.I. that they

16   have promised to do since December of 2014.

17         To the contrary, Mr. Shulman and Bronca filed the

18   third action outside the B.V.I.  The first one was in Ohio

19   state court in 2015, the second one was by Mr. Shulman in

20   London in 2017, and now they filed yet a third action, this

21   time in Delaware, in 2019.  It can't be -- they don't even

22   suggest that Hornbeam is going to file in the B.V.I.

23         So, it seems to me, your Honor, that the decision for

24   your Honor to enforce the protective order and to order that

25   the responsive materials destroyed has come.  If they decide

they want to pursue discovery in Delaware -- let's not forget

they filed that case without this discovery -- then they can

pursue the discovery in Delaware.  But it's been almost five

years, Judge, and they didn't do what they told your Honor that

they were going to do.  They don't tell your Honor today that

they're going to file in the B.V.I.  And if their choice is to

file in the United States, they shouldn't be permitted to use

discovery for which the sole -- the requisite condition was for

use outside the United States and they've never fulfilled that

condition.

So, we would ask your Honor to decide that now.

There's just no justification to have to wait for another court

to rule.

THE COURT:  Okay.  Well, let me ask you this,

Ms. Bruce/Mr. Rella:  Is that matter, from your perspective,

fully briefed before me?  In which case, I will take a look at

those briefs.  I still want to hear about the Florida action,

but I will take the motion papers and make a decision about the

documents and whether they need to get destroyed, right now.

MR. RELLA:  Right, your Honor.  This is Mr. Rella.

So, these are the precise issues that have been fully briefed,

and not just in letters but fully briefed and are currently

before the district court judge in Florida, i.e., the use of

these materials, how long the protective order should be

extended to allow for the use of these materials, in which

1    jurisdiction.

2          These are issues already being litigated and being

3    teed up in Florida.  And, again, new counsel has interposed

4    those there.  I understand -- and I don't want to speak for new

5    counsel, but I do understand that new counsel will want to be

6    heard on ultimately what happens with those materials from the

7    New York action in terms of when they're destroyed and how they

8    can -- they just came in this case.  They don't have the

9    New York material yet.  Pursuant to your Honor's order today,

10   we will get those over to them promptly, certainly within a

11   week or two, as your Honor ordered.

12         So, it strikes me as premature now, in light of new

13   counsel just coming in, to order what your Honor previously

14   referred to as the extraordinary measure of destroying all this

15   information that took years for us to get.  There is absolutely

16   no harm or no prejudice to Mr. Marks in giving new counsel a

17   few weeks for new counsel to get up to speed here, or perhaps

18   slightly longer than that for the Florida judge to rule on

19   these precise issues which are already fully briefed and before

20   the Court there.

21         So, it's our position it's premature and

22   nonprejudicial to allow some more time here before ordering the

23   extraordinary measure of destroying all of these documents that

24   took us so long, and, frankly, so much money, to get.

25         THE COURT:  Well, I also think, at least at this

1   stage, I would like to see the declaration from yourself,

2   Mr. Rella, and from Ms. Bruce, so that I have a fuller picture

3   of what has transpired.  I'm not in any way saying, one way or

4   the other, what my view is on the, necessarily, authenticity,

5   but the claim that a litigant -- and, in particular, I guess an

6   attorney sort of may have been aware of sort of a threat of in

7   essence a threat of criminal prosecution in connection with a

8   civil matter would raise various issues.  I'm not saying that

9   happened here, but I'd like to get to the bottom of that, to

10  the extent possible, and also so that it -- well, I'd like to

11  get to the bottom of that also.

12       So, I think my question was:  How long will it take to

13  put together the declarations that I've requested?

14       MS. BRUCE:  I'll just add, I could see doing that

15  within the next week.

16       THE COURT:  Okay.

17       So, why not by the end of next week, so by the 20th,

18  of September, the transition of materials should occur over the

19  next two weeks to new counsel.  I'd like to get an update --

20  and I would like, actually, for it to be a joint submission, if

21  possible -- from counsel with regard to the status, specific

22  status, of the Florida action and your relative positions about

23  whether it doesn't matter, as I understand Mr. Marks saying it

24  shouldn't matter here, one way or the other.  And that can be

25  in a joint letter of no more than six pages, if that's

1    possible.  If you need more space, you just make an application

2    to get more space.  And I was going to ask for that three weeks

3    from today.

4             MR. MARKS:  What does your Honor want in the joint

5    letter?  This is Mr. Marks.

