UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>APPLICATION OF HORNBEAM CORP. | 14 Misc. 424 (VSB) |

**INTERVENOR PANIKOS SYMEOU'S MOTION TO COMPEL PRODUCUTION AND UNSEAL THE SEPTEMBER 23, 2019 CAROL BRUCE AND MICHAEL RELLA *EX PARTE* DECLARATIONS AND CERTIFICATIONS FILED IN THIS CASE**

**Reed Smith LLP**
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

and

**Marks & Sokolov, LLC**
1835 Market Street, Suite 1717
Philadelphia, PA 19103
(215) 569-8901

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

The Protective Orders ............................................................................................................ 2

Hornbeam, Shulman, and Bracha File New Proceedings Everywhere But the BVI ............. 3

Hornbeam's Counsel Moved To Withdraw ........................................................................... 4

Symeou's Motion For Disclosure and Destruction Of The Responsive Materials ................ 4

The Court Ordered Declarations Regarding The Responsive Materials ............................... 5

Hornbeam's Counsel's *Ex Parte* Declarations ..................................................................... 6

Hornbeam's Counsel Redacted Critical Information Regarding The Responsive Materials ......... 6

ARGUMENT ......................................................................................................................... 7

   I.   THE COURT SHOULD ORDER PRODUCTION OF THE *EX PARTE* DECLARATIONS ................................................................................................ 7

   II.   THE COURT SHOULD ORDER THE *EX PARTE* DECLARATIONS BE UNSEALED AND FILED ON THE DOCKET ................................................... 10

   III.   GOOD CAUSE EXISTS TO GRANT SYMEOU'S MOTION TO PRODUCE THE CERTIFICATIONS ................................................................................... 12

CONCLUSION .................................................................................................................... 13

## **TABLE OF AUTHORITIES**

### **Cases:**

*Abourezk v. Reagan*, 785 F.2d 1043, 1060-61 (D.C. Cir. 1986) .............................................. 7, 8, 9

*Bracha Found. v. Warren Steel Holdings, LLC*,
    2017-Ohio-7557 (Ct. App. 2017) ...................................................................................... 3,4

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
    814 F.3d 132, 142 (2d Cir. 2016) ........................................................................................ 11

*Brown & Williamson Tobacco Corp. v. F.T.C.*,
    710 F.2d 1165 (6th Cir. 1983) ............................................................................................ 10

*Dedjoe v. Esper*,
    2019 U.S. Dist. LEXIS 26341 (N.D.N.Y. Feb. 19, 2019) ................................................... 10

*El Omari v. Ras Al Khaimah Free Trade Zone Auth.*,
    2017 U.S. Dist. LEXIS 68371 (S.D.N.Y. May 1, 2017) ....................................................... 7

*Hemingway v. Russo, Case No. 2:16-cv-00313-JNP-PMW*,
    2017 WL 4857551 (D. Utah Oct. 25, 2017) .................................................................... 9, 11

*In re Grand Jury Subpoenas*,
    906 F.2d 1485, 1488 (10th Cir. 1990)…………………………………………………..…9

*In re New York Times*,
    828 F.2d 110, 116 (2d Cir.1987) ..................................................................................... 11, 12

*Kinoy v. Mitchell*,
    67 F.R.D. 1 (S.D.N.Y. 1975) ................................................................................................. 7

*Lugosch v. Pyramid Co.*,
    435 F.3d 110 (2d Cir. 2006) ..................................................................................... 10, 11, 12

*Newsday LLC v. Cty. of Nassau*,
    730 F.3d 156 (2d Cir. 2013) ................................................................................................ 11

*Nixon v. Warner Commc'ns., Inc.*,
    435 U.S. 589 (1978) ............................................................................................................ 10

*Press-Enter. Co. v. Superior Court of Cal., Riverside Cty.*,
    464 U.S. 501 (1984) ............................................................................................................ 12

*Pressley v. City of New York, No. 11-CV-3234 PKC RER*,
    2013 WL 6028316 (E.D.N.Y. Nov. 13, 2013) ................................................................. 9, 11

*Richmond News Papers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ............................................................................................................ 10

