**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE: APPLICATION OF HORNBEAM CORP.** | **14 Misc. 424 (VSB)** |

# MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR PANIKOS SYMEOU'S MOTION FOR SANCTIONS, DISCOVERY AND ATTORNEYS' FEES

**Reed Smith LLP**
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

and

**Marks & Sokolov, LLC**
1835 Market Street, 28th Floor
Philadelphia, PA 19103
(215) 569-8901

*Attorneys for Intervenor Panikos Symeou*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iv

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ............................................................................................................. 3

    **A.**    The "Responsive Materials" Produced in 2015 Pursuant To The *Ex Parte* §1782 Discovery Order ........................................................................... 3

    **B.**    Hornbeam, Shulman and Bracha's Failed 2015 Ohio Proceeding ....................... 3

    **C.**    The Protective Orders ................................................................................... 4

    **D.**    Shulman Engaged HL Int'l To Litigate And Obtain A Worldwide Freezing Order Against Kolomoisky and Bogolyubov In England, Not The BVI ............... 5

    **E.**    HL Provided Responsive Materials To HL Int'l For Use In England ................... 6

    **F.**    Shulman Finally Discloses His Long Planned English Action ............................ 7

    **G.**    Shulman's English Proceedings Failed ............................................................ 8

    **H.**    HL Int'l Represents PrivatBank Against Kolomoisky and Bogolyubov In England ....................................................................................................... 9

    **I.**    Shulman's Other Unauthorized Disclosures Of Responsive Materials ................. 9

    **J.**    The Destruction Order And Failure To Comply .............................................. 10

    **K.**    Shulman Sued HL Int'l In England For Malpractice ....................................... 11

ARGUMENT ............................................................................................................... 11

    **A.**    THIS COURT SHOULD SANCTION RESPONDENTS PURSUANT TO RULE 37(b) AND ITS INHERENT AUTHORITY FOR VIOLATING THE PROTECTIVE AND DESTRUCTION ORDERS ....................................... 13

        **1.**    This Court Should Impose Sanctions Pursuant to Rule 37(b) ................. 13

        **2.**    This Court Should Impose Sanctions Pursuant to Its Inherent Authority ........................................................................................... 15

        **3.**    This Court Should Award Attorneys' Fees And Costs to Symeou Due To Respondents' Violations of The Protective And Destruction Orders ........................................................................... 17

    **B.**    THIS COURT SHOULD SANCTION RESPONDENTS PURSUANT TO ITS INHERENT AUTHORITY FOR THEIR CONCEALMENT AND MISLEADING STATEMENTS TO THE COURT ........................................... 18

        **1.**    This Court Should Sanction Respondents Under Its Inherent Authority ........................................................................................... 19

**2.**    This Court Should Award Attorneys' Fees And Costs Because, But For Respondents' Omission And Concealment, The Second Circuit Appeal And Later Filings Could Have Been Avoided ............................ 20

**3.**    This Court Should Sanction Counsel HL Pursuant To 28 U.S.C. §1927 For Its Misconduct ...................... 21

**C.**    THIS COURT SHOULD AUTHORIZE LIMITED DISCOVERY TO INVESTIGATE RESPONDENTS' MISCONDUCT ......................... 23

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 42-43 (S.D.N.Y. 2014) ................................................................................................................. 12, 13

*Almeciga v. Ctr. For Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 435 (S.D.N.Y. 2016) ................................................................................................................. 19

*Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 362 (S.D.N.Y. 2006) ........................ 12, 22

*Bracha v. Warren Steel*, 2017-Ohio-7557 (Oh. Ct. App. Sep. 11, 2017) ....................................... 4

*Briese Lichttechnik Vertriebs GmbH v. Langton*, 2011 U.S. Dist. LEXIS 6340, *40-41 (S.D.N.Y. Jan. 10, 2011) ............................................................................................. 18

*Carrington v. Graden*, 2020 U.S. Dist. LEXIS 178712, *24-25 (S.D.N.Y. Sep. 28, 2020) ......... 16

*Certain Underwriting Members of Lloyds v. Ins. Co. of the Ams.*, 2019 U.S. Dist. LEXIS 165702, *10 n.5 (S.D.N.Y. Sep. 25, 2019) ............................................................. 23

*Chambers v. Nasco, Inc.*, 501 U.S. 32, 44-45, (1991) ....................................................... 12, 20, 23

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) ........................................................................................................ 15

*City of Almaty v. Ablyazov*, 2018 U.S. Dist. LEXIS 35920, *20-22 (S.D.N.Y. Mar. 5, 2018) .................................................................................................................. 21

*Connecticut v. U.S.*, 1998 U.S. Dist. LEXIS 15984, *10 (D. Conn. Sep. 8, 1998) .................... 23

*DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) ............................. 12

*Farricker v. Penson Dev., Inc.*, 2010 U.S. Dist. LEXIS 115646, *9 (S.D.N.Y. Oct. 28, 2010) .................................................................................................................. 17

*Flaherty v. Filardi*, 2009 U.S. Dist. LEXIS 104773, *14-15 (S.D.N.Y. Nov. 10, 2009) ............ 12

*Galindo v. Instalaciones de Tendidos Telefonicos, S.A.*, 508 F. App'x 76, 78 (2d Cir. 2013) .................................................................................................................. 13

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) .................................... 12

*Homkow v. Musika Records, Inc.*, 2009 U.S. Dist. LEXIS 21537, *12-13 (S.D.N.Y. Mar. 17, 2009) ................................................................................................................. 20

*Hornbeam Corp. v. Halliwell Assets, Inc. (In re Hornbeam Corporation's Request)*, 790 F. App'x 199 (11th Cir. 2020) ...................................................................................... 10

*Huebner v. Midland Credit Mgmt.*, 897 F.3d 42, 54 (2d Cir. 2018)...................................... 12, 15

*In re Green*, 422 B.R. 469, 475 (Bankr. S.D.N.Y. 2010) ............................................................ 18

*In re WinNet R CJSC*, 2017 U.S. Dist. LEXIS 56985 (S.D.N.Y. Apr. 13, 2017) ....................... 19

*Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 482 (S.D.N.Y. 2003)........................................................ 18

*Jianshe Guo v. A Canaan Sushi, Inc.*, 2019 U.S. Dist. LEXIS 59234, *10 (S.D.N.Y. Apr. 5, 2019) .................................................................................................................................... 16

*Joint Stock Co. v. Infomir Ltd. Liab. Co.*, 2020 U.S. Dist. LEXIS 63099, *29 (S.D.N.Y. Mar. 26, 2020) ...................................................................................................................... 19

*Jung v. Neschis*, 2009 U.S. Dist. LEXIS 126950, *40 (S.D.N.Y. Mar. 6, 2009) ........................ 23

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 623 (2d Cir. 2018)...................... 21

*Koch v. Greenberg*, 2011 U.S. Dist. LEXIS 114811, *32-33 (S.D.N.Y. Aug. 16, 2011) ...... 14, 15

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 461 (S.D.N.Y. 2002) ..................................................................................................................................... 20

*Merck Eprova AG v. Gnosis S.P.A.*, 2010 U.S. Dist. LEXIS 38867, *19-22 (S.D.N.Y. Apr. 20, 2010) ...................................................................................................................... 15

*N.Y. State NOW v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989) .................................................... 16

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 471 (S.D.N.Y. 1999)........................................................................................................................ 21

*Olin Corp. v. Chase Brass & Copper Co.*, 1982 U.S. Dist. LEXIS 18347, *25-26 (D. Conn. Oct. 4, 1982)............................................................................................................... 24

