1                   UNITED STATES COURT OF APPEALS
                      FOR THE SECOND CIRCUIT
2
       ------------------------------------------------------
3
       IN RE:  APPLICATION OF          :
4      HORNBEAM CORPORATION             :
                                        :
5      - - - - - - - - - - - - - - - x
                                        :
6      PANIKOS SYMEOU,                  :
                                        :
7            Intervenor-Appellant       :
                                        :    NO. 17-658
8                  vs.                  :
                                        :
9      HORNBEAM CORPORATION,            :
                                        :
10                       Appellee       :

11     ------------------------------------------------------

12                     Transcript of audio of the hearing

13     before the United States Court of Appeals for the

14     Second Circuit, in the above matter, held at the

15     United States Courthouse, Foley Square, in the City

16     of New York, on Thursday, January 4, 2018.

17                           - - - - -

18     PRESENT:

19                    JOHN M. WALKER, JR.,
                      REENA RAGGI,
20                    RAYMOND J. LOHIER, JR.,

21                                        Circuit Judges

22     Manchello Reporting, L.L.C.
       Certified Court Reporters
23     (856) 482-7207
       www.manchelloreporting.com
24     Job No. 58391


                      Manchello Reporting, L.L.C.
                           856-482-7207

```
 1    A P P E A R A N C E S:

 2                    MARKS & SOKOLOV, LLC
                      BY:  BRUCE S. MARKS, ESQUIRE
 3                       11 Penn Center - 28th Floor
                         1835 Market Street
 4                       Philadelphia, Pennsylvania   19103

 5                        Counsel for Appellant

 6                    HOGAN LOVELLS US, LLP
                      BY:  DENNIS H. TRACEY, III, ESQUIRE
 7                       875 Third Avenue
                         New York, New York  10022
 8
                          Counsel for the Appellee
 9
                            - - - - -
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1                    THE COURT:  All right, then, the

2          first case is In Re:  Application of

3          Hornbeam Corp., Symeou vs. Hornbeam

4          Corporation.

5                    Thank you.

6                    MR. MARKS:  May I begin, Your

7          Honor?

8                    MR. TRACEY:  Yes, please.

9                    MR. MARKS:  I'm Bruce Marks.  I

10         reserve two minutes for rebuttal.

11                   Your Honor, the twin aims of

12         Section 1782 were to provide efficient

13         means of assistance to participants in

14         international litigation, to encourage

15         foreign countries to provide such

16         assistance to our courts.

17                   I'd suggest that congress in

18         foreign countries would not consider what

19         occurred in this case to be effective or

20         worthy of encouragement.

21                   Let me suggest six things which

22         happened.

23                   One, here, an American court

24         held an ex parte hearing, without any

```
1              reason, heard one-sided argument from

2              Hornbeam; never asked why the adverse

3              parties were not notified, never asked

4              what they would have said if they had been

5              there, and adopted almost verbatim

6              Hornbeam's proposal order --

7                        THE COURT:  Is the issue of

8              whether a 1792 application could be filed

9              ex parte is moot?

10                       MR. MARKS:  No, it's not moot.

11                       THE COURT:  Why not?

12                       MR. MARKS:  And I'll tell you

13             why.

14                       THE COURT:  There is a response

15             to the arguments in their briefs about

16             that.

17                       MR. MARKS:  Yes, sure.  This

18             case is different than the other cases

19             that held in dicta that there was a

20             practice to decide these ex parte.  This

21             case is different for three reasons, and

22             they are described in our brief.

23                       We suffered harm.  They got

24             ex parte discovery, took discovery, and
```

1          got extensive bank records, containing

2          confidential information, without any

3          notice at all, because this was ex parte,

4          and they possessed them for over five

5          months before we learned about it.

6                    Number two --

7                    THE COURT:  How are you

8          prejudiced by that?

9                    MR. MARKS:  Your Honor, they had

10         our records for five months, containing

11         personal information about Symeou and the

12         companies.  They could be do anything

13         without -- anything that they wanted with

14         them.  They could have given them to the

15         New York Times.  There was no protective

16         order.  I don't think there's any --

17                   THE COURT:  How are you actually

18         prejudiced?  Apart from what they could be

19         or what they might have done, how are you

20         actually prejudiced?

21                   You had the chance to come back

22         make your motion and litigate this matter.

23                   MR. MARKS:  We are prejudiced by

24         the mere fact, Your Honor, that they had

