UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                    :
IN RE:                                              :                    14-MC-424
                                                    :
APPLICATION OF HORNBEAM CORP.       :              **OPINION & ORDER**
                                                    :
---------------------------------------------------------X

Katie Townsend
The Reporters Committee for Freedom of the Press
Washington, D.C.
*Counsel for Buzzfeed, Inc.*

Tucker H. Byrd, Esq.
Byrd Campbell, P.A.
Winter Park, Florida
*Counsel for Applicant Hornbeam Corporation*

Henry L. Saurborn, Esq.
Kaiser Saurbon & Mair, P.C.
New York, New York
*Counsel for Applicant Hornbeam Corporation*

Bruce S. Marks
Thomas C. Sullivan
Marks & Sokolov, LLC
Philadelphia, Pennsylvania
*Counsel for Intervenor Panikos Symeou*

Steven Cooper
Samuel Kadosh
Reed Smith LLP
New York, New York
*Counsel for Intervenor Panikos Symeou*

Dennis H. Tracey, III
David R. Michaeli
Hogan Lovells US LLP
*Counsel for Hogan Lovells US LLP*

VERNON S. BRODERICK, United States District Judge:

Pending before me are the motion to intervene and unseal judicial documents filed by nonparty Buzzfeed, Inc. ("Buzzfeed"), and the motion for sanctions, which includes requests for discovery and for attorneys' fees, filed by Intervenor Panikos Symeou ("Symeou"). Because I find that the documents in question are judicial documents to which a presumption of public access attaches, and because Symeou has not met his burden of demonstrating the need for maintaining these documents under seal, Buzzfeed's motion is GRANTED in the manner explained *infra*. Further, for the reasons explained herein, Symeou's motion for sanctions is DENIED.[1]

## I.    Buzzfeed's Motion to Intervene and Unseal

As an initial matter, I address Buzzfeed's motion to intervene pursuant to Federal Rule of Civil Procedure 24(b). "[P]ermissive intervention is the proper method for a nonparty to seek a modification of a protective order." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (citing *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 293–94 (2d Cir. 1979)); *see also EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) ("[D]espite the lack of a clear fit with the literal terms of Rule 24(b), every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders." (collecting cases)); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2044.1 (3d ed. 2021) ("Procedurally, the common manner by which these nonlitigants seek modification [of protective orders] is to move for intervention under Rule 24(b)."). Buzzfeed's request to unseal certain

---

[1] Throughout this Opinion & Order, I will assume background familiarity with the factual underpinnings and procedural history of this action. Capitalized terms in this Opinion & Order have the same definitions used in my August 13, 2020 Opinion & Order filed in this action, (Doc. 210), unless otherwise specified.

documents are opposed, but its motion to intervene is not.  Therefore, Buzzfeed's motion to

intervene is GRANTED.  I now turn to Buzzfeed's motion to unseal.

Buzzfeed seeks "an order unsealing the judicial documents electronically docketed under

seal or in redacted form at docket entries 48, 126, 169, 171, 175, 176, and 179, as well as any

other judicial documents submitted to the Court in this matter that are not reflected on the public

docket."  (Unseal Br. 1.)[2]  I have reviewed these documents *in camera*, and the documents at

issue include:  (i) charts summarizing wire transfer records that were produced in response to

authorized subpoenas ("Charts") (Doc. 48); (ii) an exhibit that, at the time of its provisional

sealing, had not yet been filed in an action before an English court ("English Exhibit") (Doc.

126); (iii) declarations filed in this action (a) regarding compliance with protective orders entered

in this action ("Compliance Declarations") (Doc. 179),[3] and (b) to support a motion to withdraw

submitted by Hornbeam's former counsel ("Withdrawal Declaration") (Doc. 171)[4] (together, the

"Declarations").

A.       *Applicable Law*

There is a presumption of public access to anything that qualifies as a "judicial

document," i.e. a "filed item that is 'relevant to the performance of the judicial function and

useful in the judicial process.'"  *Bernstein v. Bernstein Litowitz Berger & Grossmann*

*LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d

110, 119 (2d Cir. 2006)).  The presumption is "at its strongest" when "the information at issue

forms the basis of the court's adjudication."  *Liberty Re (Bermuda) Ltd. v. Transamerica*

---

[2] "Unseal Br." refers to the Memorandum of Points and Authorities in Support of Buzzfeed, Inc.'s Motion to Intervene and Unseal Judicial Documents.  (Doc. 197.)

