**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:
APPLICATION OF HORNBEAM CORP.

Case No. 1:14-MC-00424 (VSB)

_____/

**NOTICE OF FILING REVISED REDACTED**
**DECLARATION OF CAROL ELDER BRUCE**

Applicant, Hornbeam Corporation, hereby gives notice of filing the Revised Redacted Declaration of Carol Elder Bruce ("Declaration"). A true and correct copy of the Declaration is attached hereto as Exhibit "A."

Dated: January 28, 2022.

*s/ Tucker H. Byrd*
Tucker H. Byrd
Florida Bar No. 381632
BYRD CAMPBELL, P.A.
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286
Primary Email: TByrd@ByrdCampbell.com
Secondary Email: LSharpe@ByrdCampbell.com
*Attorneys for Applicant*

and

*s/ Henry L. Saurborn*
HENRY L. SAURBORN, ESQ
KAISER SAURBORN & MAIR, P.C.
30 Broad Street, 37th floor
New York, New York 10004
Tel. 212-338-9100
Fax 646.607.9373
Email: saurborn@ksmlaw.com
*Attorneys for Applicant*

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

APPLICATION OF HORNBEAM CORP.

Case No.: 14-MC-424
(Part 1)

Judge Vernon S. Broderick

## DECLARATION OF CAROL ELDER BRUCE

Pursuant to 28 U.S.C. § 1746, I, Carol Elder Bruce, Esq., hereby declare:

1.  I am a shareholder of Murphy & McGonigle, P.C. (the "Firm"), lead counsel in this action for Applicant Hornbeam Corporation ("Hornbeam" or "Applicant"). I aver to the matters set forth herein based upon personal knowledge and information.

2.  I submit this Declaration pursuant to the Court's Order, dated September 13, 2019 (Doc. 170) (the "Order"), and to address certain questions raised by the Court in the Order.

**Whether Murphy & McGonigle shared any Responsive Materials with Persons or Entities external to Murphy & McGonigle**

3.  To the best of my knowledge, no person from the Firm has shared any Responsive Materials with any person or entity external to the Firm.[1]

---

[1] "Responsive Materials" refers to those materials defined in § 1(i) of the Second Amended Protective Order ("SAPO"). (*See* Doc. 106.)

### Description of all Certifications issued pursuant to the SAPO that are currently in Murphy & McGonigle's file

4. To the best of my knowledge, the following Certifications[2] issued pursuant to the PO are currently in the Firm's files: (1) Dr. Verena Ernst as Bracha "Foundation Council", dated February 4, 2016; (2) Fabrizio N. Campanile, Esq., dated February 4, 2016; (3) Tetyana Ferree, dated February 8, 2016; and (4) Vadim Shulman, dated February 8, 2016.

5. Hornbeam is wholly owned by Mr. Shulman. Upon information and belief, Mr. Campanile is Mr. Shulman's Swiss attorney who conducted the original investigation that supported the bringing of the Section 1782 cases in the United States. Ms. Ferree is Mr. Shulman's legal consultant who lives in London, U.K., and serves as U.S. counsel's primary contact for all communications with Mr. Shulman. Upon information and belief, Dr. Ernst is counsel for the Bracha Foundation.[3] The SAPO expressly provides that Responsive Materials may be provided to Mr. Shulman and the Bracha Foundation. (*See* SAPO (Doc. 106) § 4(b)).

6. Each of these Certifications was executed before the Firm appeared as counsel in this matter on Applicant's behalf, and therefore, the Firm did not provide the Certifications to the Court.

7. To the best of my knowledge, these certifications were transferred to the Firm from Applicant's predecessor counsel (Hogan Lovells, who replaced Holland & Knight) on or about August 27, 2018 as part of Hogan Lovells' commitment to the Court to transfer the case files to our Firm, after we entered our appearance in this matter.[4]

---

[2] "Certification" refers to Certifications as they are defined throughout the SAPO. (See Doc. 106.)

[3] Certain sections of Dr. Ernst's Certification that we have in our files were not filled in, including the space for the name and date on the first page, and the space for the company on the second page.

[4] Hogan Lovells only provided our Firm with the first page of Mr. Shulman's certification. The signature page was provided to us by Tetyana Ferree.

2

8.      There were no transmittal or explanatory letters accompanying any act of sending these Certifications to the Court, so we cannot ascertain a date certain on which the Certifications were, presumably, individually or collectively sent to the Court per the terms of the Protective Order that was in place at the time. Nonetheless, to the best of my knowledge, I believe that Applicant's predecessor counsel (Holland & Knight) provided the Certifications to the Court in or around February 2016.

### The communications in Doc. 157: When I learned of them and what role, if any, did I have in providing Responsive Materials or information relating to the referenced communications to United States law enforcement or other non-authorized parties

9.      I have reviewed the four pages of writings that attorney Bruce Marks produced pursuant to the Court's September 12 Order (DE 170) and that he previously referenced, summarized, or excerpted in his August 9 letter-motion and in previous emails to me. The writings purport to be copies of original text messages ("texts") from our client, Mr. Shulman, directed, per Mr. Marks, through an unidentified "middleman" to Mr. Igor Kolomoisky, Mr. Marks' principal client in the various 28 U.S.C. § 1782 cases that were brought by Hornbeam Inc. ("Hornbeam"). Mr. Shulman is the beneficial owner of Hornbeam.