6             THE COURT:  Sure.  I'd like the parties' view on what

7    the status is of the Florida litigation, including what -- are

8    the pending motions, do you expect -- are those fully briefed

9    and expect to get a decision?  If they're fully briefed, you

10   can just let me know they're fully briefed and you're awaiting

11   a decision or not, and then your relative positions with regard

12   to -- as I understand, Mr. Marks, your position is that

13   whatever happens in Florida is Florida's business, and that I

14   have a separate obligation here, under the protective order, to

15   take steps that you would argue are necessary with regard to

16   this case; and, similarly, I hear from Hornbeam's incoming

17   counsel concerning the position of Hornbeam concerning how, if

18   at all, the Florida action impacts what I do up here.

19            MS. BRUCE:  I think maybe it would be helpful if I

20   gave one of the responses to this, and, that is that I do not

21   believe that the Florida motions have all been fully briefed

22   yet.  The ones that have been briefed have been briefed, but

23   the issue that the Court is concerned with, and that Mr. Marks

24   has raised and is one of the ultimate issues in both cases, has

25   not been briefed yet.  We sought, and incoming counsel sought,

1    an extension of time within which they could file the final

2    brief, and so that extension of time has been granted twice,

3    and it's just really a short period of time.  We've only been

4    asking for short periods of time, and now that motion is fully

5    briefed, asking for the extension of time for, I think it was

6    60 days, Mr. Byrd --

7              MR. BYRD:  That's correct.

8              MS. BRUCE:  That's right.

9              So, within that period of 60 days, we understand that

10   new counsel, Mr. Byrd and others, will be preparing a very

11   substantive brief as to the fact that the world has changed

12   since 2014, when the cases were filed in New York and in

13   Florida, and that Mr. Shulman is reasonably in line --

14   reconsidering where -- how he should use the documents in light

15   of the new information he has from documents as well as all the

16   global events that have happened with respect to his main

17   antagonist, which is Klomoisky and Mr. Ford.  And because of

18   that, he is considering it, and he wants to have that

19   opportunity to file a substantive motion with this Court as

20   well as the Florida, where the action should lie, and how the

21   documents should be used.

22             THE COURT:  Okay.  I still want to get the joint

23   letter in three weeks, which is October 3rd, but the other

24   thing I want to make you aware of is that -- again, it's

25   somewhat dependent on what happens in the declaration.  I don't

1   believe it would be a disclosure -- well, I'm going to decide,

2   once I receive the declaration, whether I am going to issue an

3   order that I get an affidavit from Mr. Shulman with regard to

4   the issue of the text message.  I haven't made a decision on

5   that yet, but I want the benefit of seeing the declarations

6   that are going to be submitted, and then I'm going to decide

7   whether to basically request -- well, issue an order directing

8   that an affidavit be filed.

9           Again, just so that it's clear, it would be in

10  connection with -- well, I'll just leave it at that.  But I

11  will adequately state, in any order that I issue, the basis

12  upon which, and the jurisdiction upon which, I believe I would

13  be entitled to direct that I get such an affidavit.  So, once I

14  get the declarations, a week from today, I'll take a look at

15  them and decide whether or not I need to issue that follow-up

16  order.

17          And then, once I get the October 3rd, the joint

18  submission, I may ask to reconvene with new counsel for

19  Hornbeam and Mr. Marks, and I apologize, I know -- I'll just

20  say with regard to Attorney Maria, I don't want to even attempt

21  to pronounce your last name because I won't do it justice, but

22  we'll reconvene to discuss basically the joint letter and what

23  the next steps were going to be in this case.  I'll set a date

24  for that once I get the letter from counsel on October 3rd.

25          Let me ask, are there parts or things -- just to

1    recap, right now, I have not relieved Murphy & McGonigle yet;

2    it's pending getting the declarations and what I see in there.

3           I expect to get the declarations a week from tomorrow,

4    joint letter in three weeks, on October 3rd.  After I get the

5    declaration, I'll decide whether to issue an order directing

6    that Mr. Shulman submit an affidavit related to the text

7    message and the issues surrounding it; and then, once I get the

8    joint letter, set a date for us to have another conference to

9    discuss the joint letter and my views concerning how to treat

10   this case and whether I think it's appropriate to either

11   continue on with the protective order or whether or not I think

12   it's time that the documents, that were obtained through the

13   1782 here, that they be destroyed.  There may be some impact --

14   well, I'll leave it at that.  But, again, I won't decide when

15   we're going to do that until I get the joint letter.

16          So, to the extent you feel, either side, that the

17   Florida action somehow is implicated, you should indicate that

18   you believe that my timing and making a decision here is

19   somehow impacted by the Florida action, you should make that

20   point in the joint letter.