*Schiller v. City of New York*,
 2008 U.S. Dist. LEXIS 31913 (S.D.N.Y. April 14, 2008) ............................................... 7, 8, 9

*Std. Inv. Chtd. v. NASD*,
 2008 U.S. Dist. LEXIS 4617 (S.D.N.Y. Jan. 22, 2008) ......................................................... 11

*United States v. Amodeo*,
 71 F.3d 1044 (2d Cir. 1995) ................................................................................................. 10

*United States v. Antar*,
 38 F.3d 1348 (3d Cir. 1994) ................................................................................................. 12

*United States v. Quest Diagnostics, Inc.*,
 734 F.3d 154 (2d Cir. 2012) ................................................................................................... 8

*Video Software Dealers Ass'n v. Orion Pictures*,
 21 F.3d 24 (2d Cir. 1994) ..................................................................................................... 10

## **Statutes:**

28 U.S.C. §1782 ................................................................................................................ 1, 2, 3, 4

## **Other Authorities:**

Judicial Code of Conduct Canon 3 §A(4)……………………………………………...…..7

## INTRODUCTION

In December 2014, Hornbeam Corp.'s 28 U.S.C. §1782 *ex parte* application was granted, authorizing discovery for the sole purpose of initiating proceedings in the BVI. Instead, Hornbeam took secret discovery and then used "Responsive Materials" for other purposes, including filing Ohio state court proceedings in 2015 and possibly extortion in 2018. Intervenor Panikos Symeou's August 9, 2019 Letter Motion requested disclosure of the individuals who received Responsive Materials and also sought their destruction, as required by the Second Amended Protective Order ("SAPO"). In response to the Order dated September 13, 2019 and the August 9 Letter Motion, Hornbeam's counsel, Carol Bruce ("Bruce") and Michael Rella ("Rella"), submitted *ex parte* declarations under seal in opposition (the "*Ex Parte* Declarations), ECF 173, 179 serving only redacted versions on Symeou, ECF 175, 176. The Court endorsed their letter without ruling on its merits.

*First*, the *Ex Parte* Declarations should be produced in unredacted form because Hornbeam has not met its extraordinary burden to permit ex *parte* communications on the merits issues of whether the Responsive Materials should be destroyed, as required by the SAPO, or whether they were improperly disseminated.

*Second*, the *Ex Parte* Declarations should be unsealed. Hornbeam has not met its heavy burden for sealing. They may only be sealed if the Court has made required specific, on-the-record findings, demonstrating that sealing was justified, which has not occurred and cannot be made based on the facts.

*Finally,* Symeou has established good cause to obtain the unsealed Certifications filed with the Court under the SAPO. The identity of the persons receiving Responsive Materials is directly relevant to whether they should be destroyed, because this may reveal that the

1

confidential records were not used to prepare new BVI proceedings. In addition, the identity of the persons may reveal that Responsive Materials were used for improper purposes.

## BACKGROUND

In 2014, Hornbeam brought BVI proceedings against Halliwel Assets, Inc., the sole member of Warren Steel Holdings, LLC. Halliwel is one-third beneficially owned by Hornbeam on behalf of Bracha Foundation whose beneficiary is Vadim Shulman; **Symeou, who holds on behalf of Igor Kolomoisky, and Marigold Asset Trust Management, whose beneficiary is Gennady Bogolyubov.** The proceedings failed and Hornbeam was ordered to pay $846,526 in legal fees.

On December 19, 2014, Hornbeam filed an *ex parte* Application for 28 U.S.C. §1782 discovery for use in purportedly contemplated proceedings in the BVI, ECF 1, which was granted on December 24, 2014. ECF 5. Hornbeam then served 12 subpoenas on banks without notifying the identified defendants of the contemplated BVI proceeding. The banks produced records consisting of approximately 11,367 bank wire transactions containing highly confidential personal and business financial information ("Responsive Materials"). Once this was learned by happenstance, Symeou intervened.