*Passlogix, Inc. v. 2FA Tech., LLC*, 708 F.Supp.2d 378, 394 (S.D.N.Y.2010) ....................... 19, 23

*Pension Comm. v. Banc*, 2010 U.S. Dist. LEXIS 4546, *15 (S.D.N.Y. Jan. 15, 2010) .............. 12

*Rabin v. Dow Jones & Co.*, 2015 U.S. Dist. LEXIS 101967, *4, *10-13 (S.D.N.Y. July 30, 2015) .................................................................................................................................. 22

*Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999)........................................... 12

*Schiller v. City of N.Y.*, 2007 U.S. Dist. LEXIS 40253, *3 (S.D.N.Y. June 5, 2007).................. 12

*SEC v. Smith*, 798 F. Supp. 2d 412, 442 (N.D.N.Y. 2011)........................................................... 21

*Sentry Ins. v. Brand Mgmt.*, 2012 U.S. Dist. LEXIS 179626, *20 (E.D.N.Y. Dec. 19, 2012) ................................................................................................................................ 12, 17

*Skyline Steel, LLC v. Pilepro, LLC*, 2018 U.S. Dist. LEXIS 196005, *5 (S.D.N.Y. Nov. 16, 2018) ............................................................................................... 17

*Southern New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) ................... 13

*TAS Int'l Travel Serv. v. PanAm*, 1983 U.S. Dist. LEXIS 19964, *2-3 (S.D.N.Y. Jan. 18, 1983) ....................................................................................................... 23

*Tedesco v. Mishkin*, 629 F. Supp. 1474, 1486 (S.D.N.Y. 1986) ....................................... 21

*Travel Sentry, Inc. v. Tropp*, 2008 U.S. Dist. LEXIS 39697, *6, *22 (E.D.N.Y. May 15, 2008) ....................................................................................................... 23

*Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 286 (E.D.N.Y. 2009) ..................................... 18

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, 2005 U.S. Dist. LEXIS 14790, *17 (S.D.N.Y. May 3, 2005) ................................................................................ 16

*Vaigasi v. Solow Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 18460, *58 (S.D.N.Y. Feb. 16, 2016) ....................................................................................................... 13

**Statutes**

28 U.S.C. §1782 ........................................................................... 1, 2, 3, 4, 8, 10, 14, 18

28 U.S.C. §1927 ................................................................................................. 21, 22, 23

**Rules**

Fed. R. Civ. P. 37 ........................................................................... 11, 12, 13, 15, 17

## PRELIMINARY STATEMENT

Intervenor Panikos Symeou ("**Symeou**") moves for relief to remedy violations of the First and Second Amended Protective Orders (ECF 71, 106) and the 2020 Destruction Order (ECF 210) and the failure to correct statements which later proved false by Applicant Hornbeam Corp. ("**Hornbeam**"), Vadim Shulman ("**Shulman**"), and their former counsel, Hogan Lovells US LLP  ("**HL**") (collectively, "**Respondents**").

From December 19, 2014 through November 27, 2019, Hornbeam, Shulman, and their various counsel repeatedly represented that "Responsive Materials" were for use in future BVI proceedings.  Instead, as Shulman disclosed in his 2020 English suit against his former UK counsel, Hogan Lovells International LLP ("**HL Int'l"**), he decided in *October 2016* to abandon BVI proceedings and, instead, file suit in England by January 2017, and to engage HL to obtain discovery for use in England.  ***This decision to abandon the BVI proceeding was repeatedly concealed from this Court***.

HL disclosed in a September 25, 2020 email that "Responsive Materials" – containing highly confidential financial information – were provided to HL Int'l (engaged by Shulman in 2016 for litigation in England, not the BVI), which then provided them to another English firm, Herbert Smith Freehills, LLP   ("**Herbert Smith**").  Both disclosures violated the Protective Orders limiting dissemination to counsel involved in the "Permitted Litigations" – this §1782 proceeding and the BVI, not England.  ***This improper dissemination, too, was concealed from this Court***.  Symeou still does not know all the persons who received Responsive Materials, or whether they have destroyed them as ordered.  This Court should grant the relief sought.

***First***, the Court should sanction Respondents for violating the Protective Orders by providing Responsive Materials to HL Int'l and Herbert Smith, *i.e.*, English law firms with no involvement in contemplated BVI proceedings.  The Court should also sanction Respondents for

failure to comply with the Destruction Order because not all recipients of the Responsive Materials certified destruction. The Court should award Symeou's past and continuing attorneys' fees and costs in enforcing the Protective Orders and Destruction Order.

**Second**, the Court should sanction Respondents for failing to correct representations to the Court and Symeou that Hornbeam was seeking discovery for use in the BVI despite knowing by October 2016 that the BVI proceeding would not go forth.  This was known to Respondents **before** the Court decided Symeou's motion for reconsideration in February 2017 and Symeou's related Second Circuit appeal.  Had Respondents not concealed this information, this Court likely would have vacated the 2015 Discovery Order, given that the BVI proceeding had been abandoned, as the Eleventh Circuit ultimately did when it vacated the S.D. Florida Discovery Order in 2019.  Symeou would have avoided substantial attorneys' fees in the Second Circuit appeal and subsequent proceedings leading to the Destruction Order.  The Court should award Symeou's fees incurred since October 2016.

**Third**, the Court should grant targeted discovery, *i.e.*, limited production of documents and depositions of Shulman and a Rule 30(b)(6) witness for HL to identify all persons who received Responsive Materials, and ensure compliance with the Protective Orders and Destruction Order. Moreover, to the extent Respondents deny that the BVI proceeding was abandoned in October 2016 (which would contradict Shulman's English malpractice suit), discovery is appropriate on this topic as well.

**In sum**, as observed in the Destruction Order, §1782 proceedings can be abused through "chicanery".  Respondents used the Responsive Materials for unauthorized purposes in violation of the Protective Orders and are concealing who received them in violation of the Destruction Order.   Symeou's motion for sanctions should be granted.

## BACKGROUND[1]

### A.   The "Responsive Materials" Produced in 2015 Pursuant To The *Ex Parte* §1782 Discovery Order

Hornbeam filed an *ex parte* Application (ECF 1) under 28 U.S.C. §1782 on December 19, 2014, requesting discovery for use in future BVI proceedings, alleging self-dealing involving Warren Steel Holdings, LLC ("**Warren Steel**") owned by Halliwel Assets, Inc. ("**Halliwel**"). This Court granted the Application on December 24, 2014 (ECF 5) ("**Ex Parte Order**"). Hornbeam immediately served 12 subpoenas on banks without notifying the putative BVI defendants or affected persons, including Halliwel and Symeou.   The subpoenaed banks produced 14,000+ bank records containing confidential business and personal financial information of Halliwel's beneficial owners – Gennady Bogolyubov ("**Bogolyubov**") and Igor Kolomoisky ("**Kolomoisky**") – and related entities, including transactions for hundreds of millions of dollars unrelated to Warren Steel or Halliwel ("**Responsive Materials**").[2]   *See* Rule 60 Motion (ECF 41), at 3, 6, 11; Wire Transactions Chart (ECF 42-1); Nov. 10, 2015 Conf. Trans. (ECF 50), at 16-20; Sullivan Dec. (ECF 59); and Wires Summary (ECF 59-1).