```
1              them for five months, we didn't know about
2              it; there was no protective order in
3              place, and they used that information in
4              the Ohio state court.
5                    There's an affidavit from their
6              attorney that they took that information,
7              they used it in the Ohio state court, and
8              we know ultimately when we got in this
9              case the court entered a protective order
10             and only allowed that information to be
11             used in the BVI.
12                   So there was clear prejudice by
13             them using information that we never knew
14             that they had, in a domestic proceeding in
15             the United States, when we all know that
16             1782 -- right? -- is designed for aid
17             outside the --
18                   THE COURT:  What is to
19             preclude --
20                   THE COURT:  What is the status
21             of the Ohio action?
22                   MR. MARKS:  Excuse me?
23                   THE COURT:  What's the current
24             status of the Ohio action?
```

1           MR. MARKS:  It was dismissed in
2           part for forum non conveniens, that they
3           should be refile in the BVI.  The
4           dismissal was affirmed, and here we are
5           three --
6           THE COURT:  So I go back to my
7           original question, in terms of actual
8           prejudice.
9           MR. MARKS:  Your Honor, in terms
10           of actual prejudice, as I say, they had
11           our information for five months without us
12           knowing about it.  They used it in a BVI.
13           And we don't really know what they did
14           with it.
15           The principal of the other side,
16           Hornbeam, has it.  The fact is that they
17           haven't filed any litigation, so it would
18           appear they haven't used it in litigation,
19           but nobody wants their adversary, who is
20           involved in competing businesses, to have
21           information to which they are not entitled
22           for a long period of time.
23           So that is a --
24           THE COURT:  Why is it the

1                     appropriate remedy, as I understand it,

2                     that you are seeking is a vacatur of the

3                     ex parte order since Judge Broderick here,

4                     as I understand it, said it would have

5                     granted Hornbeam's application even if you

6                     participated in the initial hearing?

7                           MR. MARKS:  Well, let me say

8                     this about that.  If something does

9                     something improperly, if you are not

10                    entitled to get something ex parte, there

11                    should be a remedy for that.  Because if

12                    there is no remedy, if you just say "Well,

13                    I would have done that anyhow," then there

14                    is no sanction for doing things ex --

15                          THE COURT:  The law doesn't

16                    operate that way.  There are all sorts of

17                    circumstances, even in the criminal

18                    context, where something shouldn't have

19                    happened the way it did, but if it would

20                    have happened properly in any event, the

21                    law tolerates it.

22                          So here you had a judge grant a

23                    protective order.  We're talking about

24                    what actual prejudice there was, and I

1           haven't heard any identified.  So in that

2           sense, the remedy you are seeking seems to

3           be excessive.

4                     What am I missing?

5                     MR. MARKS:  Your Honor, we're

6           seeking different remedies.  One of the

7           remedies that we suggested, at a minimum,

8           the court should order them to destroy the

9           records.  They have nothing to do with the

10          dispute over Warren Steel.  They have bank

11          records of our clients, have nothing to do

12          with the dispute.

13                    If their claim is that there

14          were improper transactions with

15          Warren Steel or Halliwell, then give them

16          those bank records.  That's what the judge

17          in Alabama did.

18                    Let's not forget.  Every judge

19          who entered an ex parte order, who then

20          heard our side, changed the order.  In

21          Ohio the judge stayed the discovery before

22          they could serve subpoenas.

23                    In Alabama, and this is the very

24          important, once the judge there heard us,

1       she said, "You know what?  I'm only going

2       to give them the bank records of

3       Warren Steel and Halliwell.  You don't get

4       the bank records of the individuals.  You

5       don't get the bank records of the related

6       companies."

7               That's really the most important

8       prejudice that we have suffered, because

9       they are not entitled to it.

10               Let them have the bank records

11      of Warren Steel.  Let them have the bank

12      records of Halliwell.  But as a means of

13      addressing what happened, whether it's a

14      sanction or whether because the discovery

15      was too intrusive, too overly broad, that

16      is the most important thing that we're

17      asking the court to do, make them destroy,

18      give back the bank records that have

19      nothing to do with the companies of which

20      they have an interest.

21               And there's other grounds Your

22      Honor can do that.  But, admittedly, they

23      didn't fulfill their duty of disclosure.

24               You asked me, "Well, what should

 1          you do about that?"  You're going to say,

 2          well, there was no prejudice because it

 3          would have decided that anyhow.  That's

 4          not right.

 5                    If you have a duty of

 6          disclosure, and you admittedly violate it,

 7          the judge held, well, you know, you can't

 8          sanction the party.  That's just simply