[3] Docket entries 175 and 176 are the publicly-filed, redacted counterparts to the Compliance Declarations.

[4] Docket entry 169 is the publicly-filed, redacted counterpart to the Withdrawal Declaration.

*Occidental Life Ins. Co.*, No. 04 Civ. 5044(NRB), 2005 WL 1216292, at *6 (S.D.N.Y. May 23, 2005) (citation omitted).  This presumption remains "strong" even where "the Court did not rely on" the documents, so long as they were "brought to the Court's attention in connection with a contested matter."  *Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 417 (S.D.N.Y. 2019) (citing *Lugosch*, 435 F.3d at 121).

"[A]fter determining the weight of the presumption of access, the court must balance competing considerations against it" by considering "countervailing factors includ[ing] but . . . not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure."  *Mut. Marine Office, Inc. v. Transfercom Ltd.*, No. 08 Civ. 10367(PGG), 2009 WL 1025965, at *4 (S.D.N.Y. Apr. 15, 2009) (internal quotation marks omitted).  "The party seeking to maintain the seal carries the burden of demonstrating the need to seal."  *Park Ave. Life Ins. Co. v. Allianz Life Ins. Co. of N. Am.*, 19-CV-1089 (JMF), 2019 WL 4688705, at *2 (S.D.N.Y. Sept. 25, 2019) (citing *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997)).  Seal should be maintained, for example, where public release of documents would "compromis[e] the interest in the integrity and security of [a law enforcement] investigation," *In re Sealed Search Warrants Issued June 4 & 5, 2008*, No. 08–M–208 (DRH), 2008 WL 5667021, at *5 (N.D.N.Y. July 14, 2008), or may lead to "violent retaliation against informants" working with law enforcement, *United States v. Pasqua*, 16-cr-591 (NSR), 2020 WL 7338082, at *2 (S.D.N.Y. Dec. 12, 2020), or where unsealing would only identify "a minor's full name" without serving any "public interest", *United States v. Litvak*, Criminal No. 3:13–cr–19 (JCH), 2015 WL 328876, at *2 (D. Conn. Jan. 23, 2015).

> **B.** *Application*

As an initial matter, no party opposes the unsealing of the English Exhibit, and Symeou

represents that it is now "publicly available elsewhere." (Symeou Opp. 1.)[5] Accordingly, the

English Exhibit will be unsealed. *See In re Application to Unseal 98 Cr. 1101 (ILG)*, 891 F.

Supp. 2d 296, 300 (S.D.N.Y. 2012) (granting motion to unseal information that had already been

"publicly revealed by the Government in a press release" and was "accessible on Westlaw and

Lexis"). *Cf. Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) (noting that it

would be impossible to reseal information that "now resides on the highly accessible databases

of Westlaw and Lexis and has apparently been disseminated prominently elsewhere"). I next

deal with the other documents sought to be unsealed.

1.    **The Charts**

First, the Charts are certainly judicial documents. Symeou's counsel created the Charts

and presented them to me during a November 10, 2015 conference. (*See* Doc. 50, at 16:9–23

("We worked all weekend to complete this chart.").) The Charts were presented to argue that

discovery produced was overly broad, (*see id.* at 16:16–21 (the "banks produced records," which

are summarized in the Charts, "that have nothing to do with the dispute over Warren Steel" that

gave rise to my order authorizing discovery), as well as to persuade me that I should enter an

order that would "limit" how certain produced documents could be "use[d]" in various court

proceedings, (*see id.* at 20:3–14 (contending that I should "keep [a previously-entered] protective

order" in place, "limit the use of this to this court," as well as to a contemplated proceeding in

the British Virgin Islands, so that "we don't have to go chasing these records around the

country.").) The Charts are thus evidence proffered in support of Symeou's argument seeking

the entry of court orders. Moreover, during the November 10, 2015 conference, I noted that

---

[5] "Symeou Opp." refers to Intervenor Panikos Symeou's Response in Opposition to Buzzfeed's Motion to Intervene and Unseal. (Doc. 203.)