10.     We have not conducted our own translation of these documents and, instead, are assuming Mr. Marks used a certified translation service and that the translation is accurate.

11.     Until the existence of the alleged texts was disclosed by Mr. Marks in these cases, I did not know of these texts, nor to my knowledge did anyone else in my firm, prior to or subsequent to their apparent creation.

3

12. I did not play any role, nor to my knowledge, did anyone else in my Firm, in providing Responsive Materials or any other information in this case related to communications to any United States law enforcement entity, or non-authorized party.

13. The texts do not appear to be dated or complete, but I assume from the texts themselves, from Mr. Marks' representations, and from what I know from my contemporaneous communications with Mr. Shulman's representative, Tanya Ferree, that, regardless of whether these are accurate translations of true and complete text messages, there were, indeed, as is normal and expected in all civil disputes, global case settlement discussions, between November 2018 and January 2019, of Mr. Shulman's many civil fraud claims, against his former business partner and now his litigation adversary, Mr. Kolomoisky.

14. I understood that at least one non-American commercial lawyer was involved in the discussions, but I never spoke with him. I understood that similar settlement discussions had taken place on a number of previous occasions in the past. On this occasion, I understand that it was all over wire (mobile phones) through one or more friends and/or intermediaries, and that Mr. Shulman was in Monaco and Mr. Kolomoisky was in Israel, from where he summoned several Miami case parties (e.g. Mr. Korf) and lawyers (e.g., Mr. Marks) to his home in Israel, where, I understand, Mr. Kolomoisky lived at the time after fleeing Switzerland to avoid arrest for his alleged multi-billion dollar theft and money laundering of PrivatBank assets in Ukraine.

15. I never saw nor knew anything about these texts or their contents during the 3-month period described in Paragraph 13 above. Nor did I see or know anything about them when Mr. Marks, some six months after the failed private negotiations and after an April 2019 joint court appearance on pending motions in Miami, raised the question for the first time of whether we "provided information used in discovery to the Department of Justice." He raised

4

that question for the first time during a telephone conference call *my Firm initiated* in July. On July 10, 2019, we convened a Meet and Confer call in the FLSD on our planned filing of a Motion to Withdraw from that case. Mr. Marks did not reveal the texts nor make his later characterization of the texts as "extortion" during that call. I assumed that his demand for an answer to his question about disclosures to the DOJ was another of many tactical moves to advance his litigation strategy to terminate the FLSD proceedings and persuade the court to destroy the discovery that we had obtained in late 2018, after nearly four years of hard-fought litigation by previous counsel for Hornbeam.

16. With respect to the disclosure issue, I note that, when I entered the Section 1782 cases in the FLSD and the SDNY as one of the counsel of record, I reviewed the public dockets and pleadings in both cases, and also reviewed a large quantity of documents that Mr. Shulman had collected on his own and with the help of a Swiss investigative lawyer and, separately, with the aid of a highly-regarded US-based global business advisory firm. The publicly filed material, alone, openly references alleged related party fraud and money laundering activities by Mr. Kolomoisky and others in the applications and supporting declarations and in other filings in these Section 1782 cases.

17. Further, with respect to the disclosure issue, as I understand it, if any client of an attorney with whom the attorney has a confidential, attorney-client relationship discloses any of the attorney's confidential and privileged communications with client to a non-privileged person without that attorney's knowledge, that attorney is not responsible for such conduct. In any event, I do not recall any specific communications with Ms. Ferree or Mr. Shulman about ▮▮▮▮

5

███████████████████████████████████████████

████████ appears to be a statement that I or any white collar criminal defense attorney or prosecutor would say to a client.

18.   In November 2018, in an unrelated meeting in Washington, D.C., I raised Mr. Shulman's public allegations with the Chief of the International Unit of the Money Laundering and Asset Recovery Section (MLARS) in the Criminal Division of the U.S. Department of Justice. It became immediately apparent to me that she was well aware of Mr. Shulman's cases and his claims. As a former federal prosecutor who served as an Assistant U.S. Attorney in the District of Columbia for ten years and also served as an appointed Deputy Independent Counsel in the investigation of a sitting Attorney General, and as the Independent Counsel in the investigation of a sitting cabinet Secretary, and as a Special Counsel in the investigation of a sitting United States Senator, I had concluded that the public record in these cases alone justified bringing Mr. Shulman's allegations to the attention of the DOJ, and I was glad to hear that DOJ was already aware of the alleged conduct.

19.   Thereafter, the Chief invited me and my Firm colleagues to come to her DOJ offices and provide her and her colleagues with a briefing about Mr. Shulman and his allegations. We held such a meeting and provided them only with information that was not gathered from discovery in any of the Section 1782 cases. We provided them with the protective orders so that they would understand that we could not provide them with any protected discovery material in any of the cases.

20.   Later, in December 2018, Mr. Shulman and Tanya Ferree traveled to the U.S. at DOJ's and my request and met with the Chief and another DOJ attorney in the MLARS International Unit and with a senior FBI special agent. At no time in this meeting did I or my

6

==Firm or Mr. Shulman provide DOJ or any FBI agent or other law enforcement agent with any of the protected material or information in the SDNY case.== [REDACTED]

I declare under penalty of perjury under the laws of the United States of America that the foregoing it true and correct.

Executed on September 24, 2019

_____
Carol Bruce, Esq.

_____
Notary Public

DIANNE E. PILKERTON
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires May 31, 2024

7