21          Is there anything else that we need to deal with

22   today?  Let me first ask Ms. Bruce/Mr. Rella?

23          MR. RELLA:  I don't believe so, your Honor.  Thank

24   you.

25          THE COURT:  Mr. Marks?

1      MR. MARKS:  I think we've covered everything, your

2  Honor.  You've given us work to do.

3      And just one thing:  They never filed on record

4  whatever your Honor permitted to be redacted.  I'd ask that

5  that be done promptly, Judge.

6      THE COURT:  And I just gave permission, I think, to

7  file it under seal.

8      MR. MARKS:  The old one, the one that your Honor

9  already has, where I guess you approved something but --

10      THE COURT:  Oh, okay, all right.  I'm sorry, I

11  misunderstood.

12      So, Ms. Bruce/Mr. Rella, if you could take care of

13  getting that redacted one filed on the docket.

14      MS. BRUCE:  We will, your Honor.  I don't know what

15  happened there.  I thought it was taken care of.  I'll look

16  into it.

17      THE COURT:  All right.

18      MR. MARKS:  Your Honor, I just have one question.

19  When your Honor suggested there were five certifications filed,

20  are there docket numbers associated with those?

21      THE COURT:  I have to do some investigation.  We have

22  them.  I don't know how they were communicated to us, and

23  that's why I have to do some investigation.  I would have --

24  the answer is, Mr. Marks, I don't know.  I would have

25  ordinarily expected to see -- or at least the same number of

1   sealed entries on the docket.  There are only two or three

2   sealed, but we'll try and figure it out on our end because they

3   should be under seal somewhere.

4          MR. MARKS:  Your Honor, what I think happened -- it's

5   Mr. Marks again.  Sorry to interrupt.  But we filed certain

6   things under seal.  And I believe that those are reflected on

7   the docket, but I just ask your Honor:  We do need to have a

8   procedure so if either side files something under seal, while

9   the opposite side doesn't know what's in it, they're at least

10  notified that there's something that has been filed that's

11  under seal.

12         THE COURT:  No, I'm not disagreeing with that.  I'm

13  saying that it's possible that, for whatever reason, they were

14  sent somehow to our chambers' in-box, we then have kept a

15  record of them, but, for whatever reason, counsel had not then

16  also filed it under seal.  I don't know if that's the case,

17  Mr. Marks.  I'm just positing that as a possibility because we

18  certainly have them, because I was looking at them a moment

19  ago, but I don't actually see the same number of sealed filings

20  on the docket.  So, I'm not sure exactly what happened, but

21  I'll try and piece that together in the coming weeks so that I

22  can make sure that when a certification is sent to me, that

23  it's also filed on the Court's document.

24         MR. MARKS:  That would be very helpful.

25         THE COURT:  And once I -- I hope that I can confirm

1    that the files that Murphy & McGonigle have are consistent with

2    the certifications I have, I will either direct counsel to file

3    those -- well, I think that's what I would do, that I would

4    direct that they get filed under seal, because it doesn't

5    appear -- again, once I figure out if they have not been filed,

6    I'll direct that they get filed under seal.  All right?

7              MR. MARKS:  Thank you, Judge.  Appreciate that very

8    much.  Mr. Marks again.

9              THE COURT:  All right.

10             Anything from incoming counsel?  I apologize, I

11   don't --

12             MR. SAURBORN:  The only thing, Judge --

13             THE COURT:  I'm sorry, we can't hear you, actually.

14             MR. SAURBORN:  I'm sorry.  It's Henry Saurborn,

15   incoming counsel.  We had filed, I think it was late yesterday,

16   a pro hac motion for my co-counsel, Tucker Byrd, so I'm not

17   sure of the timing that the Court can act on them, but it would

18   help to have Mr. Byrd -- he has the local knowledge that I

19   don't have, and it would be helpful for him to be in the case

20   as soon as possible.

21             THE COURT:  Yes, I see that on the docket now.  And

22   we'll take care of getting that making sure that gets through

23   the process.

24             I'm sorry, that was Mister?

25             MR. SAURBORN:  Saurborn.

1          THE COURT:  Can I trouble you, for the court reporter,

2    to get the spelling?  Oh, it's S-a-u-r-b-o-r-n?

3          MR. SAURBORN:  Correct, Judge.

4          THE COURT:  All right.  First name, Henry.  Thank you

5    very much.

6          If there's nothing else, we'll stand adjourned.

7          COUNSEL:  Thank you, your Honor.

8                              *  *  *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25