## The Protective Orders

On February 1, 2016, the Court entered the Amended Protective Order, ("APO"), ECF 71, whose terms were then included in the Second Amended Protective Order ("SAPO"), ECF 106, which provides for Responsive Materials to be designated as "Confidential" or "Attorneys' Eyes Only" and limits their use to the "Permitted Litigation(s)" which are this proceeding and contemplated actions in the British Virgin Islands ("BVI"). ECF 106 at ¶1(e). Counsel of record of any party receiving the confidential information must "cause that person to complete and sign

the Certification, attached as Exhibit A" to the SAPO, and "[e]ach Certification shall be retained by counsel to the Parties until after Permitted Litigations are completed."  ECF 106 at ¶6(c). "Certifications will be produced to and kept on file by the Court, and the non-disclosing Party may make an application to have the Certifications produced for good cause." ECF 106 at ¶6(f); *See also id.* ¶6(a), (c) and (e) (The "non-disclosing Party may make an application to have the Certifications produced for good cause.").  The Responsive Materials were then designated as "Confidential" with numerous portions designated as "Attorneys' Eyes Only."

The SAPO further provides that "Responsive Materials must be destroyed if Hornbeam does not initiate the BVI Litigation within one year of the date of the issuance of this Amended Protective Order." APO, ECF 71 at ¶15(c) (emphasis added.)  The destruction deadline was extended to August 1, 2017 and then until resolution of motions pending here and in the related Florida §1782 action. Orders, ECF 79, 139.  The motion pending here was decided in the August 2017 Order, ECF 140.  The Florida motions were resolved by September 2018, with document production and four days of depositions completed by December 2018.  In Florida, the deadline to use or destroy the discovery was August 12, 2019.

**Hornbeam, Shulman, and Bracha File New Proceedings Everywhere But the BVI**

On June 15, 2015, Bracha and Shulman filed an action in Ohio state court asserting claims against Symeou, Halliwel, Bogolyubov, Kolomoisky, and others, arising from the ***same*** facts and seeking the ***same*** damages as the claims that Hornbeam represented here and in other §1782 proceedings, would be filed in the BVI, using information about Regions Bank (where Warren Steel maintained its account) learned from the Responsive Materials.  Hornbeam was later added as a plaintiff.  In October 2015, the Ohio Court dismissed the complaint on many grounds, including based the internal affairs doctrine, which was affirmed. *See Bracha Found. v.*

3

*Warren Steel Holdings, LLC*, 2017-Ohio-7557 (Ct. App. 2017).

On May 12, 2017, Shulman initiated an action against Kolomoisky and Bogolyubov in England, based on the *same* allegations of self-dealing and for the *same* damages as the claim which Hornbeam repeatedly represented that it would – but never did – file in the BVI. Shulman's English Action was dismissed and application for leave to appeal was denied by the trial and appeals court.

On August 13, 2019, Bracha and Shulman filed an action in Delaware state court asserting claims against Symeou, Halliwel, Bogolyubov, Kolomoisky, and others arising from the *same* facts and seeking the *same* damages as the claims that Hornbeam represented here and in other §1782 proceedings, would be filed in the BVI.

### Hornbeam's Counsel Moved To Withdraw

On July 26, 2019, Hornbeam's counsel, Murphy and McGonigle, P.C. and its attorneys, including Ms. Bruce and Mr. Rella, moved to withdraw based upon "professional considerations." Withdrawal Motion, ECF 155. On September 13, 2019, Ms. Bruce provided the Court with an *ex parte* declaration in support of the motion to withdraw, with Symeou only receiving a redacted version. Bruce Dec., ECF 169. On September 13, 2019, substitute counsel for Hornbeam, Tucker H. Byrd, was permitted to appear *pro hac vice*. Order, ECF 168.

### Symeou's Motion For Disclosure and Destruction Of The Responsive Materials

The SAPO requires destruction of the Responsive Materials and certification thereof now that the deadline for filing the long promised BVI proceeding has passed. ECF 106 at ¶15(d). Accordingly, on August 9, 2019, Symeou moved that Hornbeam and Shulman, via counsel, be ordered to (1) disclose the identity of each person who received Responsive Materials, (2) destroy all Responsive Materials, and (3) certify that all Responsive Materials have been

destroyed.  August 9, 2019 Letter Motion, ECF 157.