### B.   Hornbeam, Shulman and Bracha's Failed 2015 Ohio Proceeding

On June 15, 2015, Shulman and his entity, Bracha Foundation ("**Bracha**"), filed an action in Ohio state court asserting claims against Symeou, Halliwel, Bogolyubov, Kolomoisky and others, arising from the ***same*** facts and seeking the ***same*** damages as the claims that Hornbeam represented in this §1782 proceeding (and in four other §1782 proceedings) would be

---

[1] Unless otherwise stated, all emphases are added, and citations, quotation marks, footnotes, and brackets are omitted.

[2] It was only after being ordered to produce the subpoenas and Responsive Materials to Symeou on September 17, 2015 that Hornbeam finally began producing the documents on October 8, 2015.   *See* Order, ECF 35.

filed in the BVI. *See* Hornbeam Ohio Complaint (ECF 31-1). On October 22, 2015, the Ohio

Court dismissed on, *inter alia*, the "internal affairs doctrine" which required direct claims to be

filed in the BVI and derivative claims to be approved by the BVI court. *See* Ohio Judgment

(ECF 44-1), *aff'd*, *Bracha v. Warren Steel*, 2017-Ohio-7557 (Oh. Ct. App. Sep. 11, 2017).

### C.    The Protective Orders

On August 4, 2015, the Court entered a protective order ("**PO**"), which precluded, *inter

alia*, dissemination of Responsive Materials to anyone other than Shulman, Holland & Knight

LLP (Hornbeam's then counsel), and two other attorneys, Fabrizio Campanile ("**Campanile**")

and Tetyana Ferree ("**Ferree**"). PO (ECF 27), at 2, 3. Subsequently, this Court made clear that

the contemplated BVI proceeding was the only "Permitted Litigation" (as defined in the PO) and

warned: "***Hornbeam may not use the Responsive Materials in any other litigation without

demonstrating good cause to me***." September 17, 2015 Order (ECF 35), at 21.**[3]**

On February 1, 2016, the Court entered the Amended Protective Order ("**APO**"), later

incorporated into the May 12, 2017 Second Amended Protective Order ("**SAPO**"), which limited

use of Responsive Materials to the "Permitted Litigation(s)", defined as the §1782 proceedings

and "Hornbeam initiate[d] proceedings in the BVI … Hornbeam may not use the Responsive

Materials in any other litigation…") *See* APO (ECF 71); SAPO (ECF 106), ¶1(e) (citing the

September 17, 2015 Order at 21). The APO and SAPO are collectively the "**Protective

Orders**."

The Protective Orders state: "No Confidential Information shall be disclosed to any

---

**[3]** Despite the clear restriction against sharing, Campanile, Hornbeam's Swiss counsel, admitted that
Responsive Materials were used in Ohio, stating: "other than the existence of Warren Steel bank accounts
not previously identified by Symeou no information whatsoever received will be used in this Proceeding
in support of the accounting and injunction." Campanile Ohio Aff. (ECF 30-2), ¶164.

person other than … [a]ttorneys of record and instructing attorneys involved in Permitted Litigations." APO/SAPO, ¶4(a). They also provide: "any person permitted to review and maintain Responsive Materials containing information designated as Confidential or Attorneys' Eyes Only **shall** either return or destroy such Responsive Materials … and **shall** so certify in writing." *Id.*, ¶15(d). On February 10, 2016, Symeou designated the Responsive Materials as "**Confidential**" with portions designated as "**Attorneys' Eyes Only**" under SAPO, ¶¶2-3.

### D. Shulman Engaged HL Int'l To Litigate And Obtain A Worldwide Freezing Order Against Kolomoisky and Bogolyubov In England, Not The BVI[4]

Shulman's 2020 malpractice claim in England against HL Int'l detailed that Shulman's London-based representatives, Natalya Luchnikova ("**Luchnikova**") and Ferree, met with Michael Roberts of HL Int'l in September/October 2016 to discuss Shulman engaging "lawyers well versed and experienced in locating and freezing assets worldwide." Shulman was planning claims in England against Kolomoisky and Bogolyubov, including seeking a Worldwide Freezing Order ("**WFO**") against their assets. Shulman SOC, ¶¶14-19, 45-47, Exh. 1. On October 4, 2016, HL Int'l provided a "fee proposal stating that they would issue the claim form by 23 December 2016." *Id.*, ¶19. Its October 10, 2016 engagement letter states it was asked to "advise [Shulman] in relation to possible claims in England and Wales against … Kolomoisky and … Bogolyubov in relation to the joint venture in Warren Steel" and would "issue the claim in the English Courts by 23 December 2016." *Id.*, ¶20. This deadline was extended to March 1, 2017. *Id.*, ¶44. ***No aspect of the HL Int'l engagement appears to reference the BVI proceeding***. *Id.*; *see also* HL Int'l Defence, Exh. 2. HL Int'l worked on the English claims from September 27, 2016 through February 7, 2018, billing £1,527,294 ($1,977,260). *Id.*, ¶84.

---

[4] These facts became available only after March 5, 2020, when Shulman filed his Statement of Claim ("**Shulman SOC**") against HL Int'l. Shulman SOC, Exh. 1.

### E.      HL Provided Responsive Materials To HL Int'l For Use In England

Shulman's 2020 English malpractice claim admitted HL was engaged to obtain the

Responsive Materials for use in his ***English*** litigation:

> HL (New York) were retained by [Shulman] in about January 2017 ***and sought
> to obtain material relevant to identifying assets belonging to the Intended
> Defendants, for [Shulman] to deploy in the English litigation*** …

Shulman SOC, ¶12, Exh. 1.

On January 17, 2017, HL appeared for Hornbeam requesting to extend the February 1,

2017 APO deadline to use or destroy Responsive Materials for review by "global counsel":

> Hornbeam has retained new ***global counsel*** [HL Int'l] to represent it in these
> proceedings and in foreign proceedings that may be filed … Hornbeam
> respectfully requests a six month extension of the upcoming February 1, 2017
> deadline pursuant to ¶15(c) of the Order ***in order to permit newly engaged global
> counsel an opportunity to review materials obtained on this and related 28 USC
> §1782 discovery proceedings, including a significant volume of materials that
> were only recently produced*** … to assess the significance of those materials as
> they relate to anticipated foreign proceedings.

Jan. 17, 2017 HL letter to the Court (ECF 77).

> ***Notably, unbeknownst to the Court and Symeou, Respondents concealed that the
> Responsive Materials were being provided to HL Int'l for use in England, not the BVI***. The

Court extended the destruction deadline until August 1, 2017. February 1, 2016 Order (ECF 79).

Hornbeam did not correct the record that the BVI was abandoned in favor of England, resulting

in the Court, on February 17, 2017, denying Symeou's October 15, 2015 Rule 60(b) motion for

relief from the September 17, 2015 Order (ECF 35) denying Symeou's motion to vacate the *Ex

Parte* Order, on the basis, *inter alia*, that "Hornbeam plausibly asserts that proceedings in the

BVI remain reasonably calculated." February 17, 2017 Order (ECF 83), at 13.

Symeou appealed and on March 1, 2017, moved to stay use of Responsive Materials.

Appeal Notice (ECF 86), Stay Motion (ECF 87). On April 3, Hornbeam argued it would suffer

"obvious prejudice" from a stay because it would be delayed from using discovery in its upcoming foreign litigation, concealing it had abandoned the BVI and that Shulman and HL Int'l had been preparing since October 2016 to litigate in England.  Hornbeam Opp. (ECF 93), at 16.