 9          wrong.  The Supreme Court has said if the

10          attorney does something wrong, you can

11          sanction the party.

12                    We all know under Rule 45, if

13          you issue subpoenas without notice, and

14          that's what happened here --

15                    THE COURT:  Can you identify a

16          case where we've vacated a 1782 order for

17          something other than the failure to

18          satisfy?

19                    MR. MARKS:  No, Your Honor, I

20          can't, because this is the first time that

21          I am aware of in this circuit where there

22          was clearly a violation of duty of

23          disclosure.

24                    The judge found that.  The judge

1          said that there were clearly things that

2          should have been told to me that weren't.

3                    We know that from Ohio, Your

4          Honor, because when the judge there

5          learned that they couldn't bring new BVI

6          proceedings until they paid the $800,000

7          judgment, she immediately stayed the case

8          until they did it.  They never did.  And

9          that was wrong, too.

10                   There's a BVI policy that you

11         can't bring a new case until you pay your

12         judgment from the old one.  The judge

13         should have never given the discovery in

14         the first place.  And that's what happened

15         in Ohio.

16                   What she said, "You know what,

17         they haven't paid the judgment?"  You

18         know, we all know under the discretionary

19         factors of 1782, one reason not to give

20         discovery is because it violates the

21         public policy of either the United States

22         or another country.  They couldn't use the

23         records in the BVI, because the court

24         wouldn't have allowed the new proceeding

1          to go forward.

2                    THE COURT:  Until they paid the

3          fine.

4                    MR. MARKS:  Yes, and they

5          didn't.

6                    THE COURT:  But we don't know

7          that they wouldn't.

8                    MR. MARKS:  Well, the judge

9          said, "Give me a break" in Ohio.  She said

10         it's so small, if he's so rich, he would

11         have paid the fine, but he didn't.  We

12         actually know what happened.

13                   The only reason that he paid the

14         fine is we brought execution proceedings

15         in the BVI against the shares, and they

16         ultimately had to pay the fine, or else we

17         would have taken the shares, and then

18         Hornbeam would have had no interest in

19         Halliwell.

20                   But, Your Honor, the other issue

21         on the issue of sanctions and prejudice,

22         and Rule 45 we know the cases are legion;

23         if you serve subpoenas without notice,

24         which is what happened here, and then you

1          get discovery, which is what happened

2          here, one of the sanctions that they give,

3          even if the court would have said that

4          subpoena is fine, they say you can't use

5          the discovery, but where we're focused on

6          here, Your Honor, is the records that

7          don't have to do with Halliwell and

8          Warren Steel.  They should have never

9          received those records.  It's intrusive.

10         It's overly broad.  They are not related

11         to their dispute.

12              They haven't even filed a case,

13         anyhow.  So if they violated the duty of

14         disclosure, if they served subpoenas

15         without notice, or if you just find

16         independently, which you can do, that the

17         discovery was too intrusive, at the end of

18         day, that is the remedy that we are

19         seeking.

20              Thank you, Judge.

21              MR. TRACEY:  Dennis Tracey for

22         Hornbeam.

23              Your Honors, this discovery

24         order, and similar ones, have been issued

1          by five different federal courts around

2          the country and reviewed extensively by

3          them on motions by Mr. Symeou, and in all

4          five cases the order was issued.

5                    Indeed, it's been reviewed by

6          the 11th Circuit.  The 11th Circuit has

7          considered virtually all of the arguments

8          that are being made here, including the

9          argument about issuance ex parte, and has

10         upheld the discovery order.  It's clearly

11         a proper order under 1782.  This court has

12         held numerous times, as has every other

13         court that's considered it, that these

14         proceedings may be done ex parte, is

15         commonplace, and it is appropriate.

16                    The --

17                    THE COURT:  Mr. Marks is asking

18         for a very limited remedy, which is to

19         destroy the bank records that have nothing

20         to do with Halliwell or Warren Steel, and

21         I take it that your response is going to

22         be that all of these documents at least

23         will shed light on the alleged fraudulent

24         scheme, right?

1                    MR. TRACEY:  Your Honor, this

2          issue of the breadth of discovery, I would

3          break it down into two pieces, perhaps.

4          The first is, whether the actual -- there

5          were certain documents that were produced

6          by the banks that were erroneously

7          produced.  In other words, they were

8          related to other parties, had nothing to

9          do with this party.  So those are, you

10         know, not relevant to this case.  We don't

11         care about them.  They are never going to

12         be used.  They are subject to a protective

13         order, so they can never be disclosed to

14         anybody or used in any proceeding.

15                    The complaint that has been

16         raised by Mr. Symeou is that the documents

17         that the court authorized be produced is

18         overbroad, and we don't believe they are

19         overbroad.  This has been raised numerous

20         times by Mr. Symeou.  The district court