"[t]he parties agree that the materials can be used before me in connection with any motion practice or any future applications on notice under 1782." (Doc. 50, at 31:15–20.) This is exactly what happened: Symeou made use of the Charts in his prior arguments by having them cited in a declaration supporting a motion to reconsider from him. (Doc. 59 ¶ 7.) Accordingly, a weighty presumption attaches, as the Charts were brought to my attention as "essential building blocks" of the relief Symeou sought from an Article III court. *See DXC Tech. Co. v. Hewlett Packard Enter. Co.*, No. 19-CV-7954 (VEC), 2019 WL 4621938, at *1 (S.D.N.Y. Sept. 11, 2019).

Moreover, as Buzzfeed points out, the documents filed in this action pertain to "issues . . . of public concern and therefore ones which the public has an interest in overseeing." (Buzzfeed Reply 12 (quoting *Untied States v. Erie County*, 763 F.3d 235, 242 (2d Cir. 2014)).[6] There is already public reporting and attention on wire transfer activity involving Igor Kolomoisky, who is mentioned in the Charts, due to alleged crimes and corruption relating to how he moves money around the world. *See, e.g.*, Michael Sallah at al., *This Billionaire Oligarch Is Being Investigated By A US Federal Grand Jury For Alleged Money Laundering*, BuzzFeed News (May 19, 2020), https://perma.cc/8SURZUHH; Paul Sonne et al., *U.S. sanctions Ihor Kolomoisky, one of Ukraine's most powerful tycoons*, Washington Post (Mar. 5, 2021), https://www.washingtonpost.com/national-security/us-sanctions-ukrainian-tycoon-ihor-kolomoisky/2021/03/05/17bb8104-7dd3-11eb-b0fc-83144c02d676_story.html; *Public Designation of Oligarch and Former Ukrainian Public Official Ihor Kolomoyskyy Due to Involvement in Significant Corruption*, United States Dep't of State (Mar. 5, 2021),

---

[6] "Buzzfeed Reply" refers to the Reply Memorandum of Law in Support of Buzzfeed, Inc.'s Motion to Intervene and Unseal Judicial Documents. (Doc. 205.)

https://www.state.gov/public-designation-of-oligarch-and-former-ukrainian-public-official-ihor-

kolomoyskyy-due-to-involvement-in-significant-corruption/ ("The Department will continue to

use authorities like this to promote accountability for corrupt actors in this region and globally.").

It is thus clear that "the First Amendment right of access applies" to the Charts.  *Erie County*,

763 F.3d at 243.

This leaves Symeou, as the party opposing unsealing of the Charts, with "the burden of

demonstrating the need to seal."  *Park Ave. Life Ins. Co.*, 2019 WL 4688705, at \*2; *see also*

*Lugosch*, 435 F.3d at 126 (a First Amendment right of access may only be overcome through

"specific, on-the-record findings that higher values necessitate a narrowly tailored sealing").  He

has failed to do so, because his arguments misconstrue the facts of this case and the applicable

law.

First, Symeou argues that that there is a presumption against unsealing because the Charts

were filed based on a supposed "reasonable reliance" that the protective orders entered in this

case would keep the Charts sealed.  (*See* Symeou Opp. 11–12 (citations omitted).)  This is a

mischaracterization of the record:  as Buzzfeed correctly points out, the protective order in place

at the time the Charts were presented to me, (Doc. 27), "does not govern sealing" at all.

(Buzzfeed Reply 7.)  Indeed, Symeou presented the Charts to me in my courtroom before I made

any decision about whether the Charts would be kept under seal—Symeou acknowledges that his

attorney "handed up the Charts" on November 10, 2015, two days before the sealing was

decided.  (Symeou Opp. 4.)  As such, Symeou could not have reasonably relied on any order

when he chose to present the Charts in open court.[7]

---

[7] Even if there had been a relevant protective order in place before Symeou submitted the Charts, that would not carry the day for Symeou.  As the Second Circuit recognizes, "some protective orders may not merit a strong presumption against modification," as is the case where a party "could not have reasonably relied on [a] seal[ing]