Symeou set forth a "good cause" basis for disclosure and destruction based upon the apparent violation of the SAPO, as evidenced by Mr. Shulman's attempt to blackmail the other beneficial owners of Halliwel in late 2018, using the Responsive Materials.  Specifically, Mr. Shulman threatened, through a middleman, that, he would provide Responsive Materials to the FBI and DOJ, which purportedly would result in prosecutions for money laundering and other crimes, unless Mr. Shulman received money. These threats may constitute criminal conduct.  Mr. Shulman sent messages (in Russian and translated for the Court) indicating that his attorneys were involved in this process, including apparently Carol Bruce. *Id.*, p. 2.  When Ms. Bruce was asked whether Responsive Materials from the Florida proceedings were provided to the DOJ, she refused to answer, and stated: "***With respect to the DOJ, yes, I have refused to respond to each demand of yours that I reveal whether we have had contact with the DOJ about this case or whether we have given DOJ any of the discovery in this case.***" *Id.*, p. 3 (emphasis added). While she has now denied providing Responsive Materials from this District to the DOJ, she has not explained how Shulman learned about the casino related bank records, which were marked "attorneys-eyes-only."   *See id.*, p. 2.   Nor has she denied that Mr. Shulman or one of his assistants may have provided information from these records to the DOJ.

On August 16, 2019, Hornbeam opposed Symeou's motion, arguing there was no violation of the SAPO and requesting that the destruction deadline be extended 60 days.  August 16, 2019, Response, ECF 159.  *See also* Symeou's August 20, 2019 Letter Motion Reply, ECF 160.

## **The Court Ordered Declarations Regarding The Responsive Materials**

Following a telephone conference on September 12, 2019, regarding the Motion to

5

Withdraw and Symeou's August 9, 2019 Letter Motion, on September 13, 2019, the Court ordered that Hornbeam's counsel (Ms. Bruce and Mr. Rella):

> no later than September 20, 2019 … separately submit declarations: (1) stating whether, to their knowledge, any person from Murphy & McGonigle has shared any Responsive Materials with persons and/or entities external to Murphy & McGonigle; (2) describing all Certifications issued pursuant to the SAPO that are currently in Murphy & McGonigle's files, including the names of the individuals who executed the Certifications, the approximate date each Certification was executed, and the approximate date on which the Certifications were provided to the Court; and (3) describing their knowledge of the existence of the communications described in Symeou's recent filings, (*see, e.g.* Doc. 157), …, any role they played—or offered to play—in providing Responsive Materials to any United States law enforcement entity or other, non-authorized party, and any other information related to the communications.

ECF170 at pp.1-2.[1]

### Hornbeam's Counsel's *Ex Parte* Declarations

On September 20, 2019, Ms. Bruce and Mr. Rella submitted the *Ex Parte* Declarations in response to the September 13, 2019 Order, providing Symeou with redacted ones. Hornbeam's counsel stated the "redactions are necessary to protect confidential and sensitive information, including our firm's sensitive communications and the names of the individuals who received Responsive Materials and signed Certifications pursuant to the [SAPO]. (ECF 106)." September 20, 2019 Letter Motion, ECF 173. The Court endorsed this letter on September 22, 2019 without any rulings or findings.

### Hornbeam's Counsel Redacted Critical Information Regarding The Responsive Materials

On September 23, 2019, Hornbeam's counsel filed redacted Bruce and Rella

---

[1] As the Court may recall, the only justification in 2016 for not disclosing the certifications was because they may have implicated non-trial expert witnesses retained for new BVI proceedings. At the September 12, 2019 hearing, the Court stated the names of persons who executed the Certifications could be redacted, presumably because production of the Certifications is at issue. Sept. 12, 2019 Hearing Trans., pp. 17-18. At this point, Hornbeam has given up any pretense that anything was done to prepare new BVI proceedings, including engaging non-trial experts. There is no good reason to allow the Certifications to remain secret and many good reasons to require their production.