On April 27, 2017, without disclosing Shulman's months long preparation to sue in England, HL represented to the Court: "Hornbeam expects to initiate foreign proceedings [in the BVI] as described in the original discovery application by May 29 [2017]."  HL Letter (ECF 99), at 3.  ***Respondents continued to conceal that Shulman had abandoned the BVI as of October 2016 and decided to litigate in England and, instead, carefully and deliberately obfuscated this fact by representing that "Hornbeam" would file proceedings in the BVI.[5]***

At the May 2, 2017 hearing on amending the APO, Hornbeam's counsel failed to correct these misrepresentations, studiously avoiding disclosure of HL Int'l's preparation of Shulman's claims since October 2016, that were filed ten days later on May 12 in London, ***not by Hornbeam in the BVI***.  Transcript (ECF 102-1).  In reliance upon these misrepresentations, the Court denied the stay three weeks later on May 22, 2017.  Order (ECF 112), at 3.

### F.   Shulman Finally Discloses His Long Planned English Action

On May 30, 2017, Shulman moved to intervene and amend the SAPO to permit him to use Responsive Materials in England, finally disclosing his May 12, 2017 filing to this Court. Motion to Intervene (ECF 114).  On June 8, 2017, Symeou moved to restore the February 1, 2017 deadline to destroy Responsive Materials and to compel Hornbeam to destroy the discovery by June 12, 2017 because the "London filing confirms that future BVI proceedings by Hornbeam

---

[5] In addition, on April 14, 2017, Hornbeam made the same representation to the Florida court: "Hornbeam currently expects to initiate such litigation within the next 45 days."  Florida Proceeding (Case No. 14-mc-24887) (S.D. Fl. ECF 71).  ***HL never disclosed the decision  in October 2016 for Shulman to  file in England, and not the BVI.***

are not 'within reasonable contemplation.'" Symeou Motion (ECF 120). **_Hornbeam responded by continuing to conceal the BVI action was abandoned_**. Respondents' Opposition (ECF 121). The Court denied Shulman's motion to intervene and amend the SAPO because the case was on appeal, noting the "Authorizing Order focused on Hornbeam as the 'interested party' and on the BVI as the location for the action contemplated to be brought by Hornbeam. … **_At no point did the Authorizing Order reference Shulman bringing [any other] foreign action_**." August 14, 2017, Order (ECF 140), at 3.

At the January 4, 2018 oral argument before the Second Circuit, when asked about the status of the deadline for bringing a BVI proceeding, HL continued its concealment of abandonment of the BVI action, representing:

> That deadline can be extended if we apply to the court and request an extension and I can't predict whether that's going to happen, but Hornbeam is attempting to gather documents, not just in New York, but in other jurisdictions, including Florida, … So we're still working to collect the documents in order to file a case [in the BVI].

Hearing Trans., at 18-19, Exh. 3. The Second Circuit denied the appeal on January 16, 2018. Contrary to HL, Hornbeam did not file in the BVI when Florida discovery was completed in December 2018; and discovery was long completed in New York in 2015 and Alabama in 2016.

### G.    Shulman's English Proceedings Failed

On May 12, 2017, Shulman brought suit against Kolomoisky and Bogolyubov in England that included the **_same_** allegations and claim for damages that Hornbeam represented it would – but never did – file in the BVI. *See* English Claim Form and Particulars of Claim (**under seal**, ECF 123, 126). Instead of making an independent §1782 application, Shulman moved to intervene and amend the APO in an improper attempt to piggy-back on the *Ex Parte* Order to use Responsive Materials in his English action. However, this Court noted it lacked jurisdiction due to the appeal and Shulman's motion was denied without prejudice. Opinion (ECF 140). On

February 2, 2018, Shulman's English action was dismissed. English Judgment (ECF 190-1).

### H.   HL Int'l Represents PrivatBank Against Kolomoisky and Bogolyubov In England

On December 19, 2017, HL Int'l applied for a WFO against Kolomoisky and Bogolyubov on behalf of PrivatBank. On January 19, 2018, the English Court entered the WFO against Kolomoisky and Bogolyubov for PrivatBank for $2.6 billion. Shulman SOC, ¶¶68, 69.

### I.   Shulman's Other Unauthorized Disclosures Of Responsive Materials

In late 2018, Shulman threatened Kolomoisky (through a middleman) that, unless Shulman received money, he would provide Responsive Materials to the FBI and DOJ, which purportedly would result in Kolomoisky being prosecuted for money laundering and other crimes. Threats such as this may constitute criminal conduct violating 18 U.S.C. §875. Shulman sent messages (in Russian; translated herein, *see* August 9, 2017 letter (ECF 157)), indicating his attorneys were involved, including apparently, attorney Carol Bruce, who replaced HL:

- On Thursday they will confirm our meeting with the FBI and with the head of the money laundering department in the Department of Justice. ***From my attorney.*** … And in the end of the month their official case on K and B will be opened. Because on Thursday they will officially start to study all the materials[.]

- And [redacted] should think about how he will explain to the FBI the fact that in 2010 - 2011 more than $[redacted] was taken from his Swiss accounts and transferred to [redacted] casino. ***As Carol [Bruce] says*** – this is one of the most typical money laundering schemes.[6]

- [M]y attorney will turn the information over on my instruction. … in the absence of a settlement on the dispute, we will go to the Department of Justice and will assist them in their investigation. ***But in the case of a settlement on the dispute, I will call back my lawyers and the case will be closed***.

When Carol Bruce was asked if she was aware of contacts with the DOJ, or whether it was provided discovery materials, she refused to answer, and confirmed by email as follows:

---

[6] This apparently references Responsive Documents (wire records) and marked "Attorney Eyes Only".

"With respect to the DOJ, yes, *I have refused to respond* to each demand of yours that I reveal whether we have had contact with the DOJ about this case or whether we have given DOJ any of the discovery in this case."  July 19, 2019 Bruce email (ECF 156-1).

**J.      The Destruction Order And Failure To Comply**

On August 9, 2019, Symeou moved, *inter alia*, for Hornbeam and Shulman to destroy all Responsive Materials and certify their destruction.  Destruction Motion (ECF 157).  On November 27, 2019, Hornbeam trumpeted a "paradigmatic shift in its litigation strategy" of litigating "in Delaware, and *specifically not* in the British Virgin Islands," and moved to amend the SAPO to use Responsive Materials in Delaware.  Amend Motion (ECF 187), at 1.

This Court denied Hornbeam's motion and granted Symeou's destruction motion, noting a "§1782 applicant could attempt to abuse the statute to obtain documents outside the discovery procedures set forth in the Federal Rules of Civil Procedure" and that "[i]gnoring the SAPO's provisions and granting a post hoc motion to amend based on an applicant's pursuit of a domestic litigation strategy would reward such 'chicanery.'"[7]  August 31, 2020 Order ("**Destruction Order**") (ECF 210), at 9.  The Court ordered "that, in accordance with ¶¶ 15(c) and (d) of the SAPO, Applicant shall destroy the Responsive Materials within fourteen (14) days, and certify such destruction to counsel for Symeou."  *Id.*  In response to Symeou's request for disclosure of all recipients that received Responsive Materials, on September 25, 2020, HL disclosed for the first time that HL Int'l and its counsel in defending Shulman's malpractice claims, Herbert Smith, had copies of Responsive Materials.  HL Email, Exh. 4.

---

[7] On January 14, 2020, the Eleventh Circuit vacated the order granting discovery in the Southern District of Florida. The Circuit Court reasoned, "[g]iven Hornbeam's recent concession that legal proceedings in the British Virgin Islands will not be instituted, the discovery allowed by the district court is not for use in a foreign proceeding." *Hornbeam Corp. v. Halliwel Assets*, 790 F. App'x 199 (11th Cir. 2020).