21         has specifically addressed the issue.

22                    Originally during the ex parte

23         proceedings, the court looked at the scope

24         of discovery and said, "You know what?

1          This is too broad.  I'm not going to allow

2          this," and required the applicant to

3          revise the discovery request to make it

4          more narrow.  The judge approved it on

5          that basis.

6                And then when Mr. Symeou

7          objected to the scope of discovery, the

8          court took that very seriously, had

9          several hearings on whether the scope of

10         discovery was appropriate, and properly

11         found, and this is vested in his

12         discretion, that those documents were

13         relevant to the issues that were at issue

14         in the potential foreign proceedings, and

15         we strongly, strongly agree with that and

16         believe that the record strongly supports

17         it.

18                I would point out, also, that

19         the judge was very careful to respect the

20         essential rights of the foreign parties.

21         A very extensive protective order was

22         entered.

23                These documents cannot be, as

24         was said, given to the New York Times.

1          They can't be used in any way.  They can't

2          be disclosed.  And they actually can't be

3          used in any proceeding, except the BVI

4          proceeding.

5                    So the court has exercised its

6          discretion in a very careful way after

7          multiple requests to address this issue.

8                    THE COURT:  What is the status

9          of the deadline for the BVI proceeding?

10                   MR. TRACEY:  Under the

11         protective order the court has given us

12         until May of 2018 to either file the BVI

13         proceeding or destroy the documents.

14                   That deadline can be extended if

15         we apply to the court and request an

16         extension, and I can't predict whether

17         that's going to happen, but Hornbeam is

18         attempting to gather documents, not just

19         in New York, but in other jurisdictions,

20         including Florida, which is a very

21         important place for the documents in this

22         case, and because of multiple proceedings

23         that we've had in Florida, we have not yet

24         gotten any documents there.  So we're

1           still working to collect the documents in

2           order to file a case.

3                   In the meantime, we filed a case

4           in the English courts, which was one of

5           the other jurisdictions or one of the

6           other cases that this application was

7           based on.

8                   I will just briefly address the

9           issue of the BVI judgment.  As the court

10          below properly held, this is a very large

11          case, with a very large amount of money at

12          stake, tens of millions, if not hundreds

13          of millions, of dollars, between two very

14          well-off or three very well-off parties.

15          And in the BVI there was essentially a

16          cost assessment under BVI law of $846,000.

17                  It's not entirely clear whether

18          that would have to be paid before a BVI

19          case can be filed, but it was paid, and

20          there is -- it would be very hard to

21          imagine that a party would walk away from

22          a tens or hundreds of millions of dollars

23          case just because they had to pay a cost

24          assessment in a prior BVI action.

1              So the district court in this

2       case, as well as other cases, have

3       considered this issue and determined, in

4       their discretion, it's a discretionary

5       issue, that the existence of that cost

6       order would not preclude Hornbeam from

7       filing a foreign proceeding.

8              And I'll just, in terms of the

9       Rule 45 issue, as we've noted, that issue

10      is completely moot.  The parties have had

11      full opportunity to object to it, but I

12      would point out that there is no

13      requirement in Rule 45 to notify potential

14      adverse foreign parties.

15             Rule 45 requires the prior

16      notice to a party, and it's very different

17      from Rule 27, which if you are going to

18      try to take a deposition of a potential

19      party, there is a requirement,

20      specifically in Rule 27, to notify that

21      potential foreign party.  That does not

22      exist in --

23             THE COURT:  Why isn't this one

24      of those cases where the issue, the

1          ex parte issue, is capable of a petition

2          to get a date of review?

3                    MR. TRACEY:  In the sense that

4          a, that a party might be able to --

5                    THE COURT:  They're really

6          criticizing the ex parte nature of the

7          matter, and you're saying no, no, it's

8          moot, because they subsequently had an

9          opportunity to duke it out, for lack of a

10         better term, and to participate, but why

11         isn't this issue of whether it's

12         appropriate to proceed ex parte one of

13         those issues that might evade a review?

14                   MR. TRACEY:  There have been

15         many, many cases, Your Honor, involving

16         ex parte proceedings.  Of course, the

17         courts have consistently held that

18         ex parte proceedings are appropriate.  The

19         real --

20                   THE COURT:  You are making

21         argument about (inaudible).

22                   MR. TRACEY:  Yes.

23                   THE COURT:  That goes to our

24         jurisdiction.  So I'm interested.

1              MR. TRACEY:  It's an interesting

2         question, Your Honor.  It potentially

3         could evade review.  It would be

4         reviewable in the event that a subpoena

5         was issued, and I guess there was no,

6         there was no review, and the party then

7         comes in later.

8              THE COURT:  So it might not be

9         moot?

10             MR. TRACEY:  It might not be

11        moot in other cases.