Second, Symeou argues that the Charts contain the financial records of certain "Related Parties," and that the Related Parties' rights to keep their financial records private defeats the public's right of access to the Charts.  (Symeou Opp. 16–19.)  However, the Charts are not financial records, nor do they contain the sort of financial records that warrant sealing.  Rather, the Charts are attorney-prepared summaries of wire transfer records produced in discovery.  (*See* Doc. 50, at 16:16–17:23 (attorney explaining "We worked all weekend to complete this chart" based on "over 5,000 wires" that had been produced).)  In other words, the Charts are not primary documents such as wire transfer records, account statements, or checks featuring account and routing numbers.  By contrast, Symeou only cites cases about how, in some instances, "sensitive personal financial information," such as "bank checks," should not be publicly released.  *See Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 629 (S.D.N.Y. 2011) (rejecting argument to maintain sealing and collecting cases where information was deemed sufficiently private to justify sealing).  Symeou offers no argument as to why the Charts, which contain no account numbers or routing numbers or anything of the kind, would be subject to any recognized privacy right, nor has he argued that public access to the Charts would cause "any embarrassment or harm" to anyone.  *Id.* at 631.  *C.f. United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("[C]ourts have the power to insure that their records are not 'used to gratify private spite or promote public scandal,' and have 'refused to permit their files to serve as reservoirs of libelous statements for press consumption.'" (citations omitted)).

Accordingly, Buzzfeed's motion to unseal the Charts is GRANTED.

---

order," or where a party fails to show "a continuing compelling reason to require that . . . documents remain under seal."  *See Gambale*, 377 F.3d at 142 & n.7 (citations omitted).

### 2.    The Declarations

In opposing unsealing of the Declarations, Hornbeam's only substantive argument is that the redactions on the publicly-filed versions are in place due to "the need to protect the attorney-client privilege."  (Hornbeam Opp. 6.)[8]  Buzzfeed states that it does not seek "access to material that is properly subject to the attorney client privilege."  (Buzzfeed Reply 1 n.1.)  However, neither Symeou nor the only other party opposing unsealing, Hogan Lovells US LLP, addresses what is or is not properly privileged within the Declarations.

Accordingly, based on my *in camera* review of the Declarations, I conclude that some of the redactions in the Declarations are supported by applicable privilege, but that many of the redactions are overly broad and improper.  For example, some of the redacted material includes descriptions of a protective order that is already publicly available on this action's docket.  Similarly, conversations with third parties are described in Ms. Elder's Compliance Declaration.  The redactions in the Withdrawal Declaration also appear overly broad.

With that said, Hornbeam should have an opportunity to propose more precise redactions for the Declarations.  *See generally Diversified Grp., Inc. v. Daugerdas*, 304 F. Supp. 2d 507 (S.D.N.Y. 2003) (ordering documents unsealed after appointing a special master to issue a report on what parts of the documents should be redacted as privileged and considering the parties' briefings on the issue).  The terms by which it will do so are in the conclusion to this Opinion & Order, *infra*.

---

[8] "Hornbeam Opp." Refers to Applicant Hornbeam Corporation's Response and Memorandum of Law in Opposition to Buzzfeed, Inc.'s Motion to Intervene and Unseal Judicial Documents.  (Doc. 201.)

II.     **Symeou's Motion for Sanctions**

A.     *Legal Standard*

A court has the inherent power to sanction an attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (citation omitted); *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013). Federal courts are also authorized by statute to require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

To impose sanctions under either authority, a trial court must find "clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Regarding the first prong, "[c]onduct is entirely without color when it lacks any legal or factual basis; it is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue." *Id.* The second prong requires the district court to make a "clear showing of bad faith" with a high degree of factual specificity in most cases. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986); *United States v. Seltzer*, 227 F.3d 36, 41–42 (2d Cir. 2000). Under this prong, sanctions are appropriate only "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri*, 803 F.2d at 1273.

Moreover, "when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power." *Seltzer*, 227 F.3d at 42; *see also, e.g.*, *Williams v. Lutheran*

*Med. Ctr.*, 776 F. App'x 730, 731 (2d Cir. 2019) (holding that no showing of bad faith was required before finding an attorney in contempt where the conduct at issue was not inherent to client representation).  Under this exception, a court has the inherent power "to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation, such as, violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith." *Seltzer*, 227 F.3d at 42.