Declarations. Approximately 49 lines of text (two pages) were redacted from the Bruce Declaration. Bruce Dec., ECF 175. Approximately 7 lines of text were redacted from the Rella Declaration. Rella Dec. ECF 176. These redactions removed pertinent information required to be disclosed by the September 13 Order, including (1) with whom the Responsive Materials have been shared; (2) the date and identity of persons executing Certifications in accordance with the SAPO; and (3) information and knowledge related to the alleged extortion attempts of Mr. Shulman (as described in Symeou's August 9, 2019 Letter Motion) and disclosure of Responsive Materials to any United States law enforcement agency or other party. *Id.*

## ARGUMENT

### I. THE COURT SHOULD ORDER PRODUCTION OF THE *EX PARTE* DECLARATIONS

"It is a hallmark of our adversary system that we safeguard party access to the evidence tendered in support of a requested court judgment. The openness of judicial proceedings serves to preserve both the appearance and the reality of fairness in the adjudication of United States courts. ***It is therefore the firmly held main rule that a court may not dispose of the merits of a case on the basis of ex parte, in camera submissions.*** Exceptions to the main rule are both few and tightly contained." *Schiller v. City of New York*, 2008 U.S. Dist. LEXIS 31913, *15-16 (S.D.N.Y. April 14, 2008) *15-16 (*quoting Abourezk v. Reagan*, 785 F.2d 1043, 1060-61 (D.C. Cir. 1986). (emphasis added). *See Kinoy v. Mitchell*, 67 F.R.D. 1, 15 (S.D.N.Y. 1975) ("Our system of justice does not encompass *ex parte* determinations on the merits of cases in civil litigation.") This is a sweeping prohibition.[2]

---

[2] *See* Judicial Code of Conduct Canon 3 §A(4), *quoted in El Omari v. Ras Al Khaimah Free Trade Zone Auth.*, 2017 U.S. Dist. LEXIS 68371, *9 (S.D.N.Y. May 1, 2017) ("A judge should … not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. A judge may … when circumstances require it, permit ex parte communications

7

"Only in the most extraordinary circumstances does our precedent countenance court reliance upon *ex parte* evidence to decide the merits of a dispute." *United States v. Quest Diagnostics, Inc.*, 734 F.3d 154, 161 n.9 (2d Cir. 2012) (citations omitted). "Extraordinary circumstances" are narrowly construed as state-secrets privilege and acute national security concerns. *See Abourezk*, 785 F.2d at 1060-61 (requiring a "demonstration of compelling national security concerns"); *Schiller*, 2008 U.S. Dist. LEXIS 31913, at *18-19 (Courts rely on "*ex parte*, *in camera* review of affidavits in cases involving classified information or state secrets, or when such submissions are part of a statutory scheme such as FOIA.") (internal quotations and citations omitted).[3]

*First,* Hornbeam relies upon the *Ex Parte* Declarations in opposing Symeou's August 9, 2019 Letter Motion seeking disclosure of who has been given access to the Responsive Materials, and their destruction. Hornbeam claims that it is entitled to communicate *ex parte* "to protect confidential and sensitive information" regarding who received the Responsive Materials and who signed the Certifications pursuant to the SAPO. However, receipt and use of the Responsive Materials, compliance with the SAPO, and disclosure of the Certificates, are merits issue which cannot be decided upon secret evidence. As noted in *Abourezk*:

> ***inspection of materials by a judge isolated in chambers may occur when a party seeks to prevent use of the materials in the litigation.*** When one side, seeking to block consideration of relevant matter, asserts an evidentiary privilege, the court may inspect the evidence *in camera* and alone for the limited purpose of determining whether the asserted privilege is genuinely applicable. ... If the court finds that the claimed privilege does not apply, then

---

for scheduling, administrative, or emergency purposes … if and only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive or tactical advantage as a result of the ex parte communications.")

[3] Symeou is not seeking disclosure of Ms. Bruce's redacted declaration in support of the motion to withdraw, ECF 169, at this time. However, the Court should clarify that it will not consider it in regard to any other issue.

8

>           the other side must be given access to the information; if the court's finding is that the privilege does apply, then the court may not rely upon the information in reaching its judgment. ***In either case, no party will be faced -- as were the plaintiffs in this case -- with a decision against him based on evidence he was never permitted to see and to rebut.***

*Abourezk*, 785 F.2d at 1061 (citations omitted) (emphasis added).