While Hornbeam has filed certifications of destruction of Responsive Materials for Tucker Byrd, Campanile, Ferree, Alexandra Marinzel, and David Michaeli of HL (collectively, "**Certifying Counsel**") (ECF 211-1, 2, 3, 4 and 212), the following known recipients have not certified destruction:  Hornbeam; Shulman; HL Int'l; Herbert Smith; Luchnikova; Carol Bruce (who left Murphy & McGonigle PC in 2019); and Holland & Knight attorneys, James Power and Sean Barry (collectively, "**Non-Certifying Recipients**").  To the extent that Responsive Materials were provided to the FBI/DOJ, no certifications were provided by the government.

On October 16, 2020, Symeou requested that Hornbeam/Shulman and HL disclose information regarding HL Int'l and Herbert Smith receiving Responsive Materials, including when, from whom, and for what purpose.  Sullivan Letters, Exh 5 and 6.  HL refused to provide any information why or when Responsive Documents were provided to HL Int'l and Herbert Smith, or any others.  Oct. 23, 2020 HL email, Exh. 7.  Hornbeam/Shulman did not respond.

### K.    Shulman Sued HL Int'l In England For Malpractice

On March 5, 2020, Shulman brought claims in England against HL Int'l based upon, *inter alia*, failing to file the English claims by December 2016, and at the latest by February 17, 2017 and/or to make an application for a WFO.  Shulman SOC, ¶¶88(7)-(10); 89(6), 98(2).  In addition, Shulman alleged that "information in [Shulman's English] proceeding … appears to have been shared between or used by HL [Int'l] lawyers acting for PrivatBank for the purpose of inclusion in PrivatBank's application for a WFO" and that "lawyers from HL [Int'l] who worked on the PrivatBank matter were also working on [Shulman's English] case …."  *Id*., ¶¶91(2)(iii), (iv).  HL Int'l lodged its Defence and Counterclaim on May 1, 2020.  HL Int'l Defence, Exh. 2.

### ARGUMENT

"Discovery orders such as the Protective Order can be enforced through Rule 37 (b)" against parties and counsel.  *Flaherty v. Filardi*, 2009 U.S. Dist. LEXIS 104773, *14-15

(S.D.N.Y. Nov. 10, 2009).[8]  *See also* Fed. R. Civ. P. 37(b)(2)(A), (C).  "Permissible remedial measures include 'treating as contempt of court the failure to obey any order ….'"  *Flaherty*, *supra* (*quoting* Fed. R. Civ. P. 37(b)(2)(A)(vii)) .  Rule 37 "***requires*** an award of attorney's fees incurred as a result of the failure [to comply with a discovery order] …."  *Id.* (*citing* Fed. R. Civ. P. 37(b)(2)(C).[9]  In addition, "[f]ederal courts possess certain 'inherent powers,' not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).  The courts' inherent power includes imposing monetary sanctions on counsel or a litigant, including attorneys' fees.  *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44-45, (1991).[10]  A "federal court [is not] forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules."  *Id.*, at 50.[11]

"Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."  *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).  The burden of proof "differs depending on the severity of the sanction."  *Pension Comm. v. Banc*, 2010 U.S. Dist. LEXIS 4546, *15 (S.D.N.Y. Jan. 15, 2010).

---

[8] *See also Huebner v. Midland Credit Mgmt.*, 897 F.3d 42, 54 (2d Cir. 2018) (affirming sanctions for violation of protective order); *Schiller v. City of N.Y.*, 2007 U.S. Dist. LEXIS 40253, *3 (S.D.N.Y. June 5, 2007) ("Discovery orders that can be enforced through Rule 37(b include protective orders issued under [Rule] 26(c)") (collecting cases).

[9] Rule 37(b)(2)(C) provides:  "… the court ***must*** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  *See also Sentry Ins. v. Brand Mgmt.*, 2012 U.S. Dist. LEXIS 179626, *18 (E.D.N.Y. Dec. 19, 2012)  ("Absent sufficient justification, an award of fees under Rule 37(b) is mandatory.")

[10] *See also Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 362 (S.D.N.Y. 2006) (same); *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 42-43 (S.D.N.Y. 2014) (court may levy monetary sanctions to "compensate for added expense caused by the recusant party's conduct.")

[11] *See also DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) ("that there may be a statute or rule which provides a mechanism for imposing sanctions of a particular variety for a specific type of abuse does not limit a court's inherent power to fashion sanctions").

"For less severe sanctions – such as fines and cost-shifting – the [court's] inquiry focuses more" on a party's misconduct and whether that misconduct, *inter alia*, "resulted in prejudice to the innocent party." *Id.*[12]

The Court should sanction Respondents and award attorneys' fees and costs to Symeou for Respondents violating the Protective and Destruction Orders and failing to correct repeated material representations to the Court, which unnecessarily prolonged this case for years.

A.   **THIS COURT SHOULD SANCTION RESPONDENTS PURSUANT TO RULE 37(b) AND ITS INHERENT AUTHORITY FOR VIOLATING THE PROTECTIVE AND DESTRUCTION ORDERS**

1.   **This Court Should Impose Sanctions Pursuant to Rule 37(b)**

Rule 37(b)(2) sanctions may be granted for noncompliance with discovery orders, such as the Protective and Destruction Orders, "notwithstanding a lack of willfulness or bad faith, although such factors are relevant to the sanction [chosen by the Court in its discretion] to be imposed for the failure" to comply. *Vaigasi v. Solow Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 18460, *58 (S.D.N.Y. Feb. 16, 2016). Courts apply a four-factor test for Rule 37(b) sanctions: "(1) the willfulness of the non-compliant party or the reason for non-compliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of … noncompliance." *Galindo v. Instalaciones de Tendidos Telefonicos, S.A.*, 508 F. App'x 76, 78 (2d Cir. 2013). "[B]ecause [this] court has wide discretion in imposing sanctions under Rule 37, these factors are not exclusive, and they need not each be resolved against the party challenging the … sanctions …." *Southern New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010). Here, all

---

[12] *See also Advanced Analytics*, 301 F.R.D. at 42-43 (finding monetary sanctions "to be especially appropriate in light of the fact that [plaintiff violated orders] … [and its] duplicitous behavior and unjustified submission … served only to delay resolution in a case that ha[d] been ongoing for nearly a decade, and was wasteful of the time of the Court and opposing counsel.")

factors favor sanctions.