12             THE COURT:  (Inaudible) the

13        district court found that you violated the

14        rule.

15             MR. TRACEY:  The district court

16        found that there was no case on point, but

17        that, if you looked at the overall

18        structure of discovery under the Federal

19        Rules of Civil Procedure, he acknowledged

20        that there was no case that held it and no

21        rule that held it, but he thought it was

22        the right, the right way to go.

23             THE COURT:  And you have not --

24        I mean, you're arguing with us today that

1          you were under no (inaudible) but you

2          didn't appeal that part of the ruling.

3               I mean, what the district court

4          ultimately did was it declined to vacate

5          or cost, saying that Symeou wasn't

6          prejudiced from the lack of notice, but I

7          don't know how you argue to us that you

8          were under no notice obligation when you

9          haven't appealed that ruling.

10              I mean, you can defend the

11         decision that there was no prejudice, but

12         I'm not sure you can argue that, you can

13         challenge the ruling of the district court

14         now.

15              MR. TRACEY:  I accept that, Your

16         Honor.  The court did hold that there was

17         no prior guidance on that, and so --

18              THE COURT:  I just want to be

19         clear as to what you're asking us now, to

20         say that there is no obligation to give

21         notice in a circumstance such as this, and

22         I don't see why we should do that when you

23         didn't appeal the ruling.

24              MR. TRACEY:  I agree with that,

1          Your Honor.

2                    THE COURT:  All right.  But I

3          understand, I took your point to be that

4          that kind of explained why what happened

5          happened.

6                    MR. TRACEY:  Exactly, Your

7          Honor.  At the time that this application

8          was made and the subpoenas were issued,

9          there was no guidance on this, and so to

10         ask for sanctions against the party who

11         acted based on violation of a rule that

12         didn't exist would be inappropriate.

13                   THE COURT:  Thank you.

14                   MR. TRACEY:  Thank you, Your

15         Honor.

16                   THE COURT:  Mr. Marks, I think

17         you reserved two minutes?

18                   MR. MARKS:  Is this yours or

19         mine?  Thanks.

20                   Judge, yes.  Judge Lohier, it's

21         not moot.  The court should address the

22         issue of ex parte.  It happens.  It's

23         happening all the time.  I don't want to

24         argue it in detail.  It's in our briefs.

1          In this case it violated a local rule of

2          the Southern District of New York, and

3          there is also a judicial cannon on point

4          regarding ex parte communications.

5               We think it's a serious issue,

6          not just because of us, because, as the

7          court in the Ninth Circuit said, we cite

8          in our brief, ex parte proceedings are

9          anathema to our system.

10              I will let Your Honors decide

11         that issue on the briefs, but we think

12         it's an important issue substantively in

13         this circuit.

14              Next, every judge, there was

15         somebody who just spoke here, ever judge

16         who has heard our side, Florida, Alabama,

17         Ohio, changed their position once they

18         heard our side.

19              In Florida the court stayed the

20         discovery.  We still haven't had a hearing

21         on the motion to vacate, but the subpoenas

22         have never been allowed to be served.

23              In Alabama the court did exactly

24         what I said that she did; she narrowed the

1          scope of the subpoenas to only the

2          Warren Steel and the Halliwell records.

3          That's the only thing that the

4          11th Circuit affirmed.

5                    In Ohio the court stayed the

6          discovery because she concluded that if

7          they hadn't paid the BVI judgment, which

8          they never did voluntarily, Your Honor,

9          that proceedings were within reasonable

10         contemplation.

11                   They still haven't served the

12         discovery in Delaware.

13                   I mean, they say that we're the

14         reasons that there's delay?  They didn't

15         serve the subpoenas in Florida for a year

16         and a half.  They didn't serve the

17         subpoenas in Ohio for a year and a half,

18         and here we are three years later, after

19         they got subpoenas in Delaware, they

20         weren't served; and they had subpoenas in

21         this district against two accounting firms

22         and a law firm, for which the principals,

23         our principals, were clients, they didn't

24         serve subpoenas on them because they knew

1          that those companies would have

2          immediately notified our clients that

3          there was an ex parte order.  We only

4          learned about this through the media.

5               THE COURT:  Sounds to me like

6          you are making the argument that you will

7          make in May of 2018 when they seek an

8          extension, that they haven't been -- they

9          have been dilatory.

10              MR. MARKS:  Well, Your Honor, we

11         don't believe on this record that new

12         proceedings are within reasonable

13         contemplation at all, and that's what the

14         court in Ohio concluded, one she stated,

15         because they didn't pay the BVI judgment,

16         and there was absolutely no rationale for

17         them not to have paid it if they wanted to

18         get the discovery, because they couldn't

19         use the discovery in the BVI.

20              Let me add a point on the issue

21         of disclosure.  There is a duty of

22         disclosure; they violated it.  The Pioneer

23         case, Supreme Court, in our brief, that's

24         where the client was sanctioned because of