Further, Federal Rule of Civil Procedure 37(b)(2) provides that if a party fails to obey an order to provide or permit discovery, the court has the discretion to take the appropriate action that would correct the failure in light of the considerations of justice.  A district court is to consider "(1) the willfulness of the non-compliant party or the reason for non-compliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Galindo v. Instalaciones de Tendidos Telefonicos, S.A.*, 508 F. App'x 76, 78 (2d Cir. 2013) (quoting *Agiwal v. Mid Island Mortg. Corp.,* 555 F.3d 298, 302 (2d Cir. 2009)).  As emphasized by the Second Circuit, "imposing sanctions pursuant to Rule 37 is within the discretion of the district court," and a district court's decision as to such matters "will only be reversed if the decision constitutes an abuse of that discretion." *Local Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const. Inc.*, 88 F. Supp. 3d 250, 262 (S.D.N.Y. 2015) (quoting *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155 at 159 (2d Cir. 2012)); *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) ("The district court is free to consider the full record in the case in order to select the appropriate sanction." (internal quotation marks omitted)).

### B.    *Discussion*

I do not find any basis to impose sanctions in this case, and I will not exercise my discretion to do so, as none of the arguments Symeou makes suggest the sort of "bad faith" or "wanton[]" misbehavior for which sanctions are generally reserved.  *See NASCO*, 501 U.S. at 45–46.  Symeou's arguments are largely insufficient to establish that violative conduct occurred at all.  However, to the extent any violations did occur, they appear to be bare, technical violations that were remedied in due course and caused no harm.  Symeou has not shown the sort of "improper purposes" or willful noncompliance that befit sanctions.  *Wolters Kluwer*, 564 F.3d at 114; *Galindo*, 508 Fed. App'x at 78; *see Schiller v. City of New York*, No. 04 Civ. 7921KMK/JCF, 2007 WL 1623108, at *3 (S.D.N.Y. June 5, 2007) ("[B]efore sanctions are levied, it must be established that the party being penalized is in fact culpable.")

### 1.    Alleged Sanctionable Conduct as to Hogan Lovells

First, Symeou argues that Hornbeam and its former counsel, Hogan Lovells US LLP ("HL"), "willfully" violated the protective orders in this case.  (Sanctions Br. 14.)[9]  He contends that HL shared materials subject to those protective orders with its sister firm, Hogan Lovells International LLP ("HLI").  (*Id.*)  Symeou's argument fails because the protective order in question states that disclosure can be made to "[a]ttorneys of record and instructing attorneys . . . of such attorneys of record."  (Doc. 106 ("Second Amended Protective Order" or "SAPO") ¶ 4(a).)  At minimum, "instructing attorneys" could reasonably be understood to extend to HL's international colleagues.  As such, even if I were to find technical noncompliance with the

---

[9] "Sanctions Br." refers to the Memorandum of Law in Support of Intervenor Panikos Symeou's Motion for Sanctions, Discovery and Attorneys' Fees.  (Doc. 217.)

relevant protective orders,[10] I would not find Hornbeam or HL's conduct in this regard
sanctionable.

Second, Symeou argues that HL improperly transferred discovery materials to Herbert
Smith Freehills LLP ("HSF"), which represents HLI in connection with an apparent malpractice
action that Hornbeam's ultimate beneficial owner, Vadim Shulman ("Shulman"), filed against it
in the United Kingdom. (*See* Sanctions Br. 14; HL Opp. 3.)[11] He also argues that he has not
received certifications from HSF that any relevant materials it received were destroyed, as
required by a protective order in this case. (Sanctions Br. 14 (citing Doc. 210).) Again,
however, there is a colorable basis on the face of the SAPO for allowing HSF to view the
discovery materials: "[c]onsultants, experts and vendors who are utilized by counsel . . . to
furnish services in connection with Permitted Litigations" were permitted to view materials
otherwise subject to protection. (SAPO ¶ 4(c).) Therefore, I do not find that any sharing of
materials with HSF have "violate[d] a clear and unambiguous provision of the" SAPO, which
militates against granting sanctions. *See Gucci Am., Inc. v. Li*, 768 F.3d 122, 142 (2d Cir. 2014).
In addition, if HSF ever came to possess protected materials, which is a factually contested
matter, it appears that would have happened in the course of HSF's undertaking a routine
document collection from HL as part of being hired to represent HL. HL filed multiple
declarations to this effect. These declarations also explain that HL instructed HSF to destroy any
materials that may have fallen within the scope of the relevant orders in this action if they were
inadvertently collected. (HL Opp. 13; Doc. 221 ¶ 4; Doc. 223 ¶ 8.) I thus find no willfulness
sufficient to warrant sanctions. *Galindo*, 508 F. App'x at 78.