***Second,*** Hornbeam has not made any showing of extraordinary circumstances to justify an *ex parte* submission. *See* Endorsed Letter, ECF 174. Nor could it. Hornbeam has not asserted any recognized "extraordinary circumstances" of state-secrets or national security interests to justify *ex parte* submissions. *See* September 20, 2019 Letter Motion, (ECF 174); *Schiller*, 2008 U.S. Dist. LEXIS 31913, at *18-19 (affirming where no state-secrets were at issue in a §1983 action against a municipal police department, "defendants failed to present any persuasive legal authority or compelling justification in support of their request to file the … Declaration on an *ex parte* basis.")

***Third***, Hornbeam has not asserted attorney-client privilege, as a basis for making *ex parte* Declarations for use in consideration of Symeou's August 9, 2019 Letter Motion. Nor could it make such a claim, because counsel does assert the persons who signed the certifications are their clients, plus the identity of individuals is not legal advice protected by the attorney client privilege. *See Hemingway v. Russo*, Case No. 2:16-cv-00313-JNP-PMW, 2017 WL 4857551, at *4 (D. Utah Oct. 25, 2017) (requiring disclosure, "the individuals' identities are not protected by the attorney-client privilege . . .") (citing *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1488 (10th Cir. 1990));  *Pressley v. City of New York,* No. 11-CV-3234 PKC RER, 2013 WL 6028316, at *2 (E.D.N.Y. Nov. 13, 2013) ("Deponent does have to answer the question as to the identities of the individuals with whom she communicated  . . . because that information is not covered by such attorney-client privilege.")

9

***In sum,*** the *Ex Parte* Declarations are highly relevant to determining whether the Responsive Materials should be destroyed and determining whether they were improperly disseminated. The Court should order Hornbeam to serve and file unredacted versions.

## II. THE COURT SHOULD ORDER THE *EX PARTE* DECLARATIONS BE UNSEALED AND FILED ON THE DOCKET

"The common law right of public access to judicial documents is firmly rooted in our nation's history. … the First Amendment does secure to the public and to the press a right of access to civil proceedings." *Lugosch v. Pyramid Co.*, 435 F.3d 110, 119, 124 (2d Cir. 2006).[4] The presumption of access is "based on the need for federal courts to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

***First***, motions to seal must be "carefully and skeptically review[ed] … to insure that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection. *Video Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994). "[T]he moving party must demonstrate 'that higher values overcome the presumption of public access.'" *Dedjoe v. Esper*, 2019 U.S. Dist. LEXIS 26341, at *25 (N.D.N.Y. Feb. 19, 2019) (citation omitted) (denying motion to redact trial transcripts.) Hornbeam has not asserted that the identity of individuals who received the Responsive Materials is protected by the

---

[4] *Richmond News Papers, Inc. v. Virginia,* 448 U.S. 555 (1980) described the historical and philosophical underpinnings of "the importance of openness to the proper functioning of a trial," stating, "it gave assurance that the proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality." *Id.* at 569; *see also Nixon v. Warner Commc'ns., Inc.,* 435 U.S. 589, 597 (1978) ("the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."). *See also Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1178-81 (6th Cir. 1983) (vacating sealing order because "[t]he public has an interest in ascertaining what evidence and records the District Court and this Court have relied upon in reaching our decisions").

10

attorney-client privilege, nor could they make such an assertion, because the individuals are not their clients, plus identity of an individual is not legal advice. *Hemingway*, 2017 WL 4857551, at *4; *Pressley*, 2013 WL 6028316, at *2. Further, Hornbeam's claim that the identity of the individuals is "confidential and sensitive information" is a conclusory assertion, insufficient on its face to justify deprivation of public access to judicial records. *In re New York Times*, 828 F.2d at 116 ("The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of the right to a fair trial.") (citations omitted); *Std. Inv. Chtd. v. NASD*, 2008 U.S. Dist. LEXIS 4617, *39-40 (S.D.N.Y. Jan. 22, 2008) ("The vague and conclusory assertions of harm offered by defendant" deemed "insufficient to justify continued protection [sealing] of the Board Documents.") A claim of "confidential and sensitive information" is not a "higher value" that overcomes the presumption of public access. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 145 (2d Cir. 2016) (rejecting argument that "protection of confidential information" is a "higher value" superseding the First Amendment right of access and stating, "In the circumstances here presented, the interests favoring secrecy, meanwhile, are weak. This is not a case in which disclosure would reveal details of an ongoing investigation, pose a risk to witnesses, endanger national security, or reveal trade secrets.")