*First*, Hornbeam/Shulman and HL were willfully non-compliant with the Protective Orders (ECF 71, 106) by providing Responsive Materials to HL Int'l, which was engaged to file claims in England, not the BVI. This is the exact "chicanery" – *i.e.*, using §1782 for an unauthorized purpose – which this Court decried in the Destruction Order (ECF 210). Under the Protective Orders, dissemination was limited to "Attorneys of record and instructing counsel … involved in Permitted Litigations," *i.e.*, this §1782 and BVI proceedings. APO/SAPO, ¶4(a). Any person receiving Responsive Materials from "counsel of record in this Proceeding" was required to sign a certification acceding to the protective order. APO/SAPO, ¶6(a). There was no basis for HL (through HL Int'l) to provide Responsive Materials to Herbert Smith (apparently, counsel for HL Int'l in the English malpractice suit filed by Shulman). Similarly, the Destruction Order requires all persons who received Responsive Materials to certify destruction. *Id.*, ¶15; Destruction Order, at 9 (ECF 210). Hornbeam/Shulman provided no certifications themselves; similarly, HL Int'l and Herbert Smith have not done so. The Protective Order requires that "any person permitted to review and maintain Responsive Materials … shall either return or destroy such Responsive Materials … and shall so certify in writing." SAPO, ¶15. Here, HL wrongfully disclosed Responsive Materials containing Kolomoisky and Bogolyubov's personal financial information to HL Int'l *knowing* it was representing PrivatBank in English litigation against them without any notice so that they could prevent its improper use. It disclosed the materials to Herbert Smith for no reason. Such brazen violation of the Protective Orders is sanctionable.[13]

---

[13] *See, e.g., Koch v. Greenberg*, 2011 U.S. Dist. LEXIS 114811, *32-33 (S.D.N.Y. Aug. 16, 2011) (imposing sanctions after "indicat[ing] that it was troubled by the alarming alacrity with which

***Second***, the "mildest" sanction under Rule 37 is "an order to reimburse the opposing party for expenses caused by the failure to cooperate." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979); *Merck Eprova AG v. Gnosis S.P.A.*, 2010 U.S. Dist. LEXIS 38867, *19-22 (S.D.N.Y. Apr. 20, 2010) (same; imposing "less severe" sanctions of a fine and cost-shifting, including payment of attorneys' fees "expended in attempting to compel [defendant] to live up to its discovery obligations"). Here, Symeou should be reimbursed for his attorneys' fees incurred in attempting to enforce the Protective and Destruction Orders since October 2016.

***Third***, Respondents' non-compliance began when Responsive Materials were improperly provided to HL Int'l, presumably in late 2016/early 2017, and continued when they were improperly provided to Herbert Smith. Violation of the Protective and Destruction Orders continues through this filing, with no certifications from Non-Certifying Recipients.

***Fourth***, "in the context of disclosure of confidential information in violation of a Rule 26(c) protective order, the damage is done upon the act of disclosure, and parties and counsel have no absolute entitlement to be 'warned' that they disobey court orders at their peril." *Koch v. Greenberg*, 2011 U.S. Dist. LEXIS 114811, *34-35 (S.D.N.Y. Aug. 16, 2011; *Huebner*, 897 F.3d at 54 (same). In any event, the Protective Orders squarely put Respondents on notice of the consequences from any violations. SAPO, ¶13. Likewise, the Destruction Order made clear Respondents' continuing obligations for compliance with the SAPO.

### 2. This Court Should Impose Sanctions Pursuant to Its Inherent Authority

"[F]ederal courts have well-acknowledged inherent power to levy sanctions in response

---

[plaintiff's] counsel disclosed [confidential] documents to [plaintiff's publicist], and the even greater alacrity with which [the publicist] then disclosed them to the press").

to abusive litigation practices." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998); *see also Carrington v. Graden*, 2020 U.S. Dist. LEXIS 178712, *24-25 (S.D.N.Y. Sep. 28, 2020) (court may "impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs.")  Courts simply require a "finding of bad faith for the imposition of sanctions under the inherent power doctrine." *DLC, supra* (affirming monetary sanctions for needlessly protracting discovery and requiring extensive judicial intervention); *Carrington*, *supra* (awarding monetary sanctions).

*First*, sanctions are "appropriate when counsel disregards a clear and unambiguous court order." *Jianshe Guo v. A Canaan Sushi, Inc.*, 2019 U.S. Dist. LEXIS 59234, *10 (S.D.N.Y. Apr. 5, 2019).  Here, the prohibitions against sharing confidential Responsive Materials can be plainly ascertained from the Protective Orders, which specify the persons with whom the documents can be shared – which does not include HL Int'l, or Herbert Smith (or DOJ/FBI).  Likewise, the Destruction Order contains unambiguous instructions to destroy Responsive Materials and certify same to Symeou's counsel.  As such, the "language [of the orders] could not be more transparent." *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, 2005 U.S. Dist. LEXIS 14790, *17 (S.D.N.Y. May 3, 2005).

*Second*, proof of non-compliance is "clear and convincing" based upon the admissions that HL Int'l and Herbert Smith received Responsive Materials in violation of the Protective Orders.  *See* HL Email, Exh. 3.  The failure to provide required certifications of the Non-Certifying Recipients – especially Shulman and HL Int'l – is indisputable.  *See N.Y. State NOW v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989) ("Since no attempt – much less a diligent one – at compliance has been shown, proof of non-compliance was established by clear and convincing evidence" and "defendants were properly held … liable jointly and severally for the sanctions

subsequently imposed."); *U2 Home*, 2005 U.S. Dist. LEXIS 14790, *17-18 (movant had "not only established clear and convincing noncompliance, but noncompliance beyond any doubt.")

*Third*, Hornbeam/Shulman have not attempted to comply in a reasonable manner, they have not destroyed Responsive Materials and certified same, nor have their counsel (HL and HL Int'l) done the same, which justifies sanctions against all. *See, e.g.*, *Farricker v. Penson Dev., Inc.*, 2010 U.S. Dist. LEXIS 115646, *9 (S.D.N.Y. Oct. 28, 2010) (imposing sanction of attorneys' fees "jointly and severally on both the attorney and the client" for, *inter alia*, failing to file an affidavit attesting to compliance with discovery obligations and later filing one that did not include specific statement required by the court); *see also Sentry Ins. v. Brand Mgmt.*, 2012 U.S. Dist. LEXIS 179626, *20 (E.D.N.Y. Dec. 19, 2012) (finding clients and counsel jointly and severally liable for attorneys' fees where counsel was "well aware of the explicit requirements of th[e] Court's [Order] and failed to substantially justify why he filed a noncompliant affidavit on behalf of his client.")[14]

### 3.   This Court Should Award Attorneys' Fees And Costs to Symeou Due To Respondents' Violations of The Protective And Destruction Orders

Rule 37(b)(2)(C) provides that the court "***must*** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure …." F.R.C.P. 37(b)(2)(C). Further, "[i]n contrast with Rule 37, a court's inherent power to impose sanctions includes the power to impose attorney's fees representing the ***entire*** cost of litigation." *Carrington*, 2020 U.S. Dist. LEXIS 178712, *25 (italicized in original).

---

[14] If HL, HL Int'l, Herbert Smith or others have been uncooperative in this regard, Hornbeam/Shulman did not seek assistance from this Court, thereby rendering the non-compliance to be of their own making. *See, e.g., Skyline Steel, LLC v. Pilepro, LLC*, 2018 U.S. Dist. LEXIS 196005, *5 (S.D.N.Y. Nov. 16, 2018) (defendant "may not cite circumstances of its own creation as a reason it cannot comply with the Court's Order") (granting sanctions).

Given Respondents' willful non-compliance and misconduct, Symeou is entitled to his **entire** costs incurred after October 2016.  *See, e.g., Carrington*, *supra* (awarding fees and costs "fairly traceable" to plaintiff's sanctionable conduct); *Briese Lichttechnik Vertriebs GmbH v. Langton*, 2011 U.S. Dist. LEXIS 6340, *40-41 (S.D.N.Y. Jan. 10, 2011) (awarding expenses and fees, incurred as a result of defendant's misconduct).

**B.   THIS COURT SHOULD SANCTION RESPONDENTS PURSUANT TO ITS INHERENT AUTHORITY FOR THEIR CONCEALMENT AND MISLEADING STATEMENTS TO THE COURT**

"[L]itigants and their lawyers are under a continuing duty to correct or withdraw litigation positions based on matters that subsequently come to their attention."  *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 482 (S.D.N.Y. 2003).  Specifically, "[a]ttorneys are under a continuing duty to correct erroneous filings and the Court may sanction counsel for a bad faith failure to do so pursuant to its inherent power."  *In re Green*, 422 B.R. 469, 475 (Bankr. S.D.N.Y. 2010).[15]  In awarding sanctions, *Travel Sentry* held: "one fact remains unassailable: … attorneys … knew that they were misleading the court (as well as [the parties]), and made no attempt to correct or clarify the false impressions that their statements left."  669 F. Supp. 2d at 287.  Likewise, all Respondents knew and yet not one made any attempt to inform the Court that Shulman had decided not to pursue the BVI litigation in October 2016 – *i.e.*, well before this Court denied Symeou's reconsideration motion (in February 2017), leading to the avertible Second Circuit appeal and numerous other filings, all of which caused Symeou and this Court to unnecessarily expend resources.  Courts have vacated *ex parte* §1782 orders for such misconduct.  *See, e.g., In*

---

[15] *See Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 286 (E.D.N.Y. 2009) (affirming $10,000 fine against law firm; "flagrant and willful nature of the discovery violations, coupled with counsel's deceptive representations to the Court, warrant[ed] an additional deterrent sanction in the nature of a fine" because, "[a]s officers of the court, all attorneys conducting discovery owe the court a heightened duty of candor.")

*re WinNet R CJSC*, 2017 U.S. Dist. LEXIS 56985 (S.D.N.Y. Apr. 13, 2017) (vacating §1782 order because Applicant "was not candid when it made its *ex parte* application" and "did not adequately inform the court of adverse rulings that significantly undermined its application.")

### 1.    This Court Should Sanction Respondents Under Its Inherent Authority

When determining whether to impose sanctions pursuant to inherent power, courts consider: "(i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the injured party; (iii) whether there is a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future." *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F.Supp.2d 378, 394 (S.D.N.Y.2010); *see also Almeciga v. Ctr. For Investigative Reporting, Inc*., 185 F. Supp. 3d 401, 435 (S.D.N.Y. 2016) (same).  These factors all favor sanctions against Respondents.

*First*, the misconduct was intentional.  Respondents deliberately concealed that the BVI proceeding was abandoned in October 2016 and HL was engaged in January 2017 to obtain discovery for use in England.  Thereafter, Respondents, through HL, made numerous filings to obscure this decision.  *See, e.g.,* HL Letter (ECF 77), Hornbeam Opp, to Stay (ECF 93), HL Letter ECF 99, and May 12, 2017 Hearing Trans. (ECF112).  This concealment was deliberate because, at the time, Shulman had instructed HL Int'l to seek an *ex parte* WFO over the assets of Kolomoisky and Bogolyubov and to get it filed originally by December 23, 2016, and later by February/March, 2017.  *See* Shulman SOC, ¶¶88(7)-(10); 89(6), 98(2).[16]

---

[16] *See, e.g., Joint Stock Co. v. Infomir Ltd. Liab. Co*., 2020 U.S. Dist. LEXIS 63099, *29 (S.D.N.Y. Mar. 26, 2020) (affirming sanctions where was "not unreasonable … to consider [counsel] representations to be deliberate, or at a minimum, reckless" where the "statements were made so cavalierly, with so little regard for counsel's duties of candor and diligence, as to rise to the level of bad faith.")

**Second**, the misconduct was highly prejudicial because it concealed critical information, resulting in the Court denying Symeou's motion for reconsideration instead of vacating the 2015 Discovery Order, as occurred in Florida, when Hornbeam/Shulman finally admitted having no intention of pursuing BVI litigation.[17]   Indeed, the Court rejected Symeou's reconsideration motion due to the possibility of a BVI proceeding, *see* Order (ECF 79), resulting in Symeou filing his Second Circuit appeal and to additional filings here.  Thus, considerable additional fees and costs were unnecessarily incurred by Symeou due to Respondents' misconduct.

**Third**, Respondents' misconduct was not isolated.  After initially concealing the BVI proceeding had been abandoned by October 2016 – Respondents allowed this case and related appeal to continue, making misleading statements in numerous court filings as detailed above.

**Finally**, the fourth and fifth factors also weigh heavily in favor of sanctions. Respondents never attempted to correct the record – Symeou only recently learned of it through Shulman's 2020 English malpractice suit – and, in all likelihood, further misconduct will occur in the future as Respondents will deny responsibility for their actions in response to this motion.

> 2. **This Court Should Award Attorneys' Fees And Costs Because, But For Respondents' Omission And Concealment, The Second Circuit Appeal And Later Filings Could Have Been Avoided**

Under the court's inherent powers, a "well-accepted measure of sanctions for bad faith conduct that unnecessarily prolongs a proceeding and multiplies the expense incurred by an adversary is the opposing counsel's attorney's fees and costs." *Homkow v. Musika Records, Inc.*, 2009 U.S. Dist. LEXIS 21537, *12-13 (S.D.N.Y. Mar. 17, 2009); *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 461 (S.D.N.Y. 2002) (imposing monetary sanction based on inherent authority); *Chambers*, 501 U.S. at 45-46 ("Included in a court's inherent

---

[17] This is precisely what happened in a sister proceeding in Florida.  *See supra* f.n.7.

power is the ability to assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.")  "The party damaged by the conduct warranting sanctions should be made whole for the harm it has suffered." *City of Almaty v. Ablyazov*, 2018 U.S. Dist. LEXIS 35920, \*20-22 (S.D.N.Y. Mar. 5, 2018) (ordering payment of "attorneys' fees and costs incurred in connection with the sanctions motion, evidentiary hearing, and subsequent briefing"). As the Supreme Court has made clear, a party can recover "fees that party would not have incurred but for the bad faith."  *Goodyear*, 137 S. Ct. at 1184-89.

This Court should award attorney's fees to compensate Symeou for costs incurred after October 2016 for filings in this proceeding and related appeal following Respondents' misconduct.[18]  *See, e.g.*, *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 623 (2d Cir. 2018) (affirming Judge Broderick's "$2.7 million monetary sanction to compensate [plaintiff] for its corrective discovery efforts and a corresponding asset restraint in that amount … and an additional $2.3 million bond to preserve [plaintiff]'s ability to recover damages and fees at the end of the case"); *Homkow*, 2009 U.S. Dist. LEXIS 21537, \*12-13 (granting sanctions motion and requiring defendants to pay $35,895.46 in attorneys' fees and costs); *SEC v. Smith*, 798 F. Supp. 2d 412, 442 (N.D.N.Y. 2011) (awarding sanctions of $51,232 in attorneys' fees and costs); *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1486 (S.D.N.Y. 1986) (imposing attorneys' fees and costs and a punitive sanction of $10,000 on attorney for an array of offenses).

### 3.   This Court Should Sanction Counsel HL Pursuant To 28 U.S.C. §1927 For Its Misconduct

---

[18] Further, this Court should find that Shulman and Hornbeam are jointly responsible for their counsels' conduct because they were their agents.  *See, e.g., Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 471 (S.D.N.Y. 1999) (noting that a "principal becomes responsible for the agent's acts within the scope of the bestowed authority").  Apart from agency liability, discovery will be needed to ascertain the full extent of each individual Respondent's involvement in the misconduct.

Sanctions under 28 U.S.C. §1927 are proper when the "actions were entirely without color and were taken to harass, delay the proceedings, or for otherwise inappropriate reasons." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 362 (S.D.N.Y. 2006). The "award of sanctions under the court's inherent powers and under §1927 essentially overlap, as the bad faith conduct that is necessary for a proper award of §1927 sanctions is the same bad faith conduct that justifies an award of sanctions under the court's inherent powers." *Id.*, at 363. Thus, "[f]or all practical purposes, the standard for awarding costs and fees under the court's inherent power is the same for awarding attorney's fees under 28 U.S.C. §1927." *Id.*, at 367 (granting $65,760.50 in attorneys' fees and costs under §1927 and the Court's inherent power). "The only distinction between an award made under [§]1927 and one made pursuant to the court's inherent power is that [§]1927 applies only to attorneys, while the court's inherent power allows the court to assign liability to an attorney, a party, or both." *Rabin v. Dow Jones & Co.*, 2015 U.S. Dist. LEXIS 101967, *4, *10-13 (S.D.N.Y. July 30, 2015) (awarding all fees and costs as of date of amended complaint where, *inter alia*, "plaintiff withheld relevant evidence from defendant throughout th[e] litigation, [thereby] suggesting that [plaintiff and his counsel] sought to 'suppress the truth' underlying the viability of their action").

Courts have found that "subjective bad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Rabin*, 2015 U.S. Dist. LEXIS 101967, *6. In this case, as of January 2017, HL knew it was engaged to obtain discovery for use in England and knew that the BVI proceeding had been abandoned; yet, HL continued to make numerous filings in this Court and in the related appeal. The actions of HL were entirely without color and, it can be inferred, made in bad faith, motivated by the improper purpose of obscuring the decision to abandon BVI and,

22

instead, obtain Responsive Materials for use in England (as discussed above).  Accordingly, this Court should sanction HL pursuant to §1927.  *See Certain Underwriting Members of Lloyds v. Ins. Co. of the Ams.*, 2019 U.S. Dist. LEXIS 165702, *10 n.5 (S.D.N.Y. Sep. 25, 2019) (Broderick, J.) (awarding attorney fees under 28 U.S.C. §1927).

### C.    THIS COURT SHOULD AUTHORIZE LIMITED DISCOVERY TO INVESTIGATE RESPONDENTS' MISCONDUCT

It is well-established that courts have "the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Chambers*, 501 U.S. at 44; *see also Passilogix*, 708 F.Supp.2d at 394 (holding evidentiary hearing on, *inter alia*, fraud on the court, noting "Court's inherent powers serve to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants."); *Jung v. Neschis*, 2009 U.S. Dist. LEXIS 126950, *40 (S.D.N.Y. Mar. 6, 2009) (holding evidentiary hearing on litigation misconduct, noting inherent authority is often the "primary basis" for sanctions where a party or its counsel has made misrepresentations to the court) (collecting cases).  Courts allow discovery to prosecute litigation misconduct.  *See, e.g.*, *Travel Sentry, Inc. v. Tropp*, 2008 U.S. Dist. LEXIS 39697, *6, *22 (E.D.N.Y. May 15, 2008) (affirming ruling that "granted … additional discovery warranted by … recently revealed [sanctionable] information, and required … reimburse[ment] [of defendant's] reasonable expenses in conducting that discovery and in litigating his motion for sanctions"); *TAS Int'l Travel Serv. v. PanAm*, 1983 U.S. Dist. LEXIS 19964, *2-3 (S.D.N.Y. Jan. 18, 1983) (granting discovery in support of Rule 60(b) motion to vacate judgment, noting it would be "anomalous to hold that a court … [is] without power to obtain the complete factual record relating to the motion [before it] … by ordering discovery when an adequate threshold showing has been made"); *Connecticut v. U.S.*, 1998 U.S. Dist. LEXIS 15984, *10 (D. Conn. Sep. 8, 1998) (allowing additional limited discovery on Rule 60(b)

reconsideration motion); *Olin Corp. v. Chase Brass & Copper Co.*, 1982 U.S. Dist. LEXIS 18347, \*25-26 (D. Conn. Oct. 4, 1982) (plaintiff "should be permitted to depose [defendant's witnesses], and to conduct additional limited discovery, with all appropriate fees, costs and expenses being borne by the offending defendants" to support sanctions).

Symeou only learned of the BVI proceeding having been abandoned in October 2016 due to: (i) the recent disclosure in Shulman's 2020 English malpractice claim; and (ii) the 2020 HL email that HL Int'l and Herbert Smith received Responsive Materials in violation of the Protective Orders (and despite Shulman being denied permission to use Responsive Materials in the English Proceedings).  Moreover, it is suspected that Shulman (or someone acting on his behalf) disclosed Responsive Materials to the FBI and/or DOJ.  Accordingly:

*First*, Shulman should be ordered, consistent with the Notice of Deposition *Duces Tecum* (Exh. 8), to testify and produce documents, regarding (1) engagement letters for Hornbeam Corp., Bracha Foundation, and Shulman with HL, HL Int'l, Murphy & McGonigle PC and those firms engaged for Shulman's Delaware Action; (2) persons that accessed or received Responsive Materials, including persons at HL, HL Int'l, Herbert Smith, and the DOJ/FBI; (3) certification of destruction by the Non-Certifying Recipients; (4) legal counsel and consultants that after October 2016 worked on preparing Hornbeam's claims for the BVI Proceeding, including documents prepared for the BVI Proceeding and related billing records, including but not limited to from HL and HL Int'l; and, (5) the same HL and/or HL Int'l attorneys worked on both the English Litigation and the PrivatBank Action.  Symeou requests 14 hours for Shulman's deposition to accommodate the need for participation of translators.

*Second*, HL should be ordered, consistent with the Notice of Rule 30(b)(6) Deposition *Duces Tecum* (Exh. 9), to testify and produce documents, regarding (1) each person that accessed

or received Responsive Materials, including persons at HL Int'l and Herbert Smith, dates and reasons Responsive Materials were accessed or received, how Responsive Materials were stored, who provided access, and the failure to certify destruction of Responsive Materials by HL Int'l and Herbert Smith; (2) HL, HL Int'l, and consultants who worked on preparing Hornbeam's claims for the BVI Proceeding, documents prepared for the BVI Proceeding, billing records from HL and HL Int'l for any work performed for the BVI Proceeding, and documents evidencing accessing, receiving and/or reviewing Responsive Materials after October 2016; (3) policies and procedures for how HL and HL Int'l stored, managed and maintained Responsive Materials, including location of storage (*e.g.*, offices, clouds, networks, servers, file paths), limitations on access and record retention and destruction; (4) a log report showing the dates/times that any Responsive Materials were accessed by any HL or HL Int'l attorneys, time-keepers and other employees; and (5) engagement letters of Bracha Foundation, Hornbeam Corp., and Shulman with HL and HL Int'l.

## **CONCLUSION**

For the foregoing reasons, the Court should: (i) grant this Motion, (ii) allow targeted discovery; and (iii) award attorneys' fees and costs against Respondents upon completion of discovery and submission of Symeou's fees application.

Dated: November 12, 2020

| | |
|---|---|
| **REED SMITH LLP** | **MARKS & SOKOLOV, LLC** |
| By: /s/ Steven Cooper | By: /s/ Bruce S. Marks |
| Steven Cooper | Bruce S. Marks |
| Samuel Kadosh | Thomas C. Sullivan |
| 599 Lexington Avenue | 1835 Market Street, 17th Floor |
| New York, New York 10022 | Philadelphia, PA 19103 |
| Telephone: (212) 521-5400 | Telephone: (215) 569-8901 |
| scooper@reedsmith.com | marks@mslegal.com |
| skadosh@reedsmith.com | Tsullivan@mslegal.com |