```
 1              the conduct of the attorneys.

 2                      Let's talk about the notice

 3              under Rule 45.  It's really a ridiculous

 4              point.  Of course, there had to be notice.

 5              Gushlak, and, Your Honor, you were on a

 6              case, I believe, where you cited Gushlak,

 7              and said, "Well, this is the practice to

 8              do it ex parte for 1782."  Why did Gushlak

 9              come to that conclusion?  It said because

10              you would get notice so that you could

11              challenge the subpoenas.  They cited that

12              case in their brief in order to get the

13              ex parte order.

14                      How in the world could we have

15              gotten notice to challenge the subpoenas

16              if they didn't provide them to us?

17                      Any experienced practitioner --

18                      THE COURT:  I understand that

19              the one failure, in your mind, aggravates

20              the other, but, you know, at a certain

21              level we take them apart, and I understand

22              why that might support the notice

23              argument --

24                      MR. MARKS:  Rule 45.
```

1                    THE COURT:  -- or that that

2          warrants us saying the ex parte order --

3          revisiting the ex parte orders part.

4                    MR. MARKS:  Absolutely two

5          different issues, Your Honor.

6                    One is the issue, do you have a

7          duty of disclosure in an ex parte

8          proceeding?  And if you violate it, what's

9          the sanction?  At a minimum the sanction

10         ought to be that they destroy the

11         unrelated records.

12                   Second, Rule 45, separate issue,

13         absolutely.  Okay?  They had a duty to

14         serve the subpoenas on this.  What's the

15         sanction?  And there's cases, we cite them

16         in our brief, you know, where here there's

17         actual harm, because they got the records,

18         the sanction at a minimum ought to have

19         been that they had to destroy the

20         unrelated records.

21                   Let me just add one other point,

22         Your Honor, to the question that you

23         asked.

24                   THE COURT:  I would ask that you

1              do it quickly.

2                        MR. MARKS:  Okay.  On prejudice,

3              the other prejudice we suffered is we

4              couldn't seek a stay of the order before

5              the discovery was issued.

6                        We got a stay from the

7              11th Circuit.  Even if Judge Broderick

8              disagreed with us, okay, if we had had

9              notice, and we would have litigated it,

10             and he would have entered the order before

11             the subpoenas were served, or at least

12             before the discovery was issued, it's a

13             final order, that's what happened in the

14             11th Circuit; we appealed it, we went to

15             the 11th Circuit, and we got a stay.  That

16             right was stripped from us because it was

17             an ex parte proceeding that we never got

18             notice of.

19                        Thank you.

20                        THE COURT:  Thank you both very

21             much.  We will take the matter under

22             advisement.

23                        (Audio transcription concluded.)

24                             - - - - -

1                    I, LOUIS A. MANCHELLO, Certified

2     Court Reporter (N. J. License No. XI01418), do

3     hereby certify that this audio media was transcribed

4     by me, to the best of my knowledge and ability, for

5     the convenience of the reader.  Please refer to the

6     original format in which the statements were

7     obtained for accuracy.

8

9

10                              _____

                              Louis A. Manchello
11                              Certified Court Reporter
                              (N.J. License No. XI01418)
12
      Date:  January 24, 2018
13

14                    (This certification does not apply to

15               any reproduction of this transcript, unless

16               under the direct supervision of the

17               certifying reporter.)

18

19

20

21

22

23

24

                     Manchello Reporting, L.L.C.
                          856-482-7207