---

[10] I note here that HL put a sworn statement in the record that "HL did not transfer any discovery materials to
anyone at HLI." (Doc. 223 ¶ 7.)

[11] "HL Opp." refers to the Memorandum of Law in Opposition to Motion for Sanctions and Discovery. (Doc. 220.)

Third, Symeou argues that HL perpetrated a fraud on the Court by failing to disclose that

Hornbeam had abandoned its contemplation of bringing proceedings in the BVI.  (*See* Sanctions

Br. 19–20.)  The premise of Symeou's argument appears to be that Hornbeam and its counsel

had "represented" that the discovery materials it sought to gather through this action "were for

use in future BVI proceedings."  (*Id.* at 1.)  This is impossible to square with my prior decisions

in this case.  When "Symeou argue[d] that . . . future proceedings initiated by Hornbeam in the

BVI are not contemplated," and that such warranted "destruction of the discovery produced thus

far," I rejected the argument because, "although litigation thus far has focused on the

contemplated BVI proceedings . . . Hornbeam's original application stated that it sought

discovery for use in three contemplated proceedings, including two to be brought . . . in a

jurisdiction currently unknown."  *In re Hornbeam Corp.*, 14-MC-424, 2017 WL 2912515, at *2

(S.D.N.Y. July 7, 2017) (internal quotation marks and citations omitted).

Symeou never addresses the "jurisdiction currently unknown" language from the

Application, despite the fact that the parties he seeks to have sanctioned quote it extensively in

their briefs opposing his sanctions motion (*see, e.g.*, HL Opp. 4; Doc. 224, at 5), and despite the

fact that I quoted it in a prior Opinion & Order, *supra*.  At this point in time, I will not jump to

any conclusions about why Symeou chose not to discuss such a gaping hole in his argument,

even after his adversaries raised it in their filings.  Suffice to say, Symeou has not offered a

sufficient argument on the point.

### 2.     Alleged Sanctionable Conduct as to Hornbeam

Symeou also argues that Hornbeam should be subject to sanctions.  As on previous

motions, "I have reviewed Symeou's additional legal arguments on these issues and find them to

be without merit."  *Hornbeam*, 2015 WL 2015 WL 13647606, at *7.  Symeou's arguments as to

why Hornbeam should be sanctioned largely focus on the same conduct for which he seeks to

have HL sanctioned, which I have addressed and rejected *supra*.

The only independent argument Symeou raises is about Shulman's having made

"threat[s]" about providing discovery materials "to the FBI and DOJ," which, if actually done,

would violate the protective orders in this case.  (Sanctions Br. 9.)  Symeou "suspect[s] that

Shulman . . . disclosed" materials "to the FBI and/or DOJ."  (*Id.* at 30.)  Although I cannot

condone conduct that would violate my orders, I do not find it appropriate, on the facts before

me, to impose sanctions based on these alleged threats.

## III.    Conclusion

For the foregoing reasons, it is

ORDERED that Symeou's motion is DENIED, Buzzfeed's motion to intervene is

GRANTED, and its motion to unseal is GRANTED IN PART.  The Clerk of Court is

respectfully directed to file publicly documents 48 and 126 in their entirety.  It is further

ORDERED that by January 28, 2022, Hornbeam shall file with me versions of the

Declarations with more specific and targeted redactions than those found in the currently-public

versions of these documents.  Along with those redacted versions of the Declarations, Hornbeam

shall file a letter motion explaining the basis for each sentence and clause it seeks to redact.

Unless the basis for redaction is obvious, Hornbeam must cite to specific law on point.  For

example, if it seeks to maintain redactions on portions of the Withdrawal Declaration that do not

fall within the scope of an attorney-client communication, it would need to cite clear law

regarding why such redactions are proper.  Similarly, if Hornbeam seeks to maintain redactions

on the portions of the Declarations discussing Ms. Elder's conversations with DOJ attorneys, it

would need to cite clear law to support that as well.  If Hornbeam fails to comply with these

15

terms by the aforementioned date, or if I find after reviewing Hornbeam's explanations that there is not good basis for any of the redactions that Hornbeam proposes, I will publicly file versions of the Declarations with only the redactions I believe necessary.

   The Clerk of Court is respectfully directed to terminate all open motions.

SO ORDERED.

Dated:   January 6, 2022
      New York, New York

                Vernon S. Broderick
                United States District Judge