***Second,*** "the presumptive right of access prevails unless it is overcome by 'specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim.' … Broad, general, and conclusory findings are insufficient to justify closure. *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 165 (2d Cir. 2013) (citation omitted). *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 126 (2d Cir. 2006) (holding sealed "documents submitted to a court in support of or in opposition to a motion for summary

judgment are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment. … the district court erred … in failing to make the specific, on-the-record findings required"). *See also Press-Enter. Co. v. Superior Court of Cal., Riverside Cty.*, 464 U.S. 501, 510 (1984) ("The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.")  The *Ex Parte* Declarations should be unsealed unless the Court makes "specific, on-the-record findings … that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (holding court "erred in failing to make the specific, on-the-record findings required"). *See, e.g.*, *United States v. Antar*, 38 F.3d 1348, 1363 (3d Cir. 1994) ("From the record before us, the district judge appears not to have recognized that maintaining the transcripts under seal, though a passive act, was an active decision requiring justification under the First Amendment"); *In re New York Times*, 828 F.2d at 116 (vacating sealing orders as insufficiently specific to meet the standard for sealing court filings).  Here there is no factual basis to make such findings.

### III. GOOD CAUSE EXISTS TO GRANT SYMEOU'S MOTION TO PRODUCE THE CERTIFICATIONS

The SAPO provides "Certifications will be produced to and kept on file by the Court, and the non-disclosing Party may make an application to have the Certifications produced for good cause." ECF106 at ¶6(f).  Good cause exists here to produce the Certifications filed with the Court.

*First*, the Certifications are relevant to ruling on Symeou's motion seeking destruction of the Responsive Materials, given that the filing deadline for the BVI has passed.  The Certifications may show that no Responsive Materials were provided to any BVI attorneys.  This would constitute evidence that Hornbeam never had any intent, let alone present intent, to file in

12

the BVI.  Alternatively, they may show that the Responsive Materials were provided to persons who had no role related to the BVI.  For example, they may have been provided to counsel or consultants working on the Ohio state court case in 2015, Shulman's London case in 2017, and Shulman's new Delaware case filed in August 2019.  This would further establish there was and is no intent to file new BVI proceedings.

*Second*, the Certifications may show that unauthorized persons received Responsive Materials, which would constitute a violation of the SAPO.  For example, the SAPO did not permit use of the Responsive Materials in the Ohio, English, and Delaware cases.  Nor did it permit disclosure to the DOJ/FBI.  Production of the Certifications is critical to determining whether the SAPO was violated.

## CONCLUSION

For the foregoing reasons, the Court should grant Symeou's motion to produce and unseal the *Ex Parte* Declarations filed at ECF 175 and 176.  The Court also should order production and unsealing of the Certifications.

Dated: September 30, 2019
     New York, New York

| REED SMITH LLP | MARKS & SOKOLOV, LLC |
|---|---|
| By: /s/ Steven Cooper<br>Steven Cooper<br>Samuel Kadosh<br>599 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 521-5400<br>Facsimile: (212) 521-5450<br>scooper@reedsmith.com<br>skadosh@reedsmith.com | By: /s/ Bruce S. Marks<br>Bruce S. Marks<br>Thomas C. Sullivan<br>1835 Market Street, 28th Floor<br>Philadelphia, PA 19103<br>Telephone: (215) 569-8901<br>Facsimile: (215) 569-8912<br>marks@mslegal.com<br>Tsullivan@mslegal.com |

*Attorneys for Intervenor Panikos